FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

_PINE BLUFF_ DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

CASE NO. _5:14-CV-291-BSM-JJV_

JUL 3 1 2014

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

I.   Parties

In item A below, place your name in the first blank and place your present address in the
second blank. Do the same for additional plaintiffs, if any.

A.   Name of plaintiff: _RONALD D. O'NEAL_
ADC# _128560_

Address _PO Box 500, Grady, AR 71644-0500_

Name of plaintiff: _____
ADC# _____

Address _____   This case assigned to District Judge _Miller_
and to Magistrate Judge _Volpe_

Name of plaintiff: _____
ADC# _____

Address _____

In Item B below, place the full name of the defendant in the first blank, his official position in the
second blank, his place of employment in the third blank, and his address in the fourth blank.

B.   Name of defendant: _ERIKA CROMPTON_

Position: _Medical Records Supervisor_

Place of employment: _Cummins Unit Infirmary_

Address: _PO Box 500, Grady, AR 71644-0500_

Name of defendant: _ANNETTE ESAW_

Position: _Medical Products Supervisor and Medical Trip Coordinator_

Place of Employment: _Cummins Unit Infirmary_

Address: _PO Box 500, Grady, AR 71644-0500_

1.

Name of defendant: DR TROY GLEN MOORE

Position: DOCTOR

Place of Employment: Private Practice

Address: 5539 ALANTA CV, BENTON AR 72019

Name of defendant: CORRECTIONAL MEDICAL SERVICES INC., CORIZON HEALTH CARE INC, CORRECT CARE SOLUTIONS, et al

Position: medical service provider

Place of Employment: Cummins Unit Infirmary

Address: PO Box 500, Grady, AR 71644-0500

II.   Are you suing the defendants in:

☐ official capacity only
☐ personal capacity only
☒ both official and personal capacity

III.   Previous Lawsuits

A.   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes _____   No __X__

B.   If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another pieced of paper, using the same outline.)

☐   Parties to previous lawsuit

Plaintiffs: _____

_____

Defendants: _____

_____

☐   Court (if federal court, name the district; if state court, name the county):

_____

☐   Docket Number: _____

2

☐   Name of judge to whom case was assigned: _____

☐   Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending? _____

☐   Approximate date of filing lawsuit: _____

☐   Approximate date of disposition: _____

IV.   Place of present confinement: ___Cummins Unit   ADC___

_____

V.   At the time of the alleged incident(s), were you:
(check appropriate blank)

_____ in jail and still awaiting trial on pending criminal charges

___X___ serving a sentence as a result of a judgment of conviction

_____ in jail for other reasons (e.g., alleged probation violation, etc.)
explain: _____

_____

VI.   The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires complete exhaustion of administrative remedies of all claims asserted, prior to the filing of a lawsuit. There is a prisoner grievance procedure in the Arkansas Department of Correction, and in several county jails. Failure to complete the exhaustion process provided as to each of the claims asserted in this complaint may result in the dismissal without prejudice of all the claims raised in this complaint.

A.   Did your file a grievance or grievances presenting the facts set forth in this complaint?

Yes ___X___   No _____

B.   Did you completely exhaust the grievance(s) by appealing to all levels within the grievance procedure?

Yes ___X___   No _____

If not, why? _____

_____

3

VII.   Statement of Claim

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1. Respondeat Superior: Legal Claims
Let the superior reply. This doctrine is invoked when there is a master-servant relationship between two parties. The "respondeat superior" doctrine stands for the proposition that when an employer, dubbed "master," is acting through the facility of an employee or agent, dubbed "servant," and Tort liability is incurred during the course of this agency due to some fault of the agent, then the employer or master must accept the responsibility. Implicit in this is the common law notion that a duty rest upon every man to conduct his affairs so as not to injure another, weather or not in the management of his affairs he employs agents or servants. See 143 P. 2nd 554, 556. This doctrine is civil in its application. See 9 N.W. 2d 518, 521.

Complaint Con't Seperate pages.

4

2.  This complaint falls under Title II American Disability Act §  12131 et. seq. I have a hearing problem that mandates I wear hearing aids. I have a documented high frequency loss in both ears. See 1-29-2004 Hearing Evaluation Report EXHIBIT  A . I need both hearing aids to hear the riot gates closing, food carts and maintenance carts form behind, officers commands, other inmates addressing me and being able to understand what my daughter and grand children are saying on the telephone.

3.  Breach of Contract: "A wrongful non-performance of any contractual duty of immediate performance, which may take place by failure to perform acts promised, by prevention or hindrance, or by repudiation."

4.  Restatement Contracts § 312; "A failure to perform for which legal excuse is lacking" 100 N.E.2d 28, 30.

5.  Liability: An obligation to do or refrain from doing something; A duty which eventually must be performed; also used to refer to one's responsibility for his conduct, such as Contractual Liability.

## LEGAL CLAIMS

6.  **First Amendment.** The treatment Plaintiff received, and moreover the lack of treatment he received, propelled Plaintiff to file his cause of action in Case No. 5:10-CV-00153-BSM-JJV, *Ronnie O'Neal v. Correctional Medical Services, Inc., et. al.* As a direct consequence of filing that suit, prosecuting that suit, and continuing to pursue the matter until the morning of trial on June 3, 2013, Plaintiff was subjected maliciously from May 2010 until June 3, 2013, to treatment or lack of treatment by the Separate Defendants, individually and collectively, in retaliation for engaging in protective activity and thereby

violating his constitutional rights under the First Amendment and Fourteenth Amendments to the United States Constitution.

7. **Arkansas Civil Rights Act.** The conduct of the Separate Defendants, individually and collectively, as described hereininfra, all of which is re-alleged and incorporated by reference, amounted to a violation of Plaintiff's rights under the Arkansas Civil Rights Act, Ark. Code Ann. 16-123-105.

8. **Tort of Outrage.** The conduct of the Separate Defendants, individually and collectively, as described hereininfra, all of which is re-alleged and incorporated by reference, amounted to outrageous conduct by the Separate Defendants of a kind and character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

9. **Common Law Civil Conspiracy.** The conduct of two or more of the Separate Defendants, as described hereininfra, all of which is re-alleged and incorporated by reference, amounted to a civil conspiracy that was designed and intended to accomplish and unlawful or oppressive purpose, i.e. in retaliation for Plaintiff's engaging in protected speech as guaranteed by the First and Fourteenth Amendments to the United States Constitution, was done in an unlawful, oppressive, or immoral means, and caused Plaintiff injury.

The conduct of two or more of the Separate Defendants, as described hereininfra, all of which is re-alleged and incorporated by reference, amounted to a civil conspiracy that was designed and intended to accomplish an unlawful or oppressive purpose, i.e. in retaliation for Plaintiff's engaging in protected speech as guaranteed by the Arkansas

Civil Rights Act, was done in an unlawful, oppressive, or immoral means, and caused Plaintiff injury.

The conduct of two or more of the Separate Defendants, as described hereininfra, all of which is re-alleged and incorporated by reference, amounted to a civil conspiracy that was designed and intended to engage in outrageous conduct by the Separate Defendants of a kind and character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

## COMPLAINT

This action involves Defendants, Correctional Medical Services Inc. (hereafter known as CMS), Corizon Health, Inc. (hereafter known as Corizon), and Correct Care Solutions (hereafter known as CCS) for their failures to institute policies to prevent abuse, to provide recourse for retaliation by its medical staff, and to adequately train and staff medical facility with adequate supervision to insure proper and adequate medical care of prisoners; Erika Crompton, for her involvement as both CMS, Corizon and CCS staff conspiracy to abuse by delay and denial of necessary health care and procedures; Annette Esaw, for her involvement as both CMS, Corizon and CCS staff conspiracy to abuse by delay and denial of necessary health care and procedures; Doctor Troy Glen Moore, as chief medical officer, and resident physician for the Cummins Unit, and his denial and delay abuse of necessary medicine, medical procedures, surgery and adequate care; both John and Jane Doe's as yet names unknown who conspired with separate defendants to abuse, delay and deny medical care, medications, treatment, surgery and procedures. Each in violation of both my Arkansas constitutional rights as is provided by Art. 1, § 10; A.D.A. Acts II, United States

7

Constitutional rights as provided by both the 1st, 8th and 14th Amendments as to cruel and unusual punishments, equal protections, and due process. My liberty interest pursuant to Arkansas Civil Rights Act, A.C.A. § 16-123-105, and my claim of retaliation for the exercise of my constitutional rights to participate in civil litigation to redress the abuse by medical staff, CMS and Corizon. Corizon and separate defendants are in breach of contract, restatement contracts, liability, respondent superior doctrine, and legal duties.

## CHRONOLOGICAL SEQUENCE OF ABUSE

1.  In 2010, Plaintiff filed a 42 U.S.C.A § 1983 civil action against CMS, case no. 5:10 -CV-00153 which survived defendants motion for summary judgment.

2.  That case is not in question here, however this case is a derivative of that action, and with some of the same defendants. Each separate defendant named herein is either an employee of CMS, Corizon or CCS or an agent, or an agent for an agent, and or a subagent.

## DEFENDANTS

10. Separate defendant Erika Crompton, is an employee of CMS/Corizon and now CCS, she was and still is medical records supervisor, and acts as medical products and medical trip coordinator when Annette Esaw is not available.

11. Separate defendant Annette Esaw, is an employee of CMS/Corizon and now CCS, she was and still is supervisor of medical products and is the Medical Trip Coordinator, she makes and cancels medical appointments with outside contracted medical facilities, doctors and other persons.

12. Separate defendant Troy Glen Moore, was an employee of CMS/Corizon as Chief Medical Officer and doctor of the ADC Cummins Unit, and as such made diagnosis,

prescribed medicines, treatment, x-rays, tests, surgery, medical products, outside consultations, surgery and other needed medical procedures and appliances. As chief medical officer he was also responsible for supervision of nurses and infirmary staff.

13. Separate Defendant Corizon and CCS are the successor in interest to Correctional Medical Services, Inc., (CMS) both of which, at all relevant times, were the corporations that contracted with the ADC to provide medical care for inmates within the ADC. Corizon and CCS were and is responsible for all rules and procedures for its medical staff to follow and to adhere to.

14. Separate defendants John and Jane Doe's (as yet names unknown) were and or is employee's of CMS/Corizon and now CCS, and as such acted in concert with other separate defendants to harm, injure, deny or delay necessary and crucial medical care and treatments. They conspired with separate defendants to cover up bad conduct, abuse and to hide the deliberate indifference to medical needs perpetrated by them and for separate defendants.

## PERSONAL ABUSIVE HISTORY BY DEFENDANTS

## FACTS & BELIEFS

15. My relationship with separate defendants had been normal until May of 2010 when I filed a civil action against CMS/Corizon, Ms. Esaw, Dr. Blackmon, Dr. Scott and Rory Griffen, medical administrator, case no. 5:10-CV-00153 BSM/JJV. Doctor Troy Glen Moore had scheduled me for a surgical hernia repair, but in retaliation for naming Griffen and others named as defendants in 5:10-CV-00153, canceled the surgery 8-20-12. See hernia Grievances CU-12-01837 EXHIBIT  B , 13-01491 EXHIBIT  C  13-01576 EXHIBIT  D , 13-02012 EXHIBIT  E , 13-02042 EXHIBIT  F , 13-02152

9

EXHIBIT $\bigcup_{}$. On 8-28-12 Doctor Moore called me back for a second hernia examination eight days after he and Corizon had put my scheduled surgery on hold, despite my numerous grievance complaints of the pain and suffering I was enduring, During a 5-31-13 medical jacket review I discovered a report by Dr. Moore that explained why my hernia surgery had not taken place. The report was dated 8-28-12 and read:

> Notes: Inmate here today follow up of a consult for a left inguinal hernia repair. Additional information was requested before a determination could be made. Additional information request as follows:
> 1. Inmate states his hernia does not interfere with his ability to walk to the "chow hall", he walks 2 to 3 miles daily with out problems. Inmate states he has discomfort while having a bowel movement.
> 2. History => inmate reports a "pulling sensation" when he extends his back or with certain movements. He feels his hernia is a little larger and more painful than before; however Inmate feels if he had two jock straps and an additional hernia belt (extra is due to the need to hand wash items) he would be fine. In fact, inmate says he would prefer this to surgery.
> 3. Colorectal screening => Inmate says he has not had colorectal screening. I discussed hemocult cards, and inmate indicated he would like to do this. ROS: He denies fever, chills, sweats, shortness of breath, abdominal pain, nausea, vomiting, diarrhea, change in bowel habits, malaise or myalgia. Dr. Troy Glen Moore.

> On 8-20-12 (Pid 0142161) it shows Dr. Moore canceled my hernia surgery. NOTE: this is 8 days before his exam on the 8-28-12 to see if I still needed hernia surgery.

Several things in this report are untrue. See grievance 13-01576 EXHIBIT $\bigcirc$. When I said "I could walk two to three miles at a time" I was referring to the condition I was in before I had lung surgery, which really limited my range, but I could still make it to the chow hall.. Dr. Moore twisted this and other facts in order to cancel my surgery, especially the part that would require me to wear a hernia belt the rest of my life instead of having the hernia repaired.

10

It is clear that I still expected to have the hernia surgery 10-19-12 when I had one of the ADC officers designated problem solves to initialed and place in the sick call my request to Dr. Moore asking when they were going to repair my hernia. See EXHIBIT _H_ . I made several attempts to express the system of retaliation against me by Moore and his subordinates via grievance and complaints to medical and ADC staff. Griffen is now Deputy Director of Medical for ADC and is the conduit for CMS, Corizon and CCS for complaints of medical issues whether by grievance or otherwise. Hundreds of grievances concerning deliberate indifference to medical care are submitted monthly just from this unit. I have not been able to find any written policy by either CMS, Corizon or CCS addressing retaliation such as I have received from Moore or by his subordinates. Nor can I find a policy that allows such conduct. It has become known to me medical staff have no respect or fear of grievance complaints; as they receive no punishment for mis-treatment of prisoners, even to the point of killing prisoners. Example: prisoner Eugene Lilly ADC #91745 housed in barracks 8A Cummins, requested an emergency walkin to the infirmary for chest pain, shortness of breath and all the classic symptoms of a heart attack. He was allowed to see only an LPN King, who mis-diagnosed him and sent him back to his barracks. As Lilly lay in his bed and dying, on May 21, 2014 he told the man in the next bunk, Alvin Lovelace ADC #77438 that nurse King told him he had a chest cold, gave him a box of 325 mg Acetaminophen and sent him back to the barracks. There is no reason why she did not request someone capable to examine and make a correct diagnosis. Medical services here has a long and sad history of that during the years with CMS, Corizon and CCS.

16. Separate defendant Erika Crompton in her professional CMS/Corizon/CCS position as medical records supervisor; and sometimes medical products and outside medical appointments, surgery and treatment supervisor, when defendant Esaw is not available. Defendant Crompton conspired with separate defendants Esaw and others (John and Jane Doe's) to deny and delay my access on the numerous requested review of my medical records so as to ascertain that information needed in case no. 5:10-CV-00153, a suit against her employer and supervisor. Arkansas Department of Correction Health Services Policy and Procedure Manual 59.01 clearly states at 18b.(2) Schedule the inmate within 10-15 working days from the date of receipt of the request a specific date and time for health care record review. See EXHIBIT  I .

When I first started researching information for 5:10-CV-00153 it took less than I week to review my medical records after the request was made. See 5-6-09 request EXHIBIT  J . and 9-8-09 request. EXHIBIT  K . Unless I could find a problem solver to put hands on the problem, the time between request and the review drastically changed to taking between two to four months after I filed 5:10-CV-00153. Defendant Crompton on numerous occasions denied or delayed my access to my medical records/file by violating Policy 59.01. I filed a needed plethora of grievances, see CU-11-01407 EXHIBIT  L , CU-11-01408 EXHIBIT  M , CU-11-01831 EXHIBIT  N , (63 day delay) CU-11-01660 EXHIBIT  O , 11-02168 EXHIBIT  P , CU-12-00395 EXHIBIT  Q , 12-00396 (91 day delay) EXHIBIT  R , 12-00879 (pages missing) EXHIBIT  S . During all medical jacket reviews the total page count in my file would fluctuate up and down 30 to 40 pages each time I reviewed my medical jacket. The most pages I counted in my jacket between May 2010 and June 2013 was 318 pages. Crompton would not give

reasons or even excuses for her denial to me of adequate access as needed. After I non-suited case no. 5:10-CV-00153 the attitude of most defendants changed. I received records access, hernia surgery and medications. The only change to explain this rationalization is the cessation of 5:10-CV-00153.

The conspiracy to block my access to my medical records worked. During medical jacket reviews I was only allowed to see on the average one third of my records. I only gained access to my complete medical file through a court appointed attorney 13 days before trial. We were not able to secure a medical expert in that short period of time thus I was forced to non suit 5:10-CV-00153.

17. Separate defendant Annette Esaw, is an employee of CMS/Corizon/CCS. Her duties include control and distribution of prescribed medical products, scheduling of consultations, surgery, examinations and other activity outside the ADC system, with doctors, tester's and other as needed medical needs. Esaw also is the official who provides hearing aids and batteries as needed. I have a documented hearing loss, and I qualify under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 et.seq. My hearing impairment at times place's me in grave danger within the prison setting, if I cannot hear orders from prison officials, hear other prisoners (who are quick to consider themselves "dis'ed" when not responded to), when carts and other traffic approaches from behind that will not stop and has no warning lights or any horn or other warning sounds. The hearing aid I had would not allow me to hear clearly on the telephone. Hearing aids are made for that purpose and work well, but I was not allowed to have that function until I non-suited case no. 5:10-CV-00153. After Dr. Moore was fired, Dr. Warren was allowed to reschedule my hernia surgery when 5:10-CV-00153 was non-

suited. Most defendants have become somewhat more congenial and helpful after the non-suit. As with separate defendants Doctor Moore, Erika Crompton, Annette Esaw, Corizon, CCS and John and Jane Doe's, the non-suit resulted in the correct hearing aid, and other as needed care. Events before the non-suit were very obvious retaliation. Denial of needed medical care for several years was defendants response to case no. 5:10-CV-00153. NO effort was made to correct their deprivations to me and to stop my pain and suffering. I am submitting grievances CU-12-01144 EXHIBIT $T$, 12-02918 EXHIBIT $U$, 13-00273 EXHIBIT $V$ and 13-00744 EXHIBIT $W$, concerning my needs for hearing aids and batteries. This covers dates from 5/4/12 through 3/13/13. These grievances describe the delays, denials and deprivations by separate defendants Esaw and Crompton. Most of these problems stopped except the problem I have getting hearing aid batteries, after the non-suit so these actions must have been a conspiracy to retaliate on me because Esaw is the only defendant in 5:10-CV-00153 that I know of that is still retaliating. I observed the proper and only way a prisoner has to protect themselves and their rights, via grievances and civil litigation.

18. Separate defendant Troy Glen Moore, M.D. was an employee as chief medical officer for the Cummins Unit infirmary by Corizon. Defendant Moore was terminated on 2/15/13 by Corizon. On 11/4/11 I was seen by Doctor Warren, he diagnosed a hernia and said "I needed surgical repair it to stop my intestines from popping out". On 7/15/12 I submitted a sick call request as the hernia had grown worse. On 7/17/12 at sick call nurse diagnosed I had a hernia and put me on list to see Dr. Moore. When I was called to see Dr. Moore I was left waiting on the concrete bench for five hours and forty four minutes as part of the retaliation for filing 5:10-CV-00153, see grievance CU-12-01837 EXHIBIT $B$. When

14

medical staff did allow me to see Dr. Moore he said he was putting me in to see an outside consultant for surgery. This surgery would also have to be approved by Griffen. Altogether it took over twenty months of pain and suffering to finally receive a surgical repair. Ten months of this delay was caused by Dr. Moore's actions, see grievance 13-02012, EXHIBIT  E . See  grievances 13-01491 EXHIBIT  C , 13-01576 EXHIBIT  D , 13-02042 EXHIBIT  F , and 13-02152 EXHIBIT  G . These separate grievances show a concerted pattern of retaliation, delay and denial of timely and adequate medial care without a justifiable reason. Most of this abuse changed to my benefit after the non-suit. I should not have to fight to get my constitutional First Amendment rights to get adequate medical care. Doctor Moore canceled my scheduled hernia surgery. Doctor Moore canceled the surgery eight day's before he saw me for an examination, ordered by John Doe to "re-evaluate" my surgical need as the records show. The cancel order was made on 8/20/12. To justify the hernia cancellation defendant Doctor Moore entered into my medical file false statements that I did not want the surgery. I reiterate Dr. Moore's part in the conspiracy because of the pain and suffering his actions caused.

On 6/18/13, (this was only fifteen day's after I non-suited case no. 5:10-CV-00153) I was transported to Little Rock Surgical Clinic to see Doctor Buckman, he set me up surgery and did the hernia repair on 7/18/13. This was a total of twenty months after the hernia was diagnosed. Ten months of this delay was retaliation.

19. Separate defendant Corizon Health, Inc., is the successor in interest to Correctional Medial Services, Inc., both of which, at all relevant times herein, with CCS, were the corporations that contracted with the ADC to provide medical care for inmates within the

ADC. CMS/Corizon and now CCS contracted with the ADC stating specific staffing and facilities with all necessary equipment and medicines necessary for adequate medical care of all ADC prisoners, with a quality of care they would receive at any regional hospital. That doctor's would be available to prisoners twenty-four hours daily. That trained nurse's would provide professional quality care twenty-four hours daily. That sick call and treatment procedures be governed by written protocol. CMS/Corizon and CCS hire low level LPN's used to diagnose prisoner complaints, even for those they are not trained for, nor qualified to treat. They have demonstrated a serious lack of knowledge and concern for presented life threatening conditions. Rather than calling a doctor for advice or assistance, they attempt to pretend knowledge and prescribe some type of palliative treatment, like Tylenol or gas pills. What is happening is like the recent death of Eugene Lilly. Routine mis-diagnosis either by design or ignorance has resulted in prisoners finding out they have some type of disease that is killing them. Jimmy Edd Lee went to the infirmary for over a week with complaint of pain and swelling in his arm and shoulder, lethargic, weight loss. He was only seen by LPN's for over a week until finally he was taken to an outside hospital where x-rays found a broken shoulder and test showed he had two types of cancer, he died. This type of treatment is not unusual. CMS/Corizon and CCS are alerted when prisoners are taken to outside facilities for care, also when they are being sued just as in case 5:10-CV-00153 and a plethora of other cases. Within the cases are compliant as described here, including abuse delays and denials, retaliation by CMS/Corizon and CCS staff usually made secondary to complaints and grievances made against them. Part of the retaliation I've had to suffer was when I make a request for medical jacket review or sick call request Infirmary employees would claim they never

16

received the request. See grievance CU-12-1889, EXHIBIT __X__ and a copy of the 7-25-

2012 sick call request Infirmary staff claimed they never received see EXHIBIT __Y__.

This abusive activity often (just as here) can involve two or more staff members who

have conspired to punish the prisoner. This takes several forms, such as denial or delay of

needed medications, treatment, outside consultations (just as here) seeing a real doctor.

LPN's block access to the doctor routinely by mis-quoting policy. This happens when an

inmate asks to see a doctor at sick call. The nurse tells the inmate he has to come to sick

call three times for the same complaint before he can see a doctor. See EXHIBIT __Z__

ADC Health Services and Policy Procedure Manual 38.00, Priority 4, Procedure 4 states:

> "If an offender has been seen in sick call twice for the same complaint but has not yet
> seen a physician or mid level provider (RNP/APN/PA), upon receipt of the third
> complaint for the same condition, the offender will be scheduled to see the physician
> or mid-level provider within five working days of the referral to the physician or
> mid-level provider".

This clearly shows that some CCS employees are giving false information to block

inmates from seeing a doctor. Because only one doctor is assigned to this unit and cannot

see all the prisoners who need a doctor, not an LPN. CMS/Corizon and CCS receives

numerous correspondence and complaints and pleas from the lawyers, friends and

families of prisoners. Still Corizon ignores them, continues to employ unqualified (LPN'

s, aids and others [Dr. Troy Moore who was fired]) who are allowed to PLAY doctor with

the lives and health of prisoners who have NO alternative for care. Corizon/CMS and

CCS institutes no enforced procedure or rule to prevent this sometimes deadly (as in

Eugene Lilly and Jimmy Lee) unwritten policy and ongoing practice. Because of

CMS/Corizon and CCS staff's conduct of deliberate indifference to my serious medical

needs I suffered months of pain, a clear violation of my U.S. Constitution, 8th

Amendment rights, and a violation of my U.S. Constitution 1st Amendment rights to petition courts as retaliation for the civil action 5:10-CV-00153. this unit's infirmary and staff admittedly report up to 300 grievances a month are filed against staff CMS, Corizon and CCS. CMS/Corizon and CCS cannot claim ignorance of the problems here with their medical staff. Case support grievances CU-11-02167, EXHIBIT A A, CU-02357 EXHIBIT B B, CU-10-00716 EXHIBIT GG and CU-13-02424 EXHIBIT HH.

## RELIEF

**VIII.** State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.

20. TRO; A temporary restraining order is requested <u>in limane</u> in relationship to retaliation during the process of this cause of action; and to ensure no loss of medical records or any type communication concerning me having to do with my medical records, care, my legal efforts, and including all e-mail records of such.

21. Permanent injunction: Within due course of this case an permanent injunction to mandate the following under continuation of authority of this Court;

    A. That medical care providers, (Provide a nursing staff adequately trained and instructed to do triage, (2) To do evaluation/diagnosis, and to have a doctor in residence or on call to address illness other than minor non-emergency issues; to recognize the difference.

    B. To address on receipt sick call request that express elevated temperatures, infections, chest pain, shortness of breath, dizziness and or fainting, injury that

involves fractures suspected, bleeding or loss of any body function; whether made by written request or phone request by ADC officials, or walkins.

C. That all medical providers display all rules, regulations, policy and procedures used as nursing protocols for treating or handling of patients, sick calls, and request to other nurses and/or doctors for care and treatment. That these be posted in the same way as the ADC rules pertaining to prisoners and mandated by State law.

22. That Plaintiff be allowed to submit for the Court's review and consideration procedures that would be mandatory and monitored for one year; then mandatory thereafter if the years conduct displays they fully adhere to the mandates in good faith and effort. See grievance CU-12-01888, EXHIBIT DD, and grievance CU-12-01917, EXHIBIT EE.

23. Plaintiff would outline workable, reasonable specific procedures to protect prisoners access to doctors, care and treatment; and to hold all medical care providers accountable with recorded conduct being created so as those records would be out of control of medical providers, but accessible to a prisoner after filing any legal action against a specific provider, or providers.

24. That all medical care providers receive training in the constitutional and lawful rights of prisoners. That they be tested to ensure of their understanding of those rights, and that they can be held personally responsible and liable for wilful violations of the prisoner';s right for care.

25. That medical care providers adhere to the honest responses to prisoners grievances; and those grievances to be reviewed at a  local level by the ADC with adequate supervision and authority to force care and treatment of a serious need as seen by an ADC layman.

19

Grievances in the past have languished in the process for months while the prisoner is in pain, suffering and in danger by delayed care. Delay is often caused by the extension ability of the grievance process itself. See (EXHIBIT CC ) extension forms. This form gives no specific reason for extension, but informs the prisoner that if he disagrees with the extension the grievance complaint will be dismissed. The medical and ADC mis-sue this part of a grievance to make monthly delays. If the grievance is a complaint of medical needs the total grievance time to receive a final response from an ADC Director could be six months or more. A prisoner's grievance is not allowed extra time. My proposed solution would be:

A. If the prisoner objects to the extension that the ADC requests, they answer with what information they have at that time, and submit a detailed reason for asking for the extension.

B. A detailed explanation be given for the request with each extension requested; at no time can the grievance be dismissed for refusing to approve an extension request.

And for such other measures as the Court deems necessary and viable, see grievance numbers CU-12-1888, (EXHIBIT DD ) and CU-12-1917, (EXHIBIT EE ).

26. Plaintiff seeks:

Compensatory,

Consequential, and

Examplary damages from each separate Defendant, and to John and Jane Doe's by involvement.

20

27. CMS/Corizon/CCS:

Compensatory damages for their wilful disregard of the conduct of their agents, employees, for their cruel, abusive and deliberate indifference to the conduct of separate defendants in their retaliation, denial and delay of proper medical care of Plaintiff, my pain and suffering.

CMS/Corizon/CCS have a long sorted history in different states of allowing their employees and agents to abuse prisoners under their care just as has been done to Plaintiff, see "Prison Legal News" pages 1-18 for Corizons abuse of prisoners in "Florida counties", "Arizona DOC", and "Florida DOC", and of "Idaho DOC," wherein descriptions of prisoner abuse, deliberate indifference, denial and delay mirror my complaint. With the up to three hundred (300) grievance complaints monthly from just the Cummins Unit, plus all the civil law suits, complaints from families and attorney's, CMS/Corizon/CCS was fully and adequately aware their employees and agents at Cummins Unit were engaging in the complained of conduct, and that that conduct mirrored the abuse in Idaho, Arizona and Florida and chose to ignore it.

Compensatory damages of : $900,000.00,

Consequential damages for all cost present and future: $200,000.00,

Examplary damages as punitive and to deter further abuse, $500,000.00.

28. Defendant Doctor Troy Glen Moore.

Did wilfully, maliciously, in conspiracy with un-named and named separate defendants, engage in conduct of retaliation by denial, delaying and causing great pain and suffering which is also can be life threatening, he un-scheduled surgery already scheduled to repair my hernia.

Compensatory damages of : $250,000.00,

Consequential damages for all cost present and future: $100,000.00,

Examplary damages as punitive and to deter further abuse, $50,000.00.

29. Defendant Annette Esaw:

Did wilfully engage in a conspiracy of retaliation by denial and delay of needed medical products and scheduled surgery, causing great pain and suffering, as well as putting my health and life in danger.

Compensatory damages of : $20,000.00,

Consequential damages for all cost present and future: $10,000.00,

Examplary damages as punitive and to deter further abuse, $5,000.00.

30. Defendant Erika Crompton:

Did wilfully engage in a conspiracy of retaliation by denial and delay of access to medical records as needed for legal purpose, medical products and the scheduling of surgical procedures and testing, and thereby placing my life and health in danger and causing me great pain and suffering.

Compensatory damages of : $20,000.00,

Consequential damages for all cost present and future: $10,000.00,

Examplary damages as punitive and to deter further abuse, $5,000.00.

31. Defendants John and Jane Doe's:

For their participation in the conspiracy with separate defendants to abuse Plaintiff and cause him pain and suffering. Specific involvement to be addressed as identity and personal involvement becomes known.

32. All Defendants named herein engaged in violation of my state law, state constitutional, and of the United States Constitutional protections as provided in Amendments 1st, 8th, and 14th.

    A. My right to engage in both the grievance process (as mandated by "PIRA") and civil litigation, 1st Amendment.

    B. My right to adequate medical care and pain and suffering, free of deliberate indifference to my serious medical needs, 8th Amendment.

    C. My rights to equal treatment and care, and to the process due me in grievance process and civil litigation. 14th Amendment.

For such other relief as deemed just and proper by the jury and Court.

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.

Executed this 25th day of July, 2014.

Ronald D. O'Neal

ADC # 128560

(Signature(s) of Plaintiff(s)

23

# Hearing Evaluation Report

**Client Name:** O'NEAL, RONALD
**Client #:** 0000418
**Birthdate:** 6/26/1946
**Date of Evaluation:** 1/29/2004



Frequency in Hertz (Hz) — Hearing Level in Decibels (dB)

### Legend

| | Right | Binaural | Left |
|---|---|---|---|
| AC Unmasked | | | |
| AC Masked | | | |
| bc Unmasked | | | |
| bc Masked | | | |
| MCL | M | M | M |
| UCL | | | |
| SF Unaided | | S | |
| SF-A Aided | A | A | A |

### Speech Audiometry

| | SRT | Mask | MCL | UCL |
|---|---|---|---|---|
| R | 35 | | 55 | 110 |
| L | 30 | | 55 | 110 |
| SF | 30 | | 55 | 110 |

### Word Recognition

| | % | Stimulus | Mask |
|---|---|---|---|
| R | 60 | 55 | |
| L | 70 | 55 | |
| SF | 90 | 55 | |

| | % | Stimulus | Noise |
|---|---|---|---|
| R | | | |
| L | | | |
| SF | | | |

### Effective Masking Levels

| Non-Test Ear | | 125 | 250 | 500 | 750 | 1000 | 1500 | 2000 | 3000 | 4000 | 6000 | 8000 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AC | L | | | | | | | | | | | |
| | R | | | | | | | | | | | |
| bc | L | | | | | | | | | | | |
| | R | | | | | | | | | | | |

### Acoustic Reflex

Ipsilateral

| Stimulus Ear | 250 | 500 | 1000 | 2000 | 4000 | 6000 | BBN | LBN | HBN |
|---|---|---|---|---|---|---|---|---|---|
| R | | | | | | | | | |
| L | | | | | | | | | |

Contralateral

| | 250 | 500 | 1000 | 2000 | 4000 | 6000 | BBN | LBN | HBN |
|---|---|---|---|---|---|---|---|---|---|
| R | | | | | | | | | |
| L | | | | | | | | | |

### Pure Tone Average (3Freq.)

| R | L |
|---|---|
| 33 | 33 |

### Tympanometry

| | R | L |
|---|---|---|
| Type | | |
| Ear Canal Volume (cc) | | |
| Peak Pressure (mmH20) | | |
| Peak Height (cc) | | |
| Gradient (mmH20) | | |

### Report Comments

Signature: _____   Date: _____

Exhibit # A
One Page

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _Cummins_

Name _Ronald D. O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _Picket_

FOR OFFICE USE ONLY
GRV. # _CU-12-01837_
Date Received: _AUG 06 2012   CUMMINS UNIT_
GRV. Code #: _Q_

_8-1-12_ (Date) STEP ONE: Informal Resolution

_8-3-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _The excessive time I was forced to wait was not DR. Moore's fault. I spent less than Nine minutes with him._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

---

Is this Grievance concerning Medical or Mental Health Services? _YES_ If yes, circle one. (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how **you** were affected. (Please Print): _July 23, 2012  I was layed in to see DR. Moore for a hernia problem. I was logged in at the Infirmary Holding Cell Security Post at 3:31 PM. I was not called to see DR. Moore until 9:15 PM, a wait of (5) five hours and (44) Fourty four minutes. I logged out of the Infirmary at 9:24 PM. I was forced to wait the entire period either sitting or standing on concrete, which aggravated the degenerative arthritis in my back and neck and also lead to cramps in the area around my partially collapsed lung. This aggravation has caused me a great deal of pain. I fear I was subjected to this extended wait because I have a ongoing civil action, 5:10cv00153 filed against Corizon Health Inc as retaliation._

---

_Ronald D. O'Neal_                                   _8-1-12_
Inmate Signature                                      Date

RECEIVED- DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION
SEP 12 2012
CORRECTIONAL PROG...

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _8-1-12_ (date), and determined to be **Step One** and/or an Emergency Grievance _YES_ (Yes or No). This form was forwarded to medical or mental health? _YES_ (Yes or No). If yes, name of the person in that department receiving this form: _L C Jackson_   Date _8-1-12_

_Lisa Bailey_   _#9708_   _(signature)_   _8-1-12_
**PRINT STAFF NAME** (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: _I Apologize, you had to wait so long, but we have no control over How long the provider spends with each patient. You Have Been Referred To Outside Provider   Chathews on 8/3/12_

_Ronald O'Neal 128560_

Staff Signature & Date Returned _J. Chrysler 8/3/12_   Inmate Signature & Date Received

This form was received on _8-3-12_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No)

Staff Who Received Step Two Grievance: _Cpl. L. Manning_

Action Taken: _Forwarded to Grievance_ (Forwarded to Grievance Officer/Wa

If forwarded, provide name of person receiving this form: _Ms. Fre_

**Exhibit #** B
FOUR Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance Officer, ...
to Inmate After Completion of Step One and Step Two

IGTT420
3GH

*By 3/2*

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC #: <u>128560A</u>     GRIEVANCE #: <u>CU-12-01837</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(602) Your 8-3-12 grievance has been received and reviewed as well as your medical record to determine if medically necessary health care, as determined by your health care provider has been provided to you.</u>
<u>You state on 7-23-12 you logged into the infirmary holding cell at 331 pm and logged out of the infirmary at 9-24 pm. You state you feel you were made to wait this long, out of retaliation, because you have an ongoing civil action filed against Corizon.</u>
<u>We regret the lengthy wait to see the provider. There will be times when, due to emergent issues or security issues, you may be required to wait a lengthy period of time for your appointment. I find no indication you were made to wait out of retaliation. Your grievance is without merit.</u>

_____          _____          _____
Signature of Health Services                    Title                                    Date
Administrator/Mental Health
Supervisor or Designee

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 12 2012

HEALTH & CORRECTIONAL Programs

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?  *Ms Austin may not be aware of the actions of all Corizon Health Inc. employees. In the group of inmates that were layed in to see doctor Moore, inmate J. Johnson, #116200 and I were the last two inmates to see the doctor. Inmate Johnson was seen by the doctor and left the Infirmary around 5:30PM.*

_____          _____          _____
Inmate Signature                                ADC#                                   Date
*Ronald D. O'Neal*                          *128560*                            *9-6-12*

*(SEE PG 2)*

IGTT420                                   Page 1 of 2

NAME: O'NEAL, Ronald D.     ADC # 128560A     Grievance #: CU-12-01837

After 6pm additional inmates were called to the holding cell from their barracks to wait their turn to see doctor Moore. Two of these inmates were called to see DR. Moore ahead of me.

Finally around 9 PM I was able to complain to an officer in the hall way out side of the holding cell that would investigate why I was being made to wait so long to see the doctor was I called to see DR Moore at 9:15 pm.



RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 12 2012

HEALTH & CORRECTIONAL PROGRAMS

IGTT420                          Page 2 of 2

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-12-01837

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

August 1, 2012, you grieved you had a doctor's appointment on July 23 and were put in the Infirmary holding cell at 3:31 pm. You complain that you did not see a doctor until 9:15 pm, a wait of five hours and forty-four minutes. You state you were logged out of the Infirmary at 9:24 pm. You claim this long wait caused you to suffer unnecessary pain. You state you fear you were subjected to this extended wait as retaliation for a civil suit against Corizon.

The medical department responded, "We regret the lengthy wait to see the provider. There will be times when, due to emergent issues or security issues, you may be required to wait a lengthy period of time for your appointment. I find no indication you were made to wait out of retaliation. Your grievance is without merit."

You disagree with this response in your September 6 appeal because the last inmate placed in the holding cell at the same time you were saw the doctor and left the Infirmary around 5:30 pm. You claim after 6:00 pm additional inmates were called to the holding cell from their barracks to wait their turn to see Dr. Moore and two of these inmates were called to see Dr. Moore before you were. You state you complained to a security officer in the hall around 9:00 pm and were called to see Dr. Moore at 9:15 pm.

The medical department apologized for your long wait and there is no evidence to suggest your extended wait was deliberate. I also apologize for the delay in you being seen; however, you stated in your appeal you were seen within 15 minutes after you complained indicating you were inadvertently overlooked. This appeal is without merit.

Director _____Wendy Kelley_____          Date ___10/21/12___

___ LEVEL GRIEVANCE FORM (Attachment I)

Unit/Center __Cummins__

Name __Ronald D. O'Neal__

ADC# __128560__   Brks # __3__   Job Assignment __PICKET__

FOR OFFICE USE ONLY
GRV # CU-13-01491
Date Received: JUN 0 3 2013
GRV. Code Q   CUMMINS UNIT
GRIEVANCE OFFICE

__5-27-13__ (Date) STEP ONE: Informal Resolution

__5-31-13__ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: DR moore canceled my hernia surgery 8-20-12, 8 days before he did the follow up exam of my hernia with DR M.FLOYD on 8-28-12

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ yes _If yes, circle one_ medical _or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): 5-21-13 while trying to stand up, pain from the hernia I've had for over eighteen months caused me to turn suddenly to compensate for the hernia pain. The sudden turn caused a nerve in my back to be injured. The injured nerve is causing me a great deal of pain when I try to situp or work. After a exam of my hernia on 7-23-12 Corizon Health Inc employee Doctor TROY GLEN MOORE informed me he would put me in for an outside consult and surgery to repair my hernia. DR Moore called me back in 8-28-12 for a 2nd hernia exam because the outside consult had been put on hold. Seven weeks later, 10-19-12 I wrote DR Moore, asking about the delay of my hernia repair surgery. I did not receive an answer from him. If DR Moore had done his job and followed up on my medical needs for hernia surgery my back would not of been injured 5-21-13.

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

_Ronald D. O'Neal_          JUL 17 2013   5-27-13
Inmate Signature                           Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on __5-27-13__ (date), and determined to be **Step One** and/or an Emergency Grievance __Yes__ (Yes or No). This form was forwarded to medical or mental health? __Yes__ (Yes or No). If yes, name of the person in that department receiving this form _Lauralin LPN_ Date __5-27-13__
Sgt. M. Neal          46821          Sgt. M. Neal          5-27-13
**PRINT STAFF NAME** (PROBLEM SOLVER)   ID Number   Staff Signature          Date Received
Describe action taken to resolve complaint, including dates: Dr. Moore no longer works here, the consult was deferred, if still having problems please drop a sick call. Lunn LPN 5/30/13

_Ronald O'Neal_ 5-31-13
Staff Signature & Date Returned J. Chapman 5/31/13   Inmate Signature & Date Received
This form was received on __5-31-13__ (date), pursuant to **Step Two**. Is it an Emergency? __No__ (Yes or No).
Staff Who Received Step Two Grievance: Cpl M. Chapman
Action Taken: forwarded (Forwarded to Grievance Officer/Wa
If forwarded, provide name of person receiving this form: _____

**Exhibit # C**
FOUR Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievan

BL 3/0002

IGTT420
3GH

Attachment IV

INMATE NAME:  Oneal, Ronald D.          ADC #:  128560A          GRIEVANCE #:  CU-13-01491

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

5/21/13 while trying to stand up, pain from the hernia Ive had for over eighteen months caused me to turn suddenly to compensate for the hernia pain. The sudden turn caused a nerve in my back to be injured. The injured nerve is causing me a great deal of pain when I try to sit up or walk. After exam of my hernia on 7/23/12 Corizon Health Inc Employee Doctor TROY GLEN MOORE informed me he would put me in for an outside consult and surgery to repair my hernia. DR. Moore called me back in 8/28/12 for a 2nd hernia exam because the outside consult had been put on hold. Seven weeks later 10/19/12 I wrote Dr. Moore asking about the delay of my hernia repair surgery. I did not receive an answer from him. If Dr. Moore had done his job and followed up on my medical needs for hernia surgery my back would not of been injured 5/21/13.

(655)Your 5/31/2013 grievance has been received and reviewed as well as your medical record to determine if medically necessary health care, as determined by your health care providers, has been provided to you.

Records reflect you were seen by Dr. Moore on 7/23/13, he noted you presented with complaints of an enlarging left inguinal hernia. You stated you had previously been seen by Dr. Warren and given a jock strap, and told to return to clinic if hernia became larger or painful, you also stated your hernia is uncomfortable at times with pressure into your left testicle. you denied fever, chills, sweats, shortness of breath, abdominal pain, nausea, vomiting, diarrhea, change in bowel habits, malaise, or myalgia.

Dr. Moore noted you were alert, no distress, you appeared comfortable, ABD soft, and non-tender/non-distended, no masses, bowel sounds normal, left inguinal hernia-reducible. Dr. Moore also noted on this visit left inguinal hernia-enlarging, he noted 1.Surgical Consult for Repair.2. He would ask Ms. Esaw for hernia belt, if available, as we had been out at that time. 3.-return to clinic as needed or sooner if condition worsens in any way, and you expressed understanding.

You were seen again by Dr. Moore on 8/28/13, more information was needed in order for consult to be approved, he noted you stated the hernia belt did not interfere with your work, your hernia did not interfere with your ability to walk to the "Chow Hall", in fact you walk 2-3 miles a day without problems, you stated you do have problems with bowel movements, you reported a pulling sensation when you extend your back or with other movements, you felt as though your hernia was a little larger and more painful than before, however you felt if you had 2 jock straps and an additional hernia belt ( extra was due to hand wash items) you would be fine, in fact you stated you would prefer that to the surgery.

Dr. Moore noted 1.He will request 2 Bell-horn Athletic Supporters for you 2.-He would request an additional Bell-Horn Deluxe Hernia Guard, 3.-He will request nursing to provide 3 Hemoccult Cards for Colorectal Screening, 4.-Prescribe a trial of Fiber-Lax Cap/Tabs daily with at least 8 ounces of fluid. 5.-Drink plenty of water-counseled. 6.-Counseled on adequate fiber in diet.7.-counseled on adequate activity or exercise, 8.-Minimize liquids that contain caffeine and avoid eating large amounts of dairy products-counseled.9.-Return to clinic in 3 months or sooner if worsens in any way, and you expressed understanding.

On 6/3/13, you were seen by Dr. Warren for hernia enlarging over 2 years, now persistently non-reducible and painful, Dr. Warren noted a 3 cm nonreducible direct left inguinal hernia at the medial margin of the inguinal ligament, and a surgical referral was submitted.

On 6/26/13, your consult for Hernia surgery was submitted to the medical director for review.

6/27/13, Medical necessity for Hernia surgery was met.

On 6/28/13 the medical necessity met consult was forwarded to Ms. Esaw.

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT

JUL 1 7 2013

HEALTH & CORRECTIONAL PROGRAMS

On 7/8/13, You Hernia Surgery was scheduled.

I find this grievance with merit due to the delay in medical treatment, and we apologize for this inconvience.

_____
Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

<u>Laura Lee Morgan</u>
Title

<u>07/10/2013</u>
Date

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

I agree with Ms L.L Morgan this grievance, CU-13-01491 has merit due to the delay in medical treatment. Please process this grievance through the Deputy Director for Health and Correctional Programs in order for the Exhaustion of Administrative Remedies as required by THE Prison Litigation REFORM ACT.

_Ronald D. O'Neal_          _128560_          _7-11-13_
Inmate Signature              ADC#                Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

JUL 17 2013

HEALTH & CORRECTIONAL PROGRAMS

IGTT430
3GD

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-01491

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

May 27, 2013, you grieved that pain from your hernia caused you to turn suddenly on May 21 causing a nerve in your back to be injured. You claim this back injury would not have occurred if Dr. Moore had followed-up on your need for hernia surgery.

The medical department reviewed your care from July 23, 2012, to July 8, 2013, when your surgery was scheduled. They found the delay in medical treatment with merit. The medical department inadvertently dated your encounter with Dr. Moore on July 23 as occurring in 2013 in their response, but it actually occurred in 2012.

Your appeal states you agree with Ms. Morgan's finding this grievance with merit, but you are submitting an appeal to exhaust your administrative remedies as required through the Prison Litigation Reform Act.

Your grievance against Dr. Moore is untimely. He did not need to follow-up unless you reported further issues to the medical department. You stated in your grievance that you "wrote Dr. Moore asking about the delay of my hernia repair surgery" on October 19, 2012. The correct manner to request health services is the use of a health services request form commonly referred to as a sick call. You did not follow procedure, and your grievance is untimely if I use the October 19, 2012 date. You have fifteen days to submit a grievance.

You did not follow policy and your appeal will not be addressed. The medical department should not have found your grievance with merit (and it appears to have been an error). Your appeal is denied.

Director _____     Date  8/29/13 _____

IGTT430                              Page 1 of 1

CU# 13-01576

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _Cummins_

Name _Ronald D. O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _PICKET_

FOR OFFICE USE ONLY
RECEIVED
GRV. #
Date Received: JUN 1 1 2013
GRV. Code #: CUMMINS UNIT
GRIEVANCE OFFICE

_6-5-13_ (Date) STEP ONE: Informal Resolution

_6-10-13_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.) If the issue was not resolved during Step One, state why: _DR MOORE canceled my hernia surgery on 8-20-12 without an exam. He tried to cover/justify the cancelation by giving me on exam 10-28-12._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ __yes__ _If yes, circle one:_ (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected. (Please Print): _5-31-13, during a medical records review I discovered that TROY GLEN MOORE had canceled my hernia surgery 8-20-12. On 8-28-12 I was called to the Infirmary for an exam done by DR MOORE and DR. M. FLOYD to cover up the fact my hernia surgery had been canceled without an exam. DR Moore recorded that I stated (1) "I run 2 to 3 miles daily without problems" and (2) Inmate says "he would prefer a hernia belt to surgery." DR Moore misrepresented my statements and the facts in order to justify canceling my hernia surgery. THE FACTS ARE: (1) Prison records will show we are only allowed to go to the yard 2, at the most 3 times a week, not daily as DR Moore stated. and (2) I told DR Moore pain wise I would prefer the belt to being cut on but I didn't want to wear a hernia belt for the rest of my life and I definitely wanted the surgery to repair my hernia. My grievance is: DR Moore canceled my surgery without an exam and it was done under duress of his bosses and employer because of a pending law suit, 5:10cv00015 I had filed._

_Ronald D. O'Neal_                    _6-5-13_
Inmate Signature                        Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _6-5-13_ (date), and determined to be **Step One** and/or an Emergency Grievance _Yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _____ Date _6-05-13_
_Lisa Bailey_    _49708_    _____    _6-5-13_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received
Describe action taken to resolve complaint, including dates: _You were seen by DR Warren on 4/3/13 concerning your hernia which is now a non-reducible hernia in which you will be scheduled for surgery. When you seen Dr. Moore in 2012 he noted you hernia was still reducible at that time. — Drummond 6/10/13_

_E C Drummond 6/10/13_    _Ronald O'Neal 128560_
Staff Signature & Date Returned        Inmate Signature and Date Received
This form was received on _6-10-13_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Warden
If forwarded, provide name of person receiving this form: _____

**Exhibit #** D
_Four Pages_

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance

*BKD3/0002*

IGTT420
3GH

Attachment IV

INMATE NAME:  Oneal, Ronald D.          ADC #:  128560A          GRIEVANCE #:  CU-13-01576

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

5-31-13, during a medical records review I discovered that Troy Glen Moore had canceled my hernia surgery 8-20-12. On 8-28-12 I was called to the Infirmary for an exam done by Dr. Moore and Dr. M. Floyd to cover up the fact my hernia surgery had been canceled without an exam. Dr. Moore recorded that I stated (1) I ran 2 to 3 miles daily without problems and (2) Inmate says he would prefer a hernia belt to surgery. THE FACTS ARE: (1) Prison records will show we are only allowed to go to the yard 2, at the most 3 times a week, not daily as Dr. Moore stated, and (2) I told Dr. Moore pain wise I would prefer the belt to being cut on but I didnt want to wear a hernia belt for the rest of my life and I definitely wanted the surgery to repair my hernia. My grievance is: Dr. Moore canceled my surgery without an exam and it was done under the direction of his bosses and employer because of a pending law suit, 5:10CV00153 I had filed.

(GRV Code 623) Your 06/10/2013 grievance has been received and reviewed as well as your medical record to determine if medically necessary health care, as determined by your health care providers, has been provided to you.

You allege that Dr. Moore and Dr. Floyd cancelled your hernia surgery 08/28/12 without examining you. Review of your medical record there is no documentation they cancelled a hernia surgery on 08/28/12 as you stated. Review also shows Dr. Moore noted that you walked 2-3 miles daily without problems. It is noted that the patient felt if he had two jock straps and an additional hernia belt he would be fine and he would prefer this to surgery. There is no documentation in the note that he cancelled the hernia surgery. Your complaint is non-founded due to there is no documentation to substantiate your claim them cancelling the hernia surgery, that it was under the direction of their bosses and employer, or due to a pending lawsuit.

Medical Record shows you were seen by Dr. Warren on 06/03/13 concerning the hernia and he ordered a Surgical Referral. Surgerical Referral was completed on 06/03/13 and approved. You were seen by Dr. Bachman on 06/18/13 and he recommended hernia repair and the consult has been requested and scheduled.

In conclusion, your grievance is without merit due to there is no documentation to substantiate your claim concerning Dr. Moore and Dr. Floyd cancelling your hernia surgery.

Review of the record does show you have been seen for this issue in June and the consult has been requested & scheduled for surgery.

If your medical condition changes please address any concerns through the sick call process.

Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

RECEIVED DEPUTY DIRECTOR
ARKANSAS DEPARTMENT OF CORRECTION
JUL 17 2013

HEALTH & CORRECTIONAL PROGRAMS   *Health Srvc Adm.*   Title   02/11/13   Date

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal

IGTT420                                    Page 1 of 2

statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? Ms D. Cecil made a mistake when she was researching my medical records. I did not claim in grievance CU-13-01576 that DR Troy Glen Moore conceded my hernia surgery 8-28-12 as stated by Ms Cecil in paragraph three of page one. In the 1st sentence of my grievance I clearly state DR Moore canceled my hernia surgery 8-20-12. Documentation of DR Moore's cancelation of my surgery can be located in the consultation section of my medical jacket under the date of 8-20-12, thus this grievance does have merit.

_Ronald D. O'Neal_                     _128560_               _7-12-13_
Inmate Signature                         ADC#                    Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

JUL 17 2013

HEALTH & CORRECTIONAL PROGRAMS

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-01576

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

June 5, 2013 you grieved that you saw Dr. Moore on August 28, 2012, and his documentation misrepresented your statements to justify canceling your hernia surgery; that your surgery was canceled due to a lawsuit. You claim you discovered this during a May 31 record review.

The medical department responded that surgery was not canceled under the direction of Dr. Moore's employer or because of a lawsuit, and your grievance was found without merit.

Your appeal states documentation of Dr. Moore canceling your surgery can be located in the consult section of your medical record on August 20, 2012; thus, your grievance has merit.

Dr. Moore discussed the issue of surgery with you August 28, 2012; you did not submit a grievance within 15 days as allowed by policy; therefore, I will not address this issue.

Your appeal is denied.

Director _____Wendy Kelley_____   Date _____8/29/13_____

IGTT430

Page 1 of 1

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center ___Cummins___

Name ___Ronald D. O'Neal___

ADC# __128560__   Brks # __3__   Job Assignment __PICKET__

__7-21-13__ (Date) STEP ONE:  Informal Resolution

__7-24-13__ (Date) STEP TWO:  Formal Grievance (All complaints/concerns should first be handled informally.)
        If the issue was not resolved during Step One, state why: _This grievance is Over CHI's and_
_DR Moore's retaliation that caused me to suffer an extra ten months, not DR Warren part._
_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to
a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious
nature).  If you marked yes, give this completed form to the designated problem-solving staff, who will sign the
attached emergency receipt.  If an Emergency, state why: _____

FOR OFFICE USE ONLY
GRV. # RECEIVED
Date Received: JUL 2 5 2013
GRV. Code Cummins Unit
GRIEVANCE OFFICE

_Is this Grievance concerning Medical or Mental Health Services?_ __YES__  If yes, circle one: (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, __date__, place, name of personnel
involved and how __you__ were affected.  (Please Print): _7-18-13 I underwent hernia surgery to_
_repair a Left Inguinal Hernia that I had suffered with for 20 months, since_
_November 2011. My surgery was done by DR J. Buckman at the Little Rock Surgical Clinic._
_This surgery was delayed for ten months and eleven days when it was cancelled by_
_DR TROY Glen Moore 8-20-12, under the direction of CORIZON HEALTH INC (CHI)_
_and employees that "I RETAIN THE RIGHT TO NAME AS THEY BECOME KNOWN"_
_in retaliation for a civil suit 5:10CV00153, I had filed against CHI and_
_some of their present and past employees. CHI and their employees_
_deliberate indifference to my health and well being in concert with the_
_retaliation against me for my civil action caused me unnecessary pain_
_suffering during this delay. The same day, 6-3-13, I non-suited_
_5:10CV00153 DR William Warren was allowed to reschedule my_
_hernia surgery, which was performed by DR Buckman thirteen five days_
_Later._

_Ronald D. O'Neal_                          _7-21-13_
Inmate Signature                             Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION
AUG 28 2013

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _7-21-13_ (date), and determined to be Step One and/or an Emergency Grievance
_Yes_ (Yes or No).  This form was forwarded to medical or mental health? _Yes_ (Yes or No).  If yes, name
of the person in that department receiving this form: _Bunnell_        Date _7-31-13_
__Sgt M. Neal__       _7517_        _SoNR_        _7-21-13_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature        Date Received
Describe action taken to resolve complaint, including dates: _The consult was submitted_
_on 6/25/13 by Dr. Warren, it takes time for approval, and_
_appointment scheduling. Duncan LPN  7-24-13_
_King 7-24-13_        _X Ronald O'Neal 7-24-13_
Staff Signature & Date Returned        Inmate Signature & Date Received
This form was received on _7-24-13_ (date), pursuant to **Step Two**.  Is it an Emergency? (Yes or No)
Staff  Who Received Step Two Grievance: _Capt Whitetail_
Action Taken: _None_ (Forwarded to Grievance Officer/Ward
If forwarded, provide name of person receiving this form: _____

**Exhibit #** E
FOUR Pages

--------------------------------------------------------------------------

**DISTRIBUTION:  YELLOW & PINK** – Inmate Receipts; **BLUE** -Grievance

Bk 3/0002

IGTT420
3GH

Attachment
RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 2 8 2013

HEALTH & CORRECTIONAL PROGRAMS

INMATE NAME:  Oneal, Ronald D.         ADC #:  128560A      GRIEVANCE #:  CU-13-02012

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(GRV 655) You 7/24/2013 grievance has been received as well as your medical record to determine if medically necessary health care, as determined by your health care provider, has been provided to you.

You state in you grievance that this grievance is over CHI's and Dr. Moor's retaliation that caused me to suffer an extra ten months, not Dr. Warren part.

Records reflect you were seen by Dr. Moore on 7/23/13, he noted you presented with complaints of an enlarging left inguinal hernia. You stated you had previously been seen by Dr. Warren and given a jock strap, and told to return to clinic if hernia became larger or painful, you also stated your hernia is uncomfortable at times with pressure into your left testicle, you denied fever, chills, sweats, shortness of breath, abdominal pain, nausea, vomiting, diarrhea, change in bowel habits, malaise, or myalgia.

Dr. Moore noted you were alert, no distress, you appeared comfortable, ABD soft, and non-tender/non-distended, no masses, bowel sounds normal, left inguinal hernia-reducible. Dr. Moore also noted on this visit left inguinal hernia-enlarging, he noted 1.Surgical Consult for Repair.2. He would ask Ms. Esaw for hernia belt, if available, as we had been out at that time. 3.-return to clinic as needed or sooner if condition worsens in any way, and you expressed understanding.

You were seen again by Dr. Moore on 8/28/13, more information was needed in order for consult to be approved, he noted you stated the hernia belt did not interfere with your work, your hernia did not interfere with your ability to walk to the "Chow Hall", in fact you walk 2-3 miles a day without problems, you stated you do have problems with bowel movements, you reported a pulling sensation when you extend your back or with other movements, you felt as though your hernia was a little larger and more painful than before, however you felt if you had 2 jock straps and an additional hernia belt ( extra was due to hand wash items) you would be fine, in fact you stated you would prefer that to the surgery.

Dr. Moore noted 1.He will request 2 Bell-horn Athletic Supporters for you 2.-He would request an additional Bell-Horn Deluxe Hernia Guard, 3.-He will request nursing to provide 3 Hemoccult Cards for Colorectal Screening, 4.-Prescribe a trial of Fiber-Lax Cap/Tabs daily with at least 8 ounces of fluid. 5.-Drink plenty of water-counseled. 6.-Counseled on adequate fiber in diet.7.-counseled on adequate activity or exercise, 8.-Minimize liquids that contain caffeine and avoid eating large amounts of dairy products-counseled.9.-Return to clinic in 3 months or sooner if worsens in any way, and you expressed understanding.

On 6/3/13, you were seen by Dr. Warren for hernia enlarging over 2 years, now persistently non-reducible and painful, Dr. Warren noted a 3 cm nonreducible direct left inguinal hernia at the medial margin of the inguinal ligament, and a surgical referral was submitted.

On 6/26/13, your consult for Hernia surgery was submitted to the medical director for review. On 6/27/13, Medical necessity for Hernia surgery was met.
On 6/28/13 the medical necessity met consult was forwarded to Ms. Esaw.
On 7/8/13, You Hernia Surgery was scheduled.
On 7/18/13, you received your surgery, due to the delay, in receiving your surgery, this grievance has merit, but has now been resolved.

_____

Signature of Health Services                    _Laura Lee Morgan_        _08/22/2013_
Administrator/Mental Health Supervisor or              Title                    Date
Designee

---

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling
in the information requested below and mailing it to the Deputy Director for Health & Correctional
Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to
the original grievance. Do not list additional issues which were not part of your original grievance as they
will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?  I agree with Ms Laura Lee
Morgan, this grievance has merit because of the long delay in my receiving
hernia surgery.   But the retaliation by Corizon Health Inc.
and the fact that DR Moore, part in this retaliation was on
effort by him to stave off his eventual firing for poor job
performance and other issues that led to my surgery being
delayed are not addressed.

_Ronald D. O'Neal_            _128560_              _8-24-2013_
   Inmate Signature             ADC#                  Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 2 8 2013

HEALTH & CORRECTIONAL PROGRAMS

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-02012

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On July 21, 2013, you grieved that Corizon delayed your hernia repair surgery in retaliation for your lawsuit against them. August 20, 2012, under the direction of Corizon, Dr. Moore canceled your consult for hernia surgery; however, on June 3, 2013, Dr. Warren was allowed to "reschedule" the surgery completed July 18.

The medical department discussed your record in their response, and found your grievance with merit due to the delay in your surgery, but resolved.

Your appeal states that you agree that your grievance had merit; however, the issue regarding retaliation by Corizon was not addressed.

Your grievance should have been rejected because any issue of retaliation had occurred, according to your grievance, when Dr. Moore was the medical director for the Cummins Unit; your grievance was not written until July 21, 2013, so it was not submitted within 15 days as required by policy; therefore, I will not address the merits of this issue.

Your appeal is denied, and you are encouraged to follow the grievance policy in the future.

_____          10|10|13
Director                           Date

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

Unit/Center ___Cummins___

Name ___Ronald D. O'NEAL___

ADC# __128560__  Brks # __3__   Job Assignment __PICKET__

RECEIVED
FOR OFFICE USE ONLY
GRV. # __CU-13-02042__
Date Received ___JUL 2 9 2013___
CUMMINS UNIT
GRV. Code # __BC__
GRIEVANCE OFFICE

__7-22-13__(Date) STEP ONE:  Informal Resolution

__7-26-13__(Date) STEP TWO:  Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _Nurse K King denying me medical treatment less than 24 hours after I had surgery was wrong. Boardman deserves on A for cleaning_

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature.  If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt.  If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _yes_  _If yes, circle one_ (medical) _or_ mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _7-19-13 I was scheduled for 7AM treatment call. I was ready at 6:50 AM and notified the unit officer, Ms B Davis, to let me know when treatment call was announced. The call ran onto do to a EAST END lock down. Ms. Davis notified me around 9:30 AM treatment call had been made. The Infirmary officer, Ms Baileys log records show her last call was made at 9:34 AM. Ms Briscoe's log shows I checked in at the Infirmary at 9:37AM. Upon entering the Infirmary Nurse K King informed me I was late and I could return to my barracks. I informed her I had hernia surgery the day before and ask her if she was going to refuse me medical treatment. She said " yes and to return to my barracks. This is an example of Corizon Health Inc and some of their efforts to retaliate against me for an on going law suit. AT 10:49 Nurse Boardman had me returned to the Infirmary, retaped my hernia bandage and gave me needed meds. after Nurse K King's conduct had been discovered._

_Ronald D. O'Neal_                      _7-22-13_

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

Inmate Signature                          Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _7-22-13_ (date), and determined to be **Step One** and/or an Emergency Grievance
_Yes_ (Yes or No).  This form was forwarded to medical or mental health? _yes_ (Yes or No).  If yes, name
of the person in that department receiving this form: _Mary Sears_  Date _7/22/13_
_Lisa Bailey_  _49708_  _Mary Sears_  _7-22-13_
PRINT STAFF NAME (PROBLEM-SOLVER)   ID Number   Staff Signature            Date Received
Describe action taken to resolve complaint, including dates: _According to your electronic health record, Ms.King did chart that you was late for treatment call. Ms. Boardman did see you at 10:49 for treatment call & you were taken care of. I will discuss this issue with Ms. King._ _- D Humphrey 7/25/13_
_D Buck_  _7-25-13_  _Ronald O'Neal_  _7-25-13_
Staff Signature & Date Returned        Inmate Signature & Date Received

This form was received on _7-26-13_ (date), pursuant to Step Two.  Is it an Emergency? _NO_ (Yes or No)
Staff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _Forwarded_  (Forwarded to Grievance Officer/Warden)
If forwarded, provide name of person receiving this form: _____

**Exhibit #** **F**
FOUR Pages

**DISTRIBUTION:  YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance

BK3/0002 ✓

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>          ADC #: <u>128560A</u>          GRIEVANCE #: <u>CU-13-02042</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(GRV 653) You 7/26/2013 grievance has been received as well as your medical record to determine if medically necessary health care, as determined by your health care provider, has been provided to you.</u>

<u>You state in your grievance that you were denied your treatment call on 7/19/13, by Nurse King.</u>

<u>Records reflect, Nurse King documented, on 7/19/13, that last call for treatment call, was called at 0932, and you were informed that treatment call was complete, and instructed to come to the next pill call. Nurse King, was a just helping out at our unit at the time, and was not aware that you had just had surgery. Ms. Boardman called you back in and completed treatment call, on you at 10:36, she documented, bandage over groin area intact, and there were no signs or symptoms of infection noted, and you has no complaints. You received your treatment, therefore there is no merit to this grievance.</u>

Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

<u>Laura Lee Morgan</u>
Title

<u>08/26/2013</u>
Date

RECEIVED DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

## INMATE'S APPEAL

AUG 3 0 2013

HEALTH & CORRECTIONAL PROGRAMS

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? Records show last call was given 9:32 AM. I was notified at the 9.32 AM call by officer B. Davis it was time to go to treatment call. After I was notified I walked over 400 feet through 3 exit gates from 3 BK5 and logged in at the Infirmary at 9:37 AM. Common sense would tell anyone that it takes a few minutes to make this trip. Nurse KING should of made herself aware which inmates were scheduled for treatment and their medical conditions. To denie me treatment put me at risk for infection, further pain, suffering and

shows a complete deliberate indifference to my health needs.

_Ronald D. O'Neal_     _128560_     _8-27-2013_
      Inmate Signature            ADC#          Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 3 0 2013

HEALTH & CORRECTIONAL PROGRAMS

IGTT430
3GD



Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-02042

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

On July 22, 2013, you grieved that Nurse King denied you treatment on July 19. You reported to the infirmary when the barracks officer advised you of treatment call, but Nurse King advised you that treatment call was over and to return to your barracks. Nurse Boardman called you back to the infirmary about an hour later, re-taped your bandage and administered your medications.

The medical department responded, "Records reflect, Nurse King documented, on 7/19/13, that last call for treatment call, was called at 0932, and you were informed that treatment call was complete, and instructed to come to the next pill call. Nurse King, was a just helping out at our unit at the time, and was not aware that you had just had surgery. Ms. Boardman called you back in and completed treatment call, on you at 10:36, she documented, bandage over groin area intact, and there were no signs or symptoms of infection noted, and you has no complaints. You received your treatment, therefore there is no merit to this grievance."

Your appeal states the officer called for treatment at 9:32 am and you were logged into the infirmary at 9:37 am, and Nurse King should have known which inmates were scheduled for treatment and their medical conditions. By denying you treatment, you were put at risk for infection, further pain and suffering which shows deliberate indifference.

July 19, Nurse King noted that you reported to the infirmary after treatment call had been completed and that she advised you to return at the next treatment call. Approximately an hour later, Nurse Boardman noted that she performed your treatment.

Your grievance was found without merit because you received treatment approximately an hour later. Although you were originally sent back to your barracks without receiving treatment, you were called back and afforded treatment; therefore, I find this appeal without merit.

Wendy Kelley                    10/14/13
_____       _____
Director                        Date

WCB-0 2152

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

FOR OFFICE ONLY

RECEIVED

GRV. # _____

Date Received: AUG 0 7 2013

GRV. Code #: _____ UNIT
GRIEVANCE OFFICE

Unit/Center _Cummins_

Name _Ronald O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _Picket_

_8-1-13_ (Date) STEP ONE: Informal Resolution

_8-6-13_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)

If the issue was not resolved during Step One, state why: _I did not receive treatment for infection_
_in my surgical incision, was only given a 2 day layin and problems caused by DR Buckman were not addressed._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _yes_ _If yes, circle one:_ (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _7-18-13 DR J Buckman operated_
_on me for an left Inguinal Hernia at the Little Rock Surgical Clinic._
_After the operation DR Buckman did not examine or consult me after_
_I woke up. 8-1-13 I was examined by Nurse Bland, She_
_confirmed that part of the area near the hernia cut was_
_numb, that there was a roll of quarters size knot of something_
_under the skin that felt like it was sticking or tearing_
_away from tissue and pain should be expected._
_When I informed Ms Bland I had puss coming out of the_
_cut a week later and I was only given (2) two days of_
_treatment call. Ms Bland said, "two days of treatment_
_was all I needed. I was also only given a (2) two day_
_layin from work._

_Ronald O'Neal_                                         _8-1-13_
Inmate Signature                                          Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 16 2013

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
HEALTH & CORRECTIONAL PROGRAMS
This form was received on _8-1-13_ (date), and determined to be **Step One** and/or an Emergency Grievance
_yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name
of the person in that department receiving this form: _____   Date _____

_Lisa Bailey_           _49708_      _Lisa Bailey_           _8-1-13_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff/Signature   Date Received

Describe action taken to resolve complaint, including dates: _You were seen by Nurse Bland_
_8-1-13. At this time you were given restrictions of: strenous_
_activity, restrict prolonged crawling, stooping, running, and restrict_
_assignment requiring handling, lifting, hoeing in excess of 10 pounds for_ _J hm_

_[signature]_ _8-6-13_            _Ronald O'Neal_ _8-6-13_ _4 hrs_ _8/5/13_
Staff Signature & Date Returned         Inmate Signature & Date Received

This form was received on _8-6-13_ (date), pursuant to Step Two. Is it an Emergency? _N(o)_ (Yes or No)
Staff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Wa
If forwarded, provide name of person receiving this form: _____

**Exhibit #** _G_
_FOUR Pages_

-----------------------------------------------------------------

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievanc

BK3/0002 ✓

IGTT420
3GH

Attachment IV

INMATE NAME:  Oneal, Ronald D.          ADC #:  128560A          GRIEVANCE #:  CU-13-02152

### HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(GRV 623) Your 8/6/13 grievance has been received as well as your medical record to determine if medically necessary health care, as determined by your health care provider, has been provided to you.

You state in your grievance that you did not receive treatment for infection in your surgical incision, was only given 2 day lay-in, and problems caused by Dr. Buckman were not addressed.

Records reflect you were seen for a follow-up from your hernia surgery on 8/1/13, it was noted by the APN that you were talking of the possible poor outcomes that you are going to have as a result of your surgery, you stated " I don't have much time to write my grievance, I am sure that doctor left some clamps or something in me." Ms. Bland reviewed your vital signs, and medication list, reviewed provider consultation report dated 7/18/13, with another nurse present, she examined your left groin area...moderate swelling...no discoloration, incision intact/dry, scrotal contents, within normal limits, there was no mention of infection to your incision site. You were given Restrictions of avoid prolonged crawling, restrict assignment requiring prolonged stooping,jumping, walking, or standing, avoid heavy lifting, restrict assignment requiring handling, lifting of heavy materials in excess of 10 pounds, she reviewed treatment plan with you, advised you to shower daily, non- strenuous activity, and you voiced understanding.
You received proper medical treatment, there is no merit to this grievance.

_____
Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

Laura Lee Morgan
_____
Title

09/09/2013
_____
Date

RECEIVED DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 1 6 2013

HEALTH & CORRECTIONAL PROGRAMS

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

When Ms Bland realized I was only given treatment and a two day layin after hernia surgery she tried to clean up this problem twelve days after I had been

Put back to work by issuing me another lay in, this time for ten days. The additional ten day script did not include an exam by medical staff or any type of treatment.

_Ronald O'Neal_           _128560_       _9-11-13_
Inmate Signature              ADC#             Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 16 2013

HEALTH & CORRECTIONAL PROGRAMS

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-02152

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On August 1, 2013, you grieved that you did not receive proper medical treatment after having a hernia repaired. You state that you had surgery on July 18 and only received two days of treatment call and a lay-in for two days. You state that you were seen by Mrs. Bland on August 1 who confirmed a hard knot under the incision site and told you that the two days of treatment was all you needed.

The medical department responded, "Records reflect you were seen for a follow-up from your hernia surgery on 8/1/13, it was noted by the APN that you were talking of the possible poor outcomes that you are going to have as a result of your surgery, you stated 'I don't have much time to write my grievance, I am sure that doctor left some clamps or something in me'. Ms. Bland reviewed your vital signs, and medication list, reviewed provider consultation report dated 7/18/13, with another nurse present, she examined your left groin area...moderate swelling...no discoloration, incision intact/dry, scrotal contents, within normal limits, there was no mention of infection to your incision site. You were given Restrictions of avoid prolonged crawling, restrict assignment requiring prolonged stooping,jumping, walking, or standing, avoid heavy lifting, restrict assignment requiring handling, lifting of heavy materials in excess of 10 pounds, she reviewed treatment plan with you, advised you to shower daily, non- strenuous activity, and you voiced understanding. You received proper medical treatment, there is no merit to this grievance."

Your appeal states that Mrs. Bland tried to cover up the lack of medical treatment you received after your surgery by issuing you a lay-in for 10 days; however, the new lay-in did not include an exam by medical staff or any type of treatment.

July 18, Nurse Boardman noted your return from surgery. She noted that Mr. Montgomery, APN, gave a verbal order for Hydrocodone for seven days, treatment call for 48 hours, provider to examine your incision after 48 hours, no strenuous activity, and you could return to your barracks. Nurse Boardman ordered the Hydrocodone, issued you a restriction for no duty, sports, yard or strenuous physical activity until July 20 and noted for your dressing to be removed in 48 hours with a provider to exam the site after removal and to follow up with the provider in two weeks. July 20, Nurse Reese noted that your steri-strips were intact, minimum amount of swelling noted to surgical area, no redness, drainage or discoloration, no signs or symptoms of infection and she applied a clean dressing. August 1, you were seen by Mrs. Bland who noted moderate swelling and no discoloration to left groin area, incision intact/dry, scrotal contents within normal limits, issued you duty restrictions until August 16 and noted for you to follow up as needed. A review of your medical record does not indicate that you were seen in sick call during July 20 and August 1 for complaints related to your incision.

Your grievance should have been found with merit at the unit level due to the delay in you being seen by a provider after your surgery; however, your appeal is without merit because you were seen August 1.

_Windy Kelley_
Director

_10/14/13_
Date

# REQUEST FOR INTERVIEW

UNIT *Cummins*

TO: DR Moore                          DATE: 10-19-12

OFFICE: Infirmary

FROM: Ronald O'Neal
(Inmate's Name)

NUMBER: 128560     BKS: 3

JOB ASSIGNMENT: PICKET          SUPERVISOR: Ms Collins

WORKING HOURS: 9 AM   TO: 7 pm

GIVE A DETAILED REASON FOR INTERVIEW: You called me in to check my hernia 8-28-12 because your recommendation for an out side consultant had been put on hold. IT's been over seven weeks sence you sent the additional information in. When are they going to repair my hernia?

*Ronald O'Neal*
Inmate's Signature

ADC-CDC—614

Exhibit # H
ONE Page

| ARKANSAS DEPARTMENT OF CORRECTION | Reference No. 59.01 |
|---|---|
| | EFFECTIVE: 07/01/2002 |
| HEALTH SERVICES | ADMIN AUTHORITY G. Wilson, Regional Manager |
| POLICY AND PROCEDURE MANUAL | MEDICAL AUTHORITY R. Anderson, M.D., Regional Medical Director |
| | REVISED: 03/15/2003 |
| TITLE:  HEALTH CARE RECORD PROCEDURES | Page 1 of 15 |

**Reference:**   ACA 1-HC-4A-06, 3-43476
ACA 1-HC-4A-07, 3-4378
ACA 1-HC-4A-08, 3-4379
ACA 3-4377

**Policy:** A health care record will be established for each inmate entering the Department of Correction and the Department of Community Corrections. Each health care record will contain a chronological record of all medical and dental encounters and findings. This policy and procedure does not include requirements for mental health records which are included in the Arkansas Department of Correction Mental Health Manual.

**Procedures:**

1. **The Health care record**

   a.  The Health Care Record (HCR) will be utilized and maintained for each inmate/and or resident who receives assessment and/or treatment in any unit in the Department of Correction or Department of Community Correction in the state of Arkansas.

   b.  The health care record for all inmates and/or residents will be initiated from the intake center for each department.

   c.  At sites where the electronic health care record is available, a printed document from the electronic record for each encounter for Medical or Dental services will be placed in the health care record binder.

   d.  The printed record will be permanent and entries should be typed/printed or written in black or blue ink. Pencils and other colored inks will not be used except for red ink or pencil used in standard dental charting.

   e.  Each printed health care record will be maintained at the patient's home site while the patient is in an active status. Upon discharge or parole, the printed record will be shipped to the Pine Bluff Unit for archiving.

   f.  All documentation in the health care record will be maintained in a standard format and arranged in a standardized sequence.

   g.  The content of the health care record will be sufficiently comprehensive and detailed to achieve the following:

# Exhibit # I
FIFTEEN Pages



| TITLE: HEALTH CARE RECORD PROCEDURES | Page 2 of 15 |
|---|---|

    1) Foster high quality of treatment and a continuity of care.

    2) Meet the requirements of legal and regulatory agencies with jurisdiction over medical/dental services and the accrediting standards in those accreditation programs in which the ADC/DCC elects to participate.

    3) Supply a database for all other users of the health care record.

    4) Reflect the assessment and care of the patient to include diagnosis, details of diagnostic studies, treatments rendered, and the outcome of such treatment.

2. **Abbreviations and Symbols**

    a. In order to reduce error and foster clarity of written communication only approved abbreviations and symbols will be used when making entries in the health care record.

    b. Each approved abbreviation and symbol will have only one meaning.

    c. The Medical Staff annually, with input to include pharmacy, dental and dietary will approve abbreviations and symbols.

    d. It will be the responsibility of the Director of Nursing to publish and maintain the abbreviations listing.

3. **Authentication of Entries**

    a. Any content or encounter by physicians, health care practitioners, and administrative personnel will be documented in the health care record.

    b. All entries in the electronic record are authenticated when an entry is saved as evidenced by the user name and title shown on the screen/document.

    c. The individual who is the source of the information will authenticate all printed documents from the electronic health care record. Signatures will include the first name, last name and title.

4. **Use of Signature (Facsimile) Stamps.** The use of signature stamps is not authorized in the health care record unless accompanied by a written signature.

5. **Correction of Errors**

    a. <u>Small Errors</u> – defined as a word, one or two lines.

        Draw a single line through the incorrect entry. Label it as an error, initial and date.

                Error 2/3/99 ERH

        Example – Billy put an ~~apple~~ in his ear.

    b. <u>Large Errors</u> – defined as a paragraph on a page where other correct entries have already been made.

| TITLE: HEALTH CARE RECORD PROCEDURES | Page 3 of 15 |
| --- | --- |

Draw an "X" through the incorrect entry. In the margin write error, date, initials and where the corrected error can be found.

c. <u>Electronic Errors</u> – An error made in the electronic health care record may be corrected by creating an addendum to the encounter where the error occurred detailing the error.

6.  **Verbal and Telephone Orders**

a.  Authority to Issue - Only clinicians are authorized to issue verbal or telephone orders.

b.  Authority to Receive - Only Registered Nurses (RN), Licensed Practical Nurses (LPN) or midlevel providers (APN, RPN, PA, etc) are authorized to receive and act upon verbal or telephone orders.

c.  Documentation - Upon receipt of the verbal order, it will be entered into the Verbal Orders screen as outlined in the Serapis handbook. Upon clinician approval, the order will be entered into the medication module.

d.  Authentication Time Lines

1)  Diagnostic Hospital

a)  Verbal Orders – must be authenticated prior to the end of each shift.

b)  Telephone Orders – must be authenticated within 72 hours of issue.

2)  Infirmaries/Medical Units

a)  Verbal Orders – must be authenticated prior to the end of each shift.

b)  Telephone Orders – must be authenticated within 72 hours of issue.

3)  All authentication entries will be dated, timed and signed with the full signature of the person making the entry unless an electronic entry has been made.

7.  **Patient Documentation Format**

a.  Patient documentation will be written immediately after each patient encounter using the Progress Notes (MSF-202) or Dental Progress Notes (MSF-504) for dental services or entered into the electronic health care record.

b.  The accuracy of the progress notes will be the responsibility of the person performing the service.

c.  The SOAPE format will be used for all patient care documentation except nursing infirmary rounds and patient treatments.

S: Subjective   (Symptoms as described by the patient)
O: Objective    (measurable, observable findings)



A:  Assessment (interpretation or impression of current condition)
P:  Plan          (Actions taken/planned)
E:  Education   (patient education)

8.  **Filing in the Health care record.** ADC Approved forms:

a.  A form number, which will begin with the identification "MSF", will be used to identify all forms approved to be filed in the printed health care record.

b.  These forms will be numerically coded to match each tab within the health care record. The correct filing sequence is as follows:

| Tab | Form Numbers |
|---|---|
| Intake | MSF-100 series |
| Current Therapy | MSF-200 series |
| Diagnostic Studies | MSF-300 series |
| Consultations | MSF-400 series |
| Dental | MSF-501 series |
| Correspondence | MSF-600 series |
| Chronic Care | MSF-700 series |
| Psychiatric | MSF-800 series |

c.  Forms are filed within the printed health care record in reverse chronological order (the most current document on top) within each tab by form number.

Example:
MSF-100
MSF-101
MSF-201
MSF-202    1/18/01
MSF-202    1/12/01
MSF-202    1/09/01

d.  Other Forms and Documents.  All forms and documents with the exception of lab results or other diagnostic studies, which are not annotated by the MSF designation, will be filed in the correspondence section of the health care record in order directly behind all MSF forms.

9.  **Contingency Plan.** Should the electronic health care record be unavailable due to the loss of electricity or cable/telephone systems, a manual system will be used utilizing the correct ADC MSF forms until services can be restored. Once services have been restored, the following information will be entered into the electronic health care record:

a.  Medication Administration Records
b.  Lab Orders
c.  Lab Draws

TITLE: HEALTH CARE RECORD PROCEDURES

10. **Purging of Health care records**

   a.  Health care records <u>will</u> <u>not</u> <u>be</u> purged on a scheduled basis. Purging will be conducted on a selective basis whenever it becomes necessary to support the relief of health care records whose binders have become too thick to support the documentation.

   b.  All purged documents will be placed in a separate health care record binder which will:

      1)  Bear the same ADC number as the original record.

      2)  Be labeled on the spine as Volumes I of II, II of III, etc. with the most current being the latest volume.

      3)  Contain all of the tabs found in standard health care record binders.

   c.  Documents that may be purged will be restricted to the following documents. At a minimum, at least six (6) months of documentation will remain in the original health care record:

      1)  Progress notes (to include sick call requests)

      2)  clinician orders

      3)  lab reports

      4)  Medication Administration Records

      5)  Correspondence

   d.  All purged documents will be filed in the subsequent binders in the exact same sequence and tabs as in the original binder.

   e.  If the patient is paroled, the entire health care record to include all volumes will be gathered and transported to the Pine Bluff Unit for processing.

11. **Processing Paroled Records**

   a.  The health care record will be maintained at the unit until no later than the fifteenth (15) of each month for collection of loose paperwork, which will be filed in the correct portion of the health care record.

   b.  Each page will have applicable information.

   c.  A search will be made to see if there is more than one volume of health records for the inmate. If more than one volume exists, all will be shipped to the Pine Bluff Unit for processing.

   d.  All duplicate copies of forms will be removed and destroyed prior to being sent to the Pine Bluff Unit.

| TITLE:  HEALTH CARE RECORD PROCEDURES | Page 6 of 15 |
|---|---|

e.  The health care record in its binder will be shipped to the Pine Bluff Unit along with a shipping invoice, one invoice per container. Black transport bags will be sent one bag for every three binders. (Black bags may be shipped in a separate container.)

f.  If after the health care record has been shipped, loose papers are found, they will be placed in an envelope, one per patient, with the patient's name, ADC number, date of birth and inmates' date of discharge on the envelope and noted on the shipping invoice exactly as if it is a whole record.  All x-rays will be gathered and shipped to the x-ray department at the Diagnostic Unit in an appropriate container designed to protect the x-ray from damage during transit.

g.  At the Pine Bluff Unit the paroled record will be broken down as follows:

   1)  The chronic care section of the health care record will be reviewed. If the inmate has or has had TB at any time the TB records (MSF-703 & sputum records) will be removed and forwarded to the Regional TB Nurse located at the CMS Regional Office.

   2)  All Dental x-rays will be removed from the health care record and a label attached. If there is no label available a plain white label will be placed on the x-ray and the patient's name; ADC number and date of birth will be hand written onto the label. Dental x-rays will be shipped to the Diagnostic Unit in bulk.

12. **The Inpatient Record**

   a.  Transfer of a patient to the Diagnostic Hospital

   Sending Unit Procedures

   1)  The sending site will ship the health care record to the Diagnostic Hospital in the three ring binder.

   2)  The Medical Records Clerk will ensure that an out-guide has been prepared and filed in the health care record area so that the location of the record is known at all times.

   3)  When the patient returns to the home site, the Medical Records Clerk will review the record to ensure that a discharge summary was filed in the correspondence section. If it was not, the Unit Manager or in his/her absence the Director of Nursing will be notified so that appropriate action can be taken to acquire the discharge summary.

   4)  The out-guide will be removed from the shelves.

   Diagnostic Hospital Procedure

   1)  The health care record three ring binder will be maintained at the Diagnostic Unit until the patient is transferred back to the parent unit.

   2)  At time of departure the inpatient record will be filed in the health care record three ring binder under the appropriate tab. The hospital will retain a photocopy of

| TITLE: HEALTH CARE RECORD PROCEDURES | Page 7 of 15 |
|---|---|

inpatient MAR's and treatment plan, to be maintained in a separate folder for two years. At such time as the MAR and treatment plan are included in the electronic health care record; this portion of this policy will become obsolete.

b.   Infirmary Admission.  All documentation created as the result of a patient's stay in an infirmary bed will be stapled together and filed in the correspondence section of the health care record.

c.   Observation Beds.  Any documentation created for a patient who remains in an infirmary bed for less than 24 hours will be filed per policy in the health care record in the appropriate tabs.

13. **Processing Health Care Records in the event of the death of an inmate**

a.   All loose papers will be gathered and filed in the health care record.

b.   Two copies will be made for distribution as follows:

1)   Medical Examiner

2)   ADC Health Services Administrator

c.   The original health care record will be maintained at the unit for 30 days for mortality review and then sent to the Regional Medical Records Director.

14. **Act 309 Health care records.**  Upon notification  that a patient has been transferred into an Act 309 status, the following will occur:

a.   All health care records for the Act 309 inmates will have their contents removed from the three ring binder and placed in a brown envelope. The name, ADC Number, Date-of-birth and "309 Record" will be written on the front of the brown envelope.

b.   The 309 record will be shipped to the CMS Regional Office to the Utilization Management Staff.

15. **Blank Forms**

a.   Standardized forms will be developed for use within the health care record.  All new forms, modifications to existing forms, or requests for deletion of a form currently in use will be submitted to the Regional Medical Records Director for processing.

b.   The Regional Medical Records Director is responsible for all forms approved for use in the health care record.

c.   Forms Control Process.  The Regional Medical Records Director will maintain a forms control log which will reflect form title, form number, date approved/discontinued/modified, filing sequence assigned to the form.

| TITLE: HEALTH CARE RECORD PROCEDURES | Page 8 of 15 |
|---|---|

**16. Access to the Health care record**

a. The health care record is a confidential document and all reasonable actions will be taken to ensure that confidentiality is safeguarded against inappropriate viewing or release.

b. The table below is a reference to be used whenever questions concerning release of health care records is an issue.

c. If at anytime questions arise concerning release of information, the Regional Medical Records Director will be contacted for guidance.

| Who | What access do they have? |
|---|---|
| ADC/DCP Internal Affairs | • Can have any health care record at any time they need it and make copies.<br>Process: If copies are made, or if he/she reviews the health care record a progress note must be made reflecting the officer's name, the date and what was provided or the fact that he/she read the record. The person providing the information must sign the entry. |
| Administrator of Medical and Dental Services | • Can have any health care record he wants whenever he wants and make copies.<br>Process: If a health care record or any part of the health care record is shipped to the Administrator of Medical and Dental Services a progress note will be made indicating what was given, the date and the signature of the person providing the information. |
| Attorney Generals Office | • All requests received from the Attorney Generals Office whether by written correspondence, telephone or in person will be referred to the Regional Medical Records Director. |
| Compliance Staff | • Can review any health care record<br>• May have copies of the health care record or any part of the health care record<br>• May "NEVER" leave the site with the original health care record unless approved through the Regional Medical Records Director in advance.<br>• If copies are made, or if he/she reviews the health care record a progress note must be made reflecting the officer's name, the date and what was provided or the fact that he/she read the record. The person providing the information must sign the entry. |
| Consultants | • If a patient has an appointment scheduled by the unit with an outside vendor, the health care record will accompany the patient if transported by ADC personnel. Care must be taken to ensure that the health care record is returned with the inmate after the visit has been completed. |



| TITLE: HEALTH CARE RECORD PROCEDURES | Page 9 of 15 |
|---|---|

| | |
|---|---|
| Community Emergency Rooms | • Have no access to the health care record.<br>• The health care record will not be transported with the patient.<br>• If after the patient reaches the hospital further information is required, the hospital may call unit and the needed information will be faxed.<br>• A progress note must be made reflecting the hospital's name, phone number, the date and what was provided. |
| FBI | • All requests received from the FBI whether by written correspondence, telephone or in person will be referred to the Regional Medical Records Director. |
| Freedom of Information Requests | • All requests will be forwarded to the Regional Medical Records Director for action. |
| Humphries and Lewis Law Firm | • All requests received from the Humphries and Lewis Law Firm whether by written correspondence, telephone or in person will be referred to the Regional Medical Records Director. |
| Local Police Departments | • All requests received from local law enforcement whether by written correspondence, telephone or in person will be referred to the Regional Medical Records Director. |
| Other Medical Facilities | • All requests received from other Medical Facilities whether by written correspondence, telephone or in person will be referred to the Regional Medical Records Director. |
| Inmates | • All requests received from inmates whether active of inactive will be referred to the Regional Medical Records Director. |
| State Police | • All requests received from the State Police whether by written correspondence, telephone or in person will be referred to the Regional Medical Records Director. |
| Warden or his/designee | • Can have any health care record they need any time they need it.<br>• Can have copies of any part of the health care record.<br>• If copies are provided a progress note must be made stating what was provided, the date, time and signature of the person providing the information. |

17. **HIPAA.** The Arkansas Department of Correction and Correctional Medical Services will abide by HIPAA standards and regulations.

18. **Inmate Access to the Health care record**

    a.   General Information.

        1)   The opportunity to personally review an inmate health care record is an administrative privilege extended to inmates so as to reasonably accommodate:

*Regional Medical
Records Director
@ Central Office*

TITLE: HEALTH CARE RECORD PROCEDURES

  a) An inmate's personal need to be ass[
     documentation exists or is of such text as to
     perception of his/her health status; and

  b) An inmate's need to compile a chronology
     to include the identification of staff persons

2) Regardless of purpose, access to an inmate's
   controlled and subject to operational constraint[
   review session.

3) All inmates who avail themselves of this opportunity will be expected to comply with
   any stated procedure/restriction. Failure to do so will result in suspension of review
   opportunity and possible initiation of disciplinary action.

4) The medical department will not provide an inmate with supplies (i.e. paper, pencils)
   to conduct a review of the health care record. Inmates will be responsible for these
   items. Note: Under no circumstances are ink pens to be permitted for use by inmates
   during health care record review.

5) The Medical Records Clerk or other authorized medical staff will remain with the
   inmate as long as he/she is reviewing the health care record. Note: under no
   circumstances will an inmate be left alone with his/her health care record.

6) While the inmate is reviewing the health care record, the Medical Records Clerk or
   medical staff person may if asked by the inmate read a portion of the health care
   record out loud to the inmate. Note: Under no circumstances will the Medical
   Records Clerk attempt to make any interpretation of any part of the health care
   record. If such questions arise the inmate will be referred to an appropriate member
   of the clinical staff.

7) Under no circumstances will an inmate be provided with a copy of his/her health care
   record or any parts or portions of the health care record. Inmates who request a copy
   of the health care record or any portion therein will be instructed to submit their
   request in writing using the Medical Record Release Form (MSF-603) and submit the
   Medical Record Release Form to the Regional Medical Records Director.

8) At the conclusion of the health care record review the Medical Records Clerk will
   complete the Verification of Patient Review of Record (MSF-602), have the inmate
   complete his/her portion and file the Verification of Patient Review of Record in the
   health care record.

b.   Request Procedures

  a.   Inmates will submit a written request to review the health care record using the Request
       for Interview Form.

  b.   Medical Records Clerk who will immediately take the following actions:

*EXHIBIT*

| TITLE: HEALTH CARE RECORD PROCEDURES |
|---|

1) Date stamp the request

2) Schedule the inmate within 10 – 15 working days from the date of receipt of the request a specific date and time for the health care record review.

3) It is the responsibility of the Medical Records Clerk to ensure that inmates are laid in on the day/time of the scheduled appointment.

c. All appointments scheduled for the purpose of health care record review will be limited to a singular session not to exceed one hour in duration.

d. Inmates will be limited to no more than 1 health care record review session per month.

e. If a request to review the health care record is determined to be necessary to accommodate a matter of litigation, the request will be forwarded to the Health Service Unit Manager.

f. Upon receipt of the referred request the Health Service Unit Manager will:

1) Meet with the inmate and reasonably validate the inmate's claim of pending litigation.

2) If claim is valid, a schedule will be worked out with the inmate for the review of his/her health care record.

3) If the claim is determined to be suspicious or absent of supportive documentation, the Health Service Unit Manager may deny the inmate any review opportunity beyond the standard once per month allowance.

4) Documentation of the meeting will be made to the inmate's health care record, progress note section, and the information conveyed to the unit's Medical Records Clerk.

5) The Medical Records Clerk will be responsible for ensuring that the inmate is properly laid in to accommodate review allowance in accordance with the agreed upon schedule.

g. In the event that an inmate should feel that he/she has been denied access to the health care record inappropriately, the inmate will be instructed to seek a review of the unit staffs action via the Regional Administrator of that particular unit.

19. **Tracking and Checkout Procedures.** A complete Health care record will be maintained for each inmate at all times and will be forwarded with the inmate to all off-site specialty visits as per Policy Number 59.02, Medical Records Tracking and Check Out Procedure.

20. **Release of Information Requests**

59.01

| TITLE: HEALTH CARE RECORD PROCEDURES | Page 12 of 15 |

20.

    a. Intake Facilities - At intake because of the short duration of stay, a release of information request for free-world health care records will not be initiated routinely, but will records will be requested if the attending physician requests them.

    b. All Other Sites

        1) Release of information requests for free-world health care records will be processed if the site physician or midlevel provider writes an order in the health care record.

        2) The release will be filled out and mailed to the appropriate facility with a return address of the current unit.

    c. Free-world Records brought into the System by Inmates - If an inmate brings in copies of previous admissions from a free-world facility they will not be filed in the health care record unless reviewed by the unit physician and such records are deemed necessary for the treatment of the inmate. In those cases the clinician must write an order to that effect and the free-world records will be filed in the correspondence section of the health care record.

    d. Requests for Information from Free-World Facilities - All release of information requests will be processed through the Regional Medical Records Director.

    e. Intra-Organizational Requests - If a patient re-enters the system, copies of previous health care records may be requested if the unit's physician or mid-level provider writes an order for such records.

    f. All requests from previous admissions will be forwarded to the Regional Release of Information Clerk by faxing a copy of the Clinician Order (MSF-203). No records will be released without a copy of the clinician order.

### 21. Transferring Records

    a. Whenever a patient is to be transferred between sites a search of the unit will be made and all documentation belonging to the patient will be properly filed in the health care record.

    b. Dental x-rays will remain a part of the health care record and will be shipped to the receiving site.

    c. All other x-rays will be gathered and shipped with the health care record to the receiving site.

    d. The health care record will be shipped in the three ring binder.

    e. The health care record will be placed in a black transport bag, the bag sealed, and turned over to the correctional officer responsible for transporting the patient to the next site.

### 22. Quarterly Health Care Record Inventory

EXHIBIT

TITLE: HEALTH CARE RECORD PROCEDURES                                    Page 13 of 15

   a. During the first week of January, April, July, and October of each year each unit will conduct a physical inventory of health care records within their respective units.

   b. Audits will be conducted as follows:

     1) The current active patient roster will be used as the source for determining which health care records are supposed to be on the shelves at the unit.

     2) Starting with terminal digit 01, each record in the unit will be physically sighted and marked off the census as being on-hand.

   c. Upon completion of the inventory the following information will be e-mailed or faxed to the Regional Medical Records Director:

     1) Date of inventory

     2) Number of missing health care records and their ADC numbers

     3) Number of extra health care records and their ADC numbers

   d. The Regional Medical Records Director will review the report and provide further directions as required.

### 23. Flagging Healthcare Records

   a. The "flagging" of health care records is restricted to identification of patients for whom the unit feels should not be transferred from the unit without prior notification/approval of the Health Services Unit Manager, Medical Director or Director of Nursing.

   b. If a health care record is to be flagged, the following procedures must be followed:

     1) A large note hand written or typed will be placed in the very front plastic portion of the health care record, stating, "Before this patient can be transferred the Unit Manager must be notified."

     2) Under no circumstances will any health care record be flagged to identify an Inmate by disease process, chronic care clinics or any other medical reason.

### 23. Health care records for Escapees - All health care records at the unit level that are on-hand for inmates who have escaped from ADC will be treated in the same manner as paroled health care records and all procedures listed in this policy and procedure for paroled health care records will be followed.

### 24. Health care record Quality Improvement Process

   a. The Regional Medical Records Director will direct quality improvement activities related to health care record activities.

   b. As a rule these activities will be restricted to the following activities:

| TITLE:  HEALTH CARE RECORD PROCEDURES | Page 14 of 15 |
| --- | --- |

    1) Unit audits conducted during site visits by the Regional Medical Records Director.

    2) Monthly audits of paroled health care records using a predetermined checklist developed by the Regional Medical Records Director.

    3) Quarterly inventories of health care records conducted at the site level per the instructions in this policy and procedure.

**25. Health care record Education**

  a. All health care record educational activities will be directed by the Regional Medical Records Director who will ensure that at least the following activities occur:

    1) Orientation for all newly hired health care record clerks within ten days of assignment.

    2) Annual inservice training for all health care record clerks

    3) Quarterly educational opportunities will be provided via mail outs with topics selected by the needs of the Region as determined by the Regional Medical Records Director.

  b. The Regional Medical Records Director will be responsible for ensuring that documentation is maintained to support the completion of all training activities for review during auditing or accreditation visits.

| TITLE:  HEALTH CARE RECORD PROCEDURES | Page 15 of 15 |
|---|---|

## Health care record

## Shipping Invoice

**Unit Shipped from:** _____     **Date Shipped** _____

| | Name (Last, First, MI) | ADC# | Race | Sex | DOB | Parole Date |
|---|---|---|---|---|---|---|
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |

Instructions:

1)   List all names alphabetically
2)   Fill in all blank spaces for every name on the list
3)   If you have loose paperwork, it must be placed in a brown envelope, one envelope per patient.
4)   Print legibly.

5-6-09

5-6-09

## REQUEST FOR INTERVIEW

UNIT *Cummens*

TO: *Records Officer*                    DATE: *5-6-09*

                                          OFFICE: *Infirmary*

FROM: *Ronald O'Neal*              NUMBER: *128560*     BKS: *3*
          (Inmate's Name)

JOB ASSIGNMENT: *3 BK Picket*        SUPERVISOR: *Ms Collens*

WORKING HOURS: *9 AM*   TO: *4:30 pm*

GIVE A DETAILED REASON FOR INTERVIEW: _____

*I would like to review my medical and dental records.*

                    *Thank you*

                    *Ronald O'Neal*
                              Inmate's Signature

ADC-CDC—614

*Records Review
with Dept  5-13-09*

# Exhibit # J
ONE page

9-8-09

# REQUEST FOR INTERVIEW

UNIT _Cummins_

DATE: _9-8-09_

TO: _Ms Austin_   OFFICE: _Infirmary Administrator_

FROM: _Ronald O'Neal_   NUMBER: _128560_   BKS: _3_
(Inmate's Name)

JOB ASSIGNMENT: _3 BK PICKET_   SUPERVISOR: _Ms Collins_

WORKING HOURS: _9 AM_ TO: _7 PM_

GIVE A DETAILED REASON FOR INTERVIEW: _I put in a request to review my medical records 6-21-09. I have not been called in to review my file. Would you please check on the problem and have me called to the Infirmary to review my file.   Thank you_

_Ronald O'Neal_
Inmate's Signature

ADC-CDC—614

_Records review was done 9-14-09_

**Exhibit #** K
ONE Page

## UNIT LEVEL GRIEVANCE FORM (Attachment I)

Unit/Center _Cummins_

Name _Ronald D. O'Neal_

ADC# _128560_  Brks # _13_  Job Assignment _Picket_

FOR OFFICE USE ONLY
GRV. # CU-11-01407
Date Received: JUL 1 5 2011
GRV. Code: 200
CUMMINS UNIT
GRIEVANCE OFFICE

RECEIVED

_7-11-11_ (Date) STEP ONE: Informal Resolution

_-14-11_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)

If the issue was not resolved during Step One, state why: _The x-ray lady informed me all x-rays are on a CD now and can be printed out. The radiologist reports do not give the percentage of my lung collapse_

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

Is this Grievance concerning Medical or Mental Health Services? _yes_ If yes, circle one: (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _7-8-11 I was called to the Infirmary for medical Jacket review. While there I asked Ms Crompton, the Medical Jacket Review Officer to have all of my x-rays printed out so I could measure the percentage of my left lung collapse. I explained I needed to have all of my x-rays printed out in chronological order so I could show the percentage of collapse before and after the three thoracentesis and open Thoracotomy surgeries I wanted for court exhibits in my up coming civil court case 5:10 CV 00153 against CMS. Ms Crompton said "she would not have my x-rays printed out and I could not measure any of my x-rays for court exhibits." I ask her to inform Infirmary Director, Ms Austin of my request and that she, Ms Crompton had denied my access to court exhibits. This is another example of CMS employees working in concert to deny me discovery material._

_Ronald D. O'Neal_                                    _7-11-11_
Inmate Signature                                        Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

### THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on _7-11-2011_ (date), and determined to be **Step One** and/or an Emergency Grievance _yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _Moore_ RN _MM 7/11_/Date _7-11-11_

_James Thurman Jr._        _49564_      _James Thurman Jr._        _7-11-2011_
**PRINT STAFF NAME (PROBLEM SOLVER)**   ID Number   Staff Signature        Date Received

Describe action taken to resolve complaint, including dates: _We do not "print out x-rays." There is a report of x-ray findings written by a radiologist. The x-rays + interpret of x-rays + these reports are in your medical record + can be reviewed by you by request. Austin 7-14-11_
_Ronald O'Neal  7-14-11_

Staff Signature & Date Returned _E. Crompton 7/14/11_   Inmate Signature & Date Received

This form was received on _7/14/11_ (date), pursuant to **Step Two**. Is it an Emergency? _No_ (Yes or No).
Staff Who Received Step Two Grievance: _Brenda D Myser_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/War—
If forwarded, provide name of person receiving this form: _T. Moncrie_

# Exhibit # L
THREE Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE** –Grievance

IGTT420
3GH

3

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>    ADC #: <u>128560A</u>    GRIEVANCE #: <u>CU-11-01407</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>Grievance CU-11-01407</u>
<u>You stated the xray lady informed you all xrays are ona CD now and can be printed out. The radiologist</u>
<u>reports do not give the percentage of my lung collapse.</u>
<u>Xray reports are not printed off and given out. These are in your medical jacket and can be reviwed by</u>
<u>requesting a jacket review.</u>

_____    _____    _____
Signature of Health Services         Title                              Date
Administrator/Mental Health
Supervisor or Designee

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 2 3 2011

HEALTH & CORRECTIONAL PROGRAMS

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by
filling in the information requested below and mailing it to the Deputy Director for Health &
Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing
the decision to the original grievance. Do not list additional issues which were not part of your original
grievance as they will not be addressed. Your appeal statement is limited to what you write in the space
provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? I did not ask to be
given my x-rays or print outs of my x-rays. I requested Ms Crompton,
records officer, to allow me to measure the percentage of collapse of
my left lung either using the x-rays or print outs of the x-rays. Ms
Crompton denied my request. Ms Cromptons actions denied me access
to discovery material needed for my up coming court case 5:10CV00153
against CMS! I request that the Director investigate who Ms Crompton
is working with to denie me access to my medical records and allow me access to all
of my records.

<u>Ronald D. O'Neal</u>     <u>128560</u>     <u>8-15-11</u>
Inmate Signature              ADC#              Date

IGTT430
3GD

<div align="right">Attachment VI</div>

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC#: <u>128560</u>     GRIEVANCE#:CU-11-01407

<div align="center">

CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

</div>

You grieve on July 11, 2011, you need all of your x-rays printed out in chronological order to show the percentage of collapse before and after the three thoracentesis and open thoracotomy surgeries you underwent.

The Infirmary responded, "X-ray reports are not printed off and given out. These are in your medical jacket and can be reviewed by requesting a jacket review."

In your appeal you complain you did not ask to be given your x-rays or printouts of your x-rays. You requested to measure the percentage of collapse of your left lung either using the x-rays or printouts of the x-rays.

All x-rays taken in the Department of Correction are read by a licensed, qualified Radiologist and a written report is provided. Without the years of training a Radiologist receives to differentiate between landmarks in the body, disease processes, and artifact, it is impossible for a lay person to identify anything in an x-ray with any degree of accuracy. A report completed by a Radiologist describing their finding for each x-ray taken is available for in your medical record for comparison and review; therefore, I find this appeal without merit.

_Wendy Kelley_
Signature

_10|5|11_
Date

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

Unit/Center _Cummins_

| | FOR OFFICE USE ONLY |
|---|---|
| | GRV. # ___ |
| | Date Received: JUL 1 5 2011 |
| | GRV. Code # ___ |

Name _Ronald D. O'Neal_

ADC# _128560_   Brks # _13_   Job Assignment _Picket_

GRIEVANCE OFFICE

_7-11-11_ (Date) STEP ONE: Informal Resolution

_-14-11_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _I turned in a request for interview as directed by Ms Crompton 3-5-11 and still had to wait over 4 months to see my medical Jacket._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _Yes_ _If yes, circle one_ (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _3-3-11 I put in a request to review my medical Jacket (MJ) 3-4-11 I was allowed to review my MJ for 5-0 minutes. MX MJ had records missing Ms Crompton, the MJ records officer, told me to put in another request to review my MJ and she would call me in the next week to review my missing records. 3-5-11 I put this request in. Ms Crompton did not call me back in the next week. I met Ms Crompton in the prison hall way 2 times over the next month, each time I ask her about seeing my MJ. Both times Ms Crompton assured me I would be called in. I was not called in to review my MJ. ___ 5-23-11 while in the Infirmary for LAB test I ask Ms Crompton about seeing my MJ. Ms Crompton assured me I would be called to review my MJ Thur. 5-26-11 & Fri. 5-27-11. I was not called in on those dates to review my MJ. Finally on 7-8-11, after waiting over 4 months was allowed to review my MJ. This delay is a violation of ADC policy 59.01, 18<3d. I believe the delay is being orchestrated by Ms Crompton and other CMS employees to hinder the civil law suit 5:10CV00153 I have filed against CMS. I have lost 90 days research time I can not regain._

Inmate Signature _Ronald O'Neal_          Date _7-11-11_

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _7-11-2011_ (date), and determined to be **Step One** and/or an Emergency Grievance
_Yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _Crompton_ ___ MA 7/12 Date _7/11/11_

_James Thurman Jr_     _49564_     _Jaime Shrum_          _7-11-2011_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature          Date Received

Describe action taken to resolve complaint, including dates: _Review of medical record is requested with a request for interview slip, not by asking in the hallway or while in the infirmary receiving medications._
_Crompton 7-14-11_

Staff Signature & Date Returned _E Crompton 7/14/11_    _Ronald O'Neal 7-14-11_
                                                        Inmate Signature & Date Received

This form was received on _7/14/11_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Brenda D. Meyer_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Ward
If forwarded, provide name of person receiving this form: _T. Moncrief_

**Exhibit #** M
THREE Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance
to Inmate After Completion of Step One and Step Two.

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>   ADC #: <u>128560A</u>   GRIEVANCE #: <u>CU-11-01408</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>Grievance CU-11-1408</u>
<u>I turned in a request ofr interview as directed by Ms.Crompton on 3/5/11 and still had to wait over 4</u>
<u>months to see my medical jacket.</u>
<u>I find no documentation supporting that you requested to review your medical record 4 months ago.</u>

| | | |
|---|---|---|
| Signature of Health Services Administrator/Mental Health Supervisor or Designee | DW<br>Title | 8/12/11<br>Date |

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 2 3 2011

HEALTH & CORRECTIONAL PROGRAMS

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? When I reviewed my medical jacket (MJ) 7-8-11 the MJ review request I made 3-5-11 was in my MJ. If the 3-5-11 request has been removed it was done to cover up the fact Cummins CMS staff violated ADC policy 59.01, 18 cawed by making me wait four months between MJ reviews. I request that the Director investigate and identify the CMS employee who is removing records from my MJ and acknowledge that their actions have put me four months behind in my legal research for court case 5:10 CV 00153.

| Ronald D. O'Neal | 128560 | 8-15-11 |
|---|---|---|
| Inmate Signature | ADC# | Date |

IGTT430                                                        Attachment VI
3GD

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC#: <u>128560</u>     GRIEVANCE#:CU-11-01408

### CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

You grieve on July 11, 2011, that after you reviewed your medical record on March 4, 2011, you put in another request to review your record on March 5, 2011, and it took over four months to review your record again.

In their response the Infirmary found your appeal without merit and stated they did not find documentation you requested to see your medical record four months ago.

In your appeal you complain that the March 5, request was in your medical record on July 8, and if it was not there someone removed it. The March 5, 2011, request was in your medical record and I am reversing the Infirmary's decision and finding the grievance with merit. However, you did review your medical record on July 8, 2011; therefore, I find this appeal without merit.

_____          _____
             Signature                                    10/5/11     Date

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

Unit/Center _Cummins_

FOR OFFICE USE ONLY
GRV. # __CU-1F-0183__

Name _Ronald O'NEAL_          OCT 2 6 2011

Date Received: SEP 1 9 2011

ADC# _128560_   Brks # _3_   Job Assignment _Picket_

GRV. Code #: CUMMINS UNIT
GRIEVANCE OFFICE

HEALTH & CORRECTIONAL PROGRAMS

**9-12-11** (Date) STEP ONE: Informal Resolution

**9-16-11** (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: 9-16-11 I ATEMPTED TO GIVE Ms J KING
A COPY OF MY 7-10-11 REQUEST TO REVIEW MY MEDICAL JACKET. SHE REFUSED TO TAKE THE
COPY IN FRONT OF WITNESSES. IT HAS NOW BEEN 67 days SINCE I MADE THE REQUEST.

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to
a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious
nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the
attached emergency receipt. If an Emergency, state why: _____

Is this Grievance concerning Medical or Mental Health Services? _____ If yes, circle one: medical or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel
involved and how **you** were affected. (Please Print): July 10, 2011 I placed a request for
interview in the sick call box addressed to Ms Austin, Infirmary
Director requesting to review my medical jacket. I had copies of the
7-10-11 request made (before placing request in the sick call box)
Arkansas Department of Corrections Health Services Policy and
Procedure Manual 59.01, 18 c and d clearly reads: Inmates are
allowed to review their medical jackets one hour every month.

IT's been 63 days since I turned in my request to review my
medical jacket. I have a 1983 civil law suit filed against Correctional
Medical Services Inc. Case # 5:10 CV 00153. I am trying to prepare for
he up coming trial in this case and am being denied timely access
to discovery & information I need for trial. This is a clear violation
of 59.01, 18 c & d. This delay has put me further behind with my trial
prep, and is causing me a lot of stress and hardship.

_Ronald O'Neal_                        9-12-11
Inmate Signature                        Date
*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _9-12-11_ (date), and determined to be Step One and/or an Emergency Grievance
**NO** (Yes or No) This form was forwarded to medical or mental health? No Med (Yes or No) If yes, name
of the person in that department receiving this form: _D. Mathews R.___  Date 9/12/11
_Lindsay Manning_    _78244_    _Lindsay Man___   _9-12-11_
**PRINT STAFF NAME** (PROBLEM-SOLVER)   ID Number   Staff Signature   Date Received
Describe action taken to resolve complaint, including **dates**: We have not received a
request from you. Submit a request and you will be
scheduled. JBM

_____ 9/16/11        _Ronald O'Neal_   9-16-11
Staff Signature & Date Returned        Inmate Signature & Date Received
This form was received on _9-16-11_ (date), pursuant to **Step Two**. Is it an Emergency? _No_ (Yes or No).
Staff Who Received Step Two Grievance: _L. Manning_____
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/We

**Exhibit #** N

If forwarded, provide name of person receiving this form: _Grievance C_    THREE Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievar.

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>   ADC #: <u>128560A</u>   GRIEVANCE #: <u>CU-11-01831</u>

### HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(603) You reported in your complaint of 9-12-11 that you submitted a request to interview to Mrs Austin on 7-10-11 to review your medical record. You report that you made copies of the request prior to sending it to the infirmary. You were informed that a request had not been received in the infirmary and to submit a request and you would be scheduled. You reviewed your medical record on 7-8-11. If you still need to review your medical record submit a request and address it to "Infirmary Medical Records." I find this grievance without merit.</u>

_M. Austin_ | _H. S. A_ | _10-17-11_
Signature of Health Services Administrator/Mental Health Supervisor or Designee | Title | Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

OCT 2 6 2011

HEALTH & CORRECTIONAL PROGRAMS

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

7-10-11 I PUT IN A REQUEST TO REVIEW MY MEDICAL JACKET (MJ) AFTER WAITING 63 DAYS FOR A RESPONSE TO THAT REQUEST I FILED GRIEVANCE #CU-11-01831 ABOUT THE DELAY. 9-27-11 I PLACED A 2nd REQUEST WITH A COPY OF THE 7-10-11 REQUEST IN THE SICK CALL BOX ADDRESSED TO Ms AUSTIN AND THE INFIRMARY MEDICAL JACKET OFFICER. I DID NOT RECEIVE A RESPONSE. 10-12-11 I mailed A 3rd REQUEST TO REVIEW MY MJ to ms AUSTIN through the mail ROOM. I HAD Sgt JOHNSON SIGN AND WITNESS THE MAILING. IT HAS NOW BEEN 100 DAYS SINCE I MADE THE 7-10-11 REQUEST TO REVIEW MY MJ. WHEN EVER I AM ALLOWED TO REVIEW MY MJ WILL NOT LESSEN THE FACT I HAVE NOT BEEN ALLOWED TO REVIEW MY MEDICAL JACKET ACCORDING TO POLICY. I CAN NOT PREPARE FOR MY UP COMING COURT CASE # 5:10CU00153 with out DISCOVERY INFORMATION.

_Ronald O'Neal_ | _128560_ | _10-18-11_
Inmate Signature | ADC# | Date

IGTT430
3GD

<div align="right">Attachment VI</div>

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC#: <u>128560</u>     GRIEVANCE#:CU-11-01831

<div align="center">CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION</div>

September 12, 2011, you grieved you requested to review your medical jacket and it has been 63 days and you have not been allowed to review your file.

The medical department responded that they had not received a request from you, and if you still needed to review your record to submit a request addressed to "Infirmary Medical Records."

You appealed stating you submitted a second request September 27 with a copy of the July 10 request attached and you did not get a response; that you submitted a third request on October 12 and still had not reviewed your jacket as of October 18.

You signed that you reviewed your medical jacket March 4, July 8, October 19, 20, and November 11, 2011. The medical department has requests dated March 5 and October 21, 2011.

Your issue has resolved.

_____Wendy Kelley_____          _____11/15/11_____
Signature                               Date

IGTT430                    Page 1 of 1

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _CUMMINS_

Name _RONALD D. O'NEAL_

ADC# _128560_   Brks # _3_   Job Assignment _PICKETMAN_

FOR OFFICE USE ONLY
GRV. # _CU11-01060_
Date Received: _____
GRV. Code _____

_8-17-11_ (Date) STEP ONE: Informal Resolution

_8-19-11_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.) If the issue was not resolved during Step One, state why: _CMS STAFF KNEW MY 3-5-11 MEDICAL JACKET (MJ) REVIEW REQUEST EXISTED BUT STILL FORCED ME TO WAIT 4 MONTHS TO REVIEW MY MJ._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _____ _If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how **you** were affected. (Please Print): _8-15-11 I received a response to Grievance #CU11-01408 signed by Ms Joyce Butler, Director of Nursing, stating "she could not find the 3-5-11 request to review my Medical Jacket (MJ). I saw the 3-5-11 request in my MJ when I reviewed the MJ 7-8-11. The 3-5-11 request was made under Ms Crompton's direction. During 3 seperate conversations Ms Crompton acknowledged she had received the 3-5-11 request to review my MJ. The 3-5-11 request for MJ review has been removed from my MJ by a Correctional Medical Service (CMS) employee to enable Ms Butler to "answer" grievance CU-11-01408 "I find no documentation supporting that you requested to review your medical record 4 months ago." CMS employees are relocating records from my MJ to delay or stop my efforts to obtain discovery Information I need for court case # 5:10CV 153 I have filed against CMS. I need these CMS employees identified and barred from accessing my medical records._

_Ronald D. O'Neal_                          _8-17-11_
Inmate Signature                              Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _8-17-11_ (date), and determined to be **Step One** and/or an Emergency Grievance _NO_ (Yes or No). This form was forwarded to medical or mental health? _Medical_ (Yes or No). If yes, name of the person in that department receiving this form: _Sgt Louis Wade_ Date _8-17-11_

_LOUIS WADE_      _8447_          _Sgt Louis Wade_      _8-17-11_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: _If it was in there & removed it was done so because requests to review your medical record are not part of your medical record & you have reviewed your medical record. Audi 8-19-11_

_8-17-11_                              _Ronald O'Neal_      _8-19-11_
Staff Signature & Date Returned        Inmate Signature and Date Received

This form was received on _8-18-11_ (date), pursuant to **Step Two**. Is it an Emergency? _____ (Yes or No).
Staff Who Received Step Two Grievance: _Lindsey Manis_
Action Taken: _____ (Forwarded to Grievance Officer/Warden)
forwarded, provide name of person receiving this form: _J. Moncrief_

**Exhibit # 0**
FOUR Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance to Inmate After Completion of Step One and Step Two.

IGTT420

Attachment IV

3GH

INMATE NAME:  Oneal, Ronald D.          ADC #:  128560A          GRIEVANCE #:  CU-11-01660

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(603) You reported in your complaint that you saw the request of 3-5-11 to review your medical jacket when you reviewed your jacket on 7-8-11. You report that it has been removed from your jacket. You report that CMS employees are deleting records from your medical jacket to delay or stop your efforts to obtain discovery and you need these CMS employees identified and barred from accessing your medical records. If a request to review your medical record was in your medical record then removed, it was done so because requests to review your medical record are not part of your medical record. You have reviewed your medical record. No deletions are being made and no one is attempting to stop your efforts to obtain discovery. I find this grievance without merit.

_____
Signature of Health Services
Administrator/Mental Health
Supervisor or Designee

_____H. S. A_____
Title

_____9-20-11_____
Date

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE?

The fact Cummins Correctional Medical Services (CMS) employees can not produce a request to review my medical jacket dated 3-5-11 and 7-8-11 proves the 3-5-11 request to review my medical jacket was the only request made by me during that time span. and was the only request made by me. The 3-5-11 request triggered the 7-8-11, 50 minute medical jacket review I was allowed to do. I filed grievance CU 11-1408 complaining

_Ronald D. O'Neal_
Inmate Signature

_128560_
ADC#

_9-22-11_
Date

about the 4 month delay between the date I made the request and the date I was allowed to review my medical jacket.

Instead of admitting that a mistake was made by Cummins CMS staff causing the 4 month delay Ms Joyce Butler answered grievance CU 11-1408: "I FIND NO DOCUMENTATION SUPPORTING THAT YOU REQUESTED TO REVIEW YOUR MEDICAL JACKET 4 MONTHS AGO."

I know for a fact the 3-5-11 request to review my medical jacket had been placed in my medical jacket. The 3-5-11 request was the 1st thing I saw when I opened my medical jacket 7-8-11. Who removed the 3-5-11 request? Was it removed to cover up the fact I was forced to wait 4 months for the jacket review? This 4 month wait is a clear violation of ADC Health Care Record Procedures 59.01, 18 d.

I do not agree with Ms Austins 9-20-11 response. I am asking Director W. Kelly to investigate and identify who these CMS employees are and stop them from blocking my efforts to obtain discovery information contained in my medical jacket needed for my upcoming civil trial case # 5:10CV00153.

Ronald D. O'Neal        128560        9-22-11

IGTT430
3GD

<div align="right">Attachment VI</div>

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC#: <u>128560</u>     GRIEVANCE#:CU-11-01660

### CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

August 17, 2011, you grieved Ms. Joyce Butler stated she could not find the March 5 request to review your medical record in response to grievance CU-11-01408. You claim you saw this request on July 8, when you reviewed your medical record and state it was removed by a CMS employee to allow Ms. Butler to answer the above grievance.

The medical department responded, "You have reviewed your medical record. No deletions are being made and no one is attempting to stop your efforts to obtain discovery. I find this grievance without merit."

This complaint was addressed in the appeal to CU-11-01408. The medical departments decision was reversed and the grievance found with merit, but resolved when you viewed your record.

This appeal is without merit.

_____          _____
              Signature                                    Date

## UNIT LEVEL GRIEVANCE FORM (Attachment I)

Unit/Center _Cummins_

Name _Ronald O'Neal_

DC# _128560_  Brks # _3_  Job Assignment _PICKETMAN_

FOR OFFICE USE ONLY
GRV. # _CU-11-02168_
Date Received: _NOV 9 2 2011_
GRV. Code # _600_

_10-29-11_ (Date) STEP ONE: Informal Resolution

_11-1-11_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _10-19-11 Ms Ervin took 4 x-rays of my back. Ms Ervin was in the x-ray room next door while I view my x-rays._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ **YES** _If yes, circle one._ (medical) _or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _I FILED A MOTION ASKING THE COURT TO COMPEL MS CRAMPTON, CUMMINS MEDICAL RECORDS OFFICER TO ALLOW ME TO EXAMINE MY X-RAYS WITH THE ASSISTANCE OF THE X-RAY TECHNICIAN. ON 10-19-11 MS M AUSTIN, INFIRMARY DIRECTOR CALLED ME TO THE INFIRMARY AND SAID, "CORIZON INC ATTORNEY CALLED AND INSTRUCTED HER TO ALLOW ME TO EXAMINE MY X-RAYS." MS M AUSTIN SAID, "I COULD NOT HAVE THE ASSISTANCE OF THE X-RAY TECHNICIAN, A RADIOLOGIST, THE DOCTOR OR ANY STAFF MEMBER." NOT BEING ALLOWED TO HAVE THE PROPER MEDICAL ASSISTANCE HINDERED MY EFFORTS AND ADDED TO A ALREADY STRESSFUL DAY._

DEC 1 9 2011

_Ronald O'Neal_          HEALTH & CORRECTIONAL PROGRAMS          _10-29-11_
Inmate Signature                                              Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

### THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on _10-29-11_ (date), and determined to be **Step One** and/or an Emergency Grievance _NO_ (Yes or No). This form was forwarded to medical or mental health? _____ (Yes) or No). If yes, name of the person in that department receiving this form: _____ Date _____

_Lindsay L. Manning_          _78244_     _Linda Ma__       _10-29-11_
**PRINT STAFF NAME (PROBLEM SOLVER)**   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: _We do not have an xray technician or radiologist in the facility. You were allowed to view your films and reports. JBurl 10/31/11_

_J Crampton 10/31/11_                      _Ronald O'Neal 128560 10-31-11_
Staff Signature & Date Returned              Inmate Signature & Date Received

This form was received on _11-1-11_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey_          Date _____
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Ward

If forwarded, provide name of person receiving this form: _Lisa Free_

**Exhibit # P**
_THREE Pages_

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance
to Inmate After Completion of Step One and Step Two

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC #: <u>128560A</u>     GRIEVANCE #: <u>CU-11-02168</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(652) You reported in your complaint that you were informed that you could not have the assistance of the x ray tech, a radiologist, the doctor or any staff member to examine your x rays. You have requested to review your old x rays as part of your medical record review for your court case. You can view the x ray and read the radiologist report provided in your medical record. Should you have any questions about the report you can let the medical records clerk know and she can seek help with your question. I find this grievance without merit.</u>

_(signature)_                _H.S.A_                _12-5-11_

Signature of Health Services        Title                Date
Administrator/Mental Health
Supervisor or Designee

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

DEC 19 2011

## INMATE'S APPEAL

HEALTH & CORRECTIONAL PROGRAMS

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? _The step one response given by Ms J Butler was untrue because Ms ERVIN, The X-ray technician was in the X-ray room next door while I was trying to view my X-rays._

_The response given by Ms M Austin 12-5-11 compares with trying to close the barn door after the horse has run off. The court hearing I was trying to prepare for was held 11-16-11 and I was not able to obtain the information I needed because Ms Austin denied my request for assistance._

_Ronald D. O'Neal_            _128560_            _12-6-11_

Inmate Signature                ADC#                Date

IGTT430                                                             Attachment VI
3GD

INMATE NAME: <u>Oneal, Ronald D.</u>      ADC#: <u>128560</u>     GRIEVANCE#:CU-11-02168

### CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

October 29, 2011, you grieved Ms. Austin would not allow you the assistance of an x-ray
technician, radiologist, doctor, or any staff member to review your x-rays. You claim not having
the proper medical assistance hindered your efforts.

The medical department responded, "You can view the x ray and read the radiologist report
provided in your medical record. Should you have any questions about the report you can let the
medical records clerk know and she can seek help with your question. I find this grievance
without merit."

In your appeal you state the Step One response was untrue because Ms. Ervin, the x-ray tech
was in the room next door while you were trying to view your x-rays. In addition you complain
Ms. Austin closed the barn door after the horse was out. The court hearing you were trying to
prepare for was held on November 16, 2011, and you were not able to obtain the information
you needed because Ms. Austin denied your request for assistance.

The radiologist reports for all of your x-rays were available for you to review at any time;
however, you wanted to review the actual physical x-rays. Ms. Austin was contacted by a CMS
attorney and asked to let you review the physical x-rays as a curtesy and she complied. As for
Ms. Ervin, an x-ray technician is trained to take x-rays; they are not qualified to read an x-ray.

Policy does not require a professional attend you when you review your medical records. If you
have questions about your health or medical history submit a Request for Interview to the HSA.

This appeal is without merit.


_____Wandy Kelley_____     _____3/13/12_____
           Signature                        Date

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _Cummins_

Name _Ronald O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _Picket_

FOR OFFICE USE ONLY
GRV # _CU-12-00395_
FEB 2 2 2012
Date Received: _CUMMINS UNIT_
GRV. Code: _CLASSIC_

_2-16-12_ (Date) STEP ONE: Informal Resolution

_2-20-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _I have copies of the 11-17-11_
_medical records review request I placed in the sickcall box for Ms Crumpton_

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to
a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious
nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the
attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _____ _If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel
involved and how **you** were affected. (Please Print): _According to Arkansas Department_
_of Corrections Health Services Policy and Procedure Manual 59.01_
_c and d inmates are allowed to review their medical records one (1)_
_hour per month (every 30 days). The last three (3) request I_
_put in to review my medical records I was forced to wait_
_two (2) to four (4) months before I was allowed to review_
_my medical jacket. I have a on going Federal Civil Case,_
_5:10CV00153. I need information from my medical records for_
_trial preparation. This delaying process being orchestrated_
_by CORIZON HEALTH INC and their employees is causing me_
_stress, anxiety and loss of sleep which all are detrimental_
_to my health._

_Ronald O'Neal_                    JUN 1 2 2012   _2-16-2012_
Inmate Signature                                Date
_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _2-16-12_ (date), and determined to be **Step One** and/or an Emergency Grievance
_Yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name
of the person in that department receiving this form: _M. Griffin_   Date _2-16-12_
_Lisa Bailey_   _4708_   _Lisa Bailey_   _2-16-12_
**PRINT STAFF NAME** (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received
Describe action taken to resolve complaint, including **dates**: _Since your review of 11-11-11 Mrs_
_Crumpton has not received any request from you. Aug. 2-17-12_
_L C Jackson_   _2-20-12_   _Ronald O'Neal 2-20-12_
Staff Signature & Date Returned         Inmate Signature & Date Received
This form was received on _2-20-12_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey_   Date _2-20-12_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Warden
If forwarded, provide name of person receiving this form: _____

**Exhibit #** _Q_
THREE Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance O
to Inmate After Completion of Step One and Step Two

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC #: <u>128560A</u>     GRIEVANCE #: <u>CU-12-00395</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(603) You reported in your complaint of 2-16-12 that the process of your record review is intentionally being delayed by Corizon Health Inc. and their employees causing you stress, anxiety and loss of sleep which all are detrimental to your health. The infirmary has not received a request to review your medical record since you reviewed it on 11-11-12. I find this grievance without merit.</u>

_____          _____          _____
Signature of Health Services                Title                        Date
Administrator/Mental Health
Supervisor or Designee

ON/HHA          3-21-12

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

JUN 1 2 2012

HEALTH & CORRECTIONAL PROGRAMS

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? The appeal information in CU-12-00396 clearly proves there was a 11-16-2011 request to review my medical records. The grievance should of triggered an immediate medical records review within 10 to 15 working days per AOC policy 59.01. Is been 36 days this date. when I am finally allowed to see my medical records, that viewing will not lessen the harm caused by or moot the 127 day delay, and counting, that I've had to wait since I made the 11-16-2011 request to review my medical records.

_Ronald D. O'Neal_          _128560_          _3-23-12_
Inmate Signature                ADC#                Date

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-12-00395

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

February 16, 2012, you grieved you are not being allowed to review our medical record one hour every 30 days per policy. You complain you were forced to wait two to four months to review your medical record after the last three requests you submitted. You complain you need information out of your medical record to prepare for trial.

March 21 the medical department responded, "The infirmary has not received a request to review your medical record since you reviewed it on 11-11-12. I find this grievance without merit."

You disagree in your March 23 appeal because the information in CU-12-00396 clearly proves there was a November 16, 2011, request to review your medical record. You claim when you are finally allowed to see your medical records that viewing will not lessen the harm caused by or moot the delay.

The grievance you refer to does not prove you submitted a request to review your medical record. It states you reported in your February 16, 2012, complaint that you put in a request to review your medical record on November 17. The medical department responded you were told on February 20 that Ms. Crompton had not received a request from you since you reviewed your medical record on November 11, 2012. That grievance was without merit. A statement by you does not prove you submitted or the medical department received that request.

The medical department provided a Medical Record Review Verification form signed by you on April 2. You submitted a request to review your medical record on April 6 and were notified on April 26 that your request was received but the medical department was unable to schedule you at that time because your medical record was at Central office. You were advised when it was returned you would be scheduled. That review took place on May 15.

You reviewed your record November 11, 2011, April 2 and May 15, 2012. Your appeal is without merit.

_Wendy Kelley_
Director                          Date  5/18/12

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

JUN 12 2012

HEALTH & CORRECTIONAL PROGRAMS

Return to inmate, stands as written.

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _CUMMINS_

Name _RONALD O'NEAL_

ADC# _128560_  Brks # _3_  Job Assignment _PICKET_

FOR OFFICE USE ONLY
GRV CU-12-00396
Date Received: FEB 2 2 2012
GRV. Code #: CUMMINS INT

_2-16-12_ (Date) STEP ONE: Informal Resolution

_2-20-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _I turned in a 11-17-2011 request to review my medical records to Ms Crompton. I have copies of that request._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: ~~I turned in a 11-17-2011 request to review~~

_Is this Grievance concerning Medical or Mental Health Services? _____ If yes, circle one: medical or mental_
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _After I returned from Federal Court, Case No. 5:10CV153, 11-16-2011 I was called to the Infirmary. Ms M. Austin, Infirmary Director, in the presence of Ms J Crompton, Medical Records Officer, informed me as long as my law suit against Correctional Medical Services Inc was going on, I would be called in every two (2) weeks to review my medical records instead of every 30 days as required by ADC 59.01 cont'd. I was instructed to put in a request to review my medical records. I put in the request for that review 11-17-2011. It's been 91 days since that request was made and I have not been called in to review my medical records. This is an obvious effort by CMS Inc / CORIZON HEALTH INC and their employees to block me from obtaining needed information for trial preparation._

_Ronald O'Neal_                                   _2-16-2012_
Inmate Signature                                  Date
_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _2-16-12_ (date), and determined to be **Step One** and/or an Emergency Grievance _yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _M. Austin_  Date _2-16-12_
_Lisa Bailey_         _49708_        _(sign)_          _2-16-12_
**PRINT STAFF NAME** (PROBLEM SOLVER)  ID Number  Staff Signature  Date Received
Describe action taken to resolve complaint, including dates: _Mrs Crompton reports that since your record review of 11-11-11 she has not received any request from you. No one is try to "block" you from obtaining your med. info. in prep. for ... 2-17-12_
_PC Bailey_  2-20-12          _Ronald O'Neal_  2-20-12
Staff Signature & Date Returned          Inmate Signature & Date Received
This form was received on _2-20-12_ (date), pursuant to **Step Two**. Is it an Emergency? _N(?)_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _Forward_ (Forwarded to Grievance Officer/Warden
If forwarded, provide name of person receiving this form: _____

**Exhibit # R**
THREE Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance (
to Inmate After Completion of Step One and Step Two

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC #: <u>128560A</u>     GRIEVANCE #: <u>CU-12-00396</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(603) You reported in your complaint of 2-16-12 that on 11-17-12 you put in a request to review your medical record and you have not been called to review it. You were informed on 2-20-12 that Mrs Crompton reported that she has not received a request from you since you reviewed your medical record on 11-11-12. If you want to review your medical record submit a request to Mrs Crompton in medical records. I find this grievance without merit.</u>

_____          _____          _____
Signature of Health Services              Title                        Date
Administrator/Mental Health
Supervisor or Designee

3-21-12

MAR ... 2012

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? This is the second time Ms Austin and Ms Crompton have claimed they did not receive a request from me to review my medical records. Knowing this might happen again I discussed the problem with barracks problem solver, Ms Lisa Bailey and showed her the 11-16-2011 request to review my medical records along with copies of the request I had made before I placed the request in the sick call box. The 2-16-12 grievance was not only a complaint, it was notification that I need to review my medical jacket. And this grievance is the only way I could guarantee Ms Austin and Ms Crompton can't say they didn't receive my request to review my medical jacket/records again.

Ronald D. O'Neal          128560          3-23-12
Inmate Signature            ADC#              Date

IGTT420                    Page 1 of 1

IGTT430
3GD

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-12-00396

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

February 16, 2012, you grieved after returning from Federal Court you were called to the Infirmary and told as long as your law suit against CMS was going on you would be called in every two weeks to review your medical record. You complain you put in a request on November 17 and still have not been called in to review your medical records.

This is a duplicate to CU-12-00395. Duplicate grievances are without merit. I have attached my finding below:

"The grievance you refer to does not prove you submitted a request to review your medical record. It states you reported in your February 16, 2012, complaint that you put in a request to review your medical record on November 17. The medical department responded you were told on February 20 that Ms. Crompton had not received a request from you since you reviewed your medical record on November 11, 2012. That grievance was without merit. A statement by you does not prove you submitted or the medical department received that request.

The medical department provided a Medical Record Review Verification form signed by you on April 2. You submitted a request to review your medical record on April 6 and were notified on April 26 that your request was received but the medical department was unable to schedule you at that time because your medical record was at Central office. You were advised when it was returned you would be scheduled. That review took place on May 15.

You reviewed your record November 11, 2011, April 2 and May 15, 2012. Your appeal is without merit."

This appeal is without merit.

Director  _Wendy Kelley_          Date  _5/18/12_

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

FOR OFFICE USE ONLY
GRV. # CU-12-00079
Date Received: APR 12 2012
GRV. Code #: CUMMINS UNIT
GRIEVANCE OFFICE

Unit/Center _Cummins_

Name _Ronald O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _PICKET_

_4-6-12_ (Date) STEP ONE: Informal Resolution

_4-11-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
_(4-2-2008)_ If the issue was not resolved during Step One, state why: _I recieved a copy of the MRI done at Premier MRI in the mail. I watch DR Almond make the report and place it in my file. Ms Murray is mistaken._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _yes_ If yes, circle one medical or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _4-2-12 I reviewed My medical records jacket. There were records missing from my medical records jacket, the missing records are:_
_(1) Two seperate january 2008 DR Robert Scott request for an MRI/ CAT SCAN of my left lung._
_(2) The written report made by Ms Murray after she gave me a physical exam 10-2-2009_
_(3) The written reports made by DR Almond of her exams of me 12-3-2009 and 12-4-09_
_(4) Results of a 7-9-2008 MRI done at Premier MRI in Little Rock_
_(5) FOURTY (40) pages of medical reports from St Vincents Health Systems that I reviewed with Ms Murray Oct 2009_

_I need these missing records located and replaced in my medical records jacket so that I can prepare for the upcoming civil trial, case # 5:10 CV 00153._

RECEIVED DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

_Ronald O'Neal_                                    _4-6-12_
Inmate Signature                                    Date                MAY 18 2012

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the_ Warden or designee.

HEALTH & CORRECTIONAL PROGRAMS

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _4-6-12_ (date), and determined to be **Step One** and/or an Emergency Grievance _yes_ (Yes or No). This form was forwarded to medical or mental health? _yes_ (Yes or No). If yes, name of the person in that department receiving this form: _____ Date _4/6/12_

Lisa Bailey   _49708_                                     _4-6-12_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature         Date Received
Describe action taken to resolve complaint, including dates: _The notes by Dr Scott were in your volume & available. The period exam by Murry on 10-2-9 was also in your records. Premier does not do CTs & they show no record of an MRI done on 7-9-2008. Mrs Blankenship. She did not review the St Vincent record with you in Oct 09. No entries made by Dr Almond_
Staff Signature & Date Returned _Verna 4/11/12_   Inmate Signature & Date Received _Ronald O'Neal 4-11-1_
This form was received on _4-11-12_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Warden)
If forwarded, provide name of person receiving this form: _____

**Exhibit # S**
_THREE Pages_

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance

IGTT420
3GH

Attachment IV

INMATE NAME: Oneal, Ronald D.   ADC #: 128560A   GRIEVANCE #: CU-12-00879

HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(603) You reported in your complaint of 4-6-12 that on 4-2-12 you reviewed your medical record and the following items were missing: @ separate January 2008 Dr Robert Scott request for and MRI/CT Scan of your left lung, the written report made by Mrs Bland after her physical exam of 10-2-2009, the written reports made by Dr Almond after her exams of you on 12-3 and 12-4 of 2009, the results of a 7-9-2008 MRI done at Premier MRI in Little Rock,and forty pages of medical reports from St Vincents that you reviewed with Ms Murray Oct 2009. The notes by Dr Scott were in your volume and available at that review, the printed exam by Ms Murray on 10-2-2009 was also in your. Premier was contacted and reported they did not have record of and MRI done on 7-9-2008. Mrs Bland reports that she did not review the St Vincent record with you in October of 2009 and there were no entries made by Dr Almond were found. I find this grievance without merit.

_____
Signature of Health Services
Administrator/Mental Health
Supervisor or Designee

_____
Title

_____
Date

**INMATE'S APPEAL**

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? During Jacket review 5-15-12 the 5 items were review (1) A 3-28-08 DR SCOTT recommendation for a CT/MRI scan was located. The two January 2008 request for CT/MRI scans are still missing. (2) A partial report of Ms Murray/Bland 10-2-08 exam of me was located. (3) DR Almonds 12-3-09 and 12-4-09 reports of her exams of me are still missing. (check call outs for record of exams) (4) Although Ms Austin stated Premier shows no record of a 7-9-09 MRI, with the help of Ms Jackson a copy of that report was located in my medical jacket. (5) The missing 42 pages of St Vicents records are in my medical jacket now that my records have been returned from their trip to the central office. I still need Items (1) DR Scotts January, 08 MRI scan request and (3) DR Almonds reports of my 12-3-09 and 12-4-09 exams located.

_____
Inmate Signature
Ronald D. O'Neal

_____
ADC#
128560

_____
Date
5-15-12

IGTT420   Page 1 of 2

IGTT430
3GD

INMATE NAME: Oneal, Ronald D.        ADC #: 128560        GRIEVANCE#:CU-12-00879

## CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

On April 6, 2012, you grieved that you reviewed your medical record on April 2 and there were some
missing records. You state that the missing records are: two requests for an MRI or CT from Dr. Scott in
January 2008, written report by Ms. Murray on October 2, 2009, written reports by Dr. Almond on
December 3 and December 4, 2009, results from an MRI done on July 9, 2008 at Premier MRI and forty
pages of medical reports from St. Vincents. You state you need to review these records for an upcoming
civil trial.

The medical department responded, "You reported in your complaint of 4-6-12 that on 4-2-12 you
reviewed your medical record and the following items were missing: @ separate January 2008 Dr Robert
Scott request for and MRI/CT Scan of your left lung, the written report made by Mrs Bland after her
physical exam of 10-2-2009, the written reports made by Dr Almond after her exams of you on 12-3 and
12-4 of 2009, the results of a 7-9-2008 MRI done at Premier MRI in Little Rock,and forty pages of medical
reports from St Vincents that you reviewed with Ms Murray Oct 2009. The notes by Dr Scott were in your
volume and available at that review, the printed exam by Ms Murray on 10-2-2009 was also in your.
Premier was contacted and reported they did not have record of and MRI done on 7-9-2008. Mrs Bland
reports that she did not review the St Vincent record with you in October of 2009 and there were no
entries made by Dr Almond were found. I find this grievance without merit."

Your appeal states that you reviewed your medical record on May 15, 2012 and the following
documentation was in your record: MRI report from July 9, 2009, 42 pages of reports from St. Vincents,
recommendation from Dr. Scott for an MRI or CT dated March 28, 2008 and a partial report from your
October 2, 2008 visit with Ms. Murray. You state that you still need to review the request from Dr. Scott
for an MRI in January 2008 and Dr. Almond's December 3 and December 4, 2009 notes.

According to policy, medical records that have become too thick will be purged as to reduce their size. The
purged documents will be placed in a separate medical record known as a "volume". Only information that
is older than 12 months will be purged and placed in the separate record. Due to the size of your medical
record and the dates of service, the information that you grieved is located in a separate record rather
than your current record. My staff has reviewed your volume and was able to locate the December 3 and
December 4, 2009 handwritten notes from Dr. Almond. My staff was not able to locate a request from Dr.
Scott in January 2008 for an MRI. However, they were able to locate a handwritten note from a different
doctor from January 25, 2008 that did note that a consult for a CT was written. Your volume also
contained documents from St. Vincents. Your volume is at Central Office and is being returned to your unit
medical department. You will need to submit a request to the medical records department to review your
volume.

Due to the medical department's response that there were no entries made by Dr. Almond found and the
fact that the December 3 and December 4, 2009 notes from Dr. Almond being located in your volume, this
appeal is with merit.

_____        6/29/12
Director                                        Date

Case 5:14-cv-0~~Rejected~~ ~~untimely filed~~ 2-13-12 ~~Pic more~~ than 15 days past due

# UNIT LEVEL GRIEVANCE FORM (Attachment I)

*No response Necessary*
*Not emergency*
*audit*
*5-10-12*

**Unit/Center** CUMMINS

**Name** RONALD D. O'NEAL

**ADC#** 128560 **Brks #** 3 **Job Assignment** PICKET

FOR OFFICE USE ONLY
GRV. # CU-12-01144
Date Received: MAY 10 2012
GRV. Code #: 600 IS UNIT
EVANCE OFFICE

5-4-12 (Date) STEP ONE: Informal Resolution

5-9-12 (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: This excuse is not acceptable, because a staff problem solver placed my request in the sick call box 3-31-12.

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

*Is this Grievance concerning Medical or Mental Health Services?* YES If yes, circle one (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): 2-12-12, During a visit to the Infirmary I informed Ms Esaw I had (4) #13 hearing aid batteries to exchange. Ms Esaw said, "She was out of #13's and would have to pick some up. After waiting over eight weeks with out being called to the Infirmary to exchange batteries on 3-31-12 I sent Ms Esaw a request for interview reminding her I needed to exchange hearing aid batteries. As of 5-4-12 I have not been pulled in to exchange my hearing aid batteries by Ms Esaw. I now have (6) dead batteries and my hearing aid has not been working for over 24 hours because I don't have a working battery for it. Ms Esaw deliberate, indifference to my medical handicap needs are evident by her in action. I Being unable to hear places my safety at risk & not being able to hear carts, trust gates or officers commands.

*Ronald D. O'Neal*                                    5-4-12

**Inmate Signature**                                    **Date**

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on 5-4-12 (date), and determined to be **Step One** and/or an Emergency Grievance YES (Yes or No). This form was forwarded to medical or mental health? YES (Yes or No). If yes, name of the person in that department receiving this form: _____ Date 5-4-12

Lisa Bailey    49708    _____    5-4-12
**PRINT STAFF NAME (PROBLEM SOLVER)**    **ID Number**    **Staff Signature**    **Date Received**

Describe action taken to resolve complaint, including dates: Mrs Esaw reports that she has not received any requests from you & will call you down today. Cindy 5-7-12

_____ King 5/7/12    Ronald O'Neal  5-7-12
**Staff Signature & Date Returned**        **Inmate Signature & Date Received**

This form was received on 5-9-12 (date), pursuant to **Step Two**. Is it an Emergency? No (Yes or No)
Staff Who Received Step Two Grievance: Lisa Bailey
Action Taken: Forwarded (Forwarded to Grievance Officer/Ward
If forwarded, provide name of person receiving this form: _____

**Exhibit #** T
Three pages

---

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance

IGTT400

3GR

Attachment II

*6V 3/2*

# ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate  <u>Oneal, Ronald D.</u>

FROM:  <u>Gibson, April Dyann</u>

DATE:  <u>05/10/2012</u>

ADC #:  <u>128560A</u>

TITLE:  <u>Administrative Specialist 1</u>

GRIEVANCE #:  <u>CU-12-01144</u>

Please be advised, I have received your Grievance dated  <u>05/04/2012</u> on  <u>05/10/2012</u> .

Your grievance was rejected as either non-grievable, untimely, duplicative, frivolous, or vexatious.

_____

Signature of Administrative Specialist 1

## CHECK ONE OF THE FOLLOWING

○  This Grievance will be adressed by the Warden/Center Supervisor or designee.

○  This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.

○  This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.

☒  This Grievance has been determined to be an emergency situation, as you so indicated.

○  This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.

○  This Grievance was REJECTED because it was either non-grievable ( ), untimely, was a duplicate ( ) or was frivolous or vexatious.

*RECEIVED DEPUTY DIRECTOR*
*ARKANSAS DEPARTMENT OF CORRECTION*
*MAY 1 2012*
*HEALTH & CORRECTIONAL PROGRAMS*

*RECEIVED DEPUTY DIRECTOR*
*ARKANSAS DEPARTMENT OF CORRECTION*
*JUN 12 2012*
*HEALTH & CORRECTIONAL PROGRAMS*

## INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below. *The 2-12-12 and 3-31-12 dates are not what triggered my grievance. These dates establish the back ground for Ms Esaws deliberate indifference of letting me run out of working hearing aid batteries on 5-3-12. The grievance was timely because it was filed one day after I ran out of working batteries. My receiving batteries at a later date does not moot Ms Esaws inaction and deliberate indifference.*

*Ronald D. O'Neal*                    *128560*                    *5-12-12*

Inmate Signature                         ADC #                          Date

IGTT400

Page 1 of 1

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D. ADC #: 128560 GRIEVANCE#:CU-12-01144

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

May 4, 2012, you grieved you requested new hearing aids batteries on February 12. After receiving no response you sent a request to Ms. Esaw for an interview on March 31 reminding her you needed to exchange batteries. You claim you still have not received any batteries.

The response to your informal was that Ms. Esaw would call you to the infirmary that date, May 7, 2012, but that she had not received a request for interview from you. The unit grievance office rejected this grievance as untimely due to your starting your complaint with the February 12 date. In your appeal of the grievance rejection, you claim the February 12 and March 31 dates are not what triggered your grievance; they establish the background for Ms. Esaw's deliberate indifference to you and letting your hearing aids go completely dead on May 4.

You signed for and were issued hearing aid batteries on May 7, 2012. While I agree that your grievance should not have been rejected as untimely, your issue was resolved prior to your appeal when you received the batteries May 7; therefore, your is without merit and your issue resolved.

Wendy Kelley
Director

5/20/12
Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT OF CORRECTION
JUN 12 2012
HEALTH & CORRECTIONAL PROGRAMS

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)
Unit/Center _Cummins_

Name _Ronald O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _PICKET_

FOR OFFICE USE ONLY
GRV. # CU12-02918
Date Received: NOV 2 6 2012
GRV. Code #: 6 Cummins Unit
GRIEVANCE OFFICE

_11-19-12_ (Date) STEP ONE: Informal Resolution

_11-21-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _In order to use this conduct as an court exhibit grievance policy requires exhaustion through Ms Wendy Kelley._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

Is this Grievance concerning Medical or Mental Health Services? **YES** If yes, circle one: (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _I turned in a request for interview notifying the Infirmary staff my hearing aid was no longer working. On 11-5-12 Ms Crompton called me to the Infirmary, while there I demonstrated to her my hearing aid was no longer working. Ms Crompton informed me she would contact Ms Wendy Kelley to see if they were going to repair my hearing aid or replace it with a hearing aid that would also allow me to hear phone conversations when talking on the phone. Ms Crompton assured me she would call me back down to the Infirmary that same day and let me know if the Infirmary was going to repair or replace my hearing aid. IT has been 14 fourteen days and Ms Crompton has not called me back to the Infirmary and I am still without a working hearing aid._

_Ronald O'Neal_                    _11-19-12_
Inmate Signature                       Date
*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _11-19-12_ (date), and determined to be Step One and/or an Emergency Grievance _NO_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form:
_Cpl. L. Manning_   _78244_   _[signature] LPN_   Date _11-20-12_
**PRINT STAFF NAME (PROBLEM SOLVER)**   ID Number   Staff Signature   Date Received
_11-19-12_
Describe action taken to resolve complaint, including dates: _Ms Crompton is gone for the Day, I will Leave A notice, for Her, In the Am 11/21/12 To creat on this for you, And Get Back with you._
_Mathews An 11/30/12_
Staff Signature & Date Returned _C.Clark 11/21/12_   _Ronald O'Neal 11-21-12_
                                          Inmate Signature & Date Received
This form was received on _11-21-12_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey #49708_  Date: _11-21-12_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Ward
If forwarded, provide name of person receiving this form: _____

**Exhibit # u**
_THREE pages_

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance
to Inmate After Completion of Step One and Step Two.

IGTT420
3GH

Attachment IV

INMATE NAME: Oneal, Ronald D.          ADC #: 128560A          GRIEVANCE #: CU-12-02918

### HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(610) Your 11-21-12 grievance has been received and reviewed as well as your medical record to determine if medically necessary healthcare, as determined by your healthcare providers, has been provided to you.
You state your hearing aid needs to be replaced or repaired.
Your hearing aid has been sent to Ototronix to be repaired. Your hearing aid will be returned to you as soon as it is received from them. Please be patient as this can be a lengthy process. Mrs Crompton did not inform you that she would ask Mrs Kelly about getting you a hearing aid that would allow you to hear over the phone. Your grievance is without merit.
If your medical condition changes please address any concerns through the sick call process.

_Marie Austin_

_____          _Marie E Austin_          _12/24/2012_
Signature of Health Services                        Title                      Date
Administrator/Mental Health Supervisor or
Designee

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? I am positive on 11-5-12 I explained to Ms Crompton That per Ass Warden Weekly's direction I had written Warden Lay 6-3-12 requesting that he instruct the infirmary to get me a hearing aid that I could understand what was being said to me on the telephone or send me to the VA for one. And when I followed up with Warden Lay standing mainline July of 2012 he informed me he sent my request to Ms Wendy Kelley. I requested Ms Crompton to call Ms Kelley for her answer to my request. Ms Crompton assured me she would speak to Ms Austin and call Ms Kelley for her decision and then call me back to the infirmary to give me Ms Kelly's decision later that day.   Ms Austins response of no merit is based on untrue information given her by Ms Crompton.   Ms Kelley before you rule on this appeal I am requesting that Ms Crompton and I are given a polygraph to determine who is telling the truth. The results of the polygraph will prove Ms Crompton has falsified medical information.

_Ronald D. O'Neal_                    _128560_                  _12-27-12_
Inmate Signature                    ADC#                          Date
                                   RECEIVED-DEPUTY DIRECTOR
                                   ARKANSAS DEPARTMENT
                                   OF CORRECTION

                                   DEC 31 2012

                                   HEALTH & CORRECTIONAL PROGRAMS

IGTT420                                    Page 1 of 1

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.        ADC #: 128560        GRIEVANCE#:CU-12-02918

November 19, 2012, you grieved you turned in a request for interview notifying the Infirmary staff your hearing aid was not working. You claim Ms. Crompton called you to the Infirmary on November 5 and you demonstrated your hearing aid was no longer working. You claim she told you she would call you back to the Infirmary the same day and let you know if your hearing aid was going to be repaired or replaced.

The medical department responded, "Your hearing aid has been sent to Ototronix to be repaired. Your hearing aid will be returned to you as soon as it is received from them. Please be patient as this can be a lengthy process. Mrs Crompton did not inform you that she would ask Mrs Kelly about getting you a hearing aid that would allow you to hear over the phone. Your grievance is without merit. If your medical condition changes please address any concerns through the sick call process."

You disagree with this response in your December 27 appeal because you explained to Ms. Crompton on November 5 that you had written to Warden Lay requesting he instruct the Infirmary to provide you with a hearing aid that would let you understand what was being said to you on the telephone. You claim that he told you in July of 2012 he sent your request to Wendy Kelley. You state Ms. Crompton did tell you she would call Ms. Kelley and call you back to the Infirmary that day and let you know her decision.

You signed for a hearing aid with two batteries on January 24, 2013. Teletype (TTY) machines are used by deaf and hard of hearing people to communicate by typing and reading text and one is in located in the Library at your unit. If you have problems hearing over the telephone with your hearing aid, you can request access to your unit's TTY machine from any ADC supervisor.

This appeal is without merit.

Director _____Wendy Kelley_____        Date __2/11/13__

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**
Unit/Center _____Cummins_____

FOR OFFICE USE ONLY
GRV. # CU13-00 273
Date Received: _____ 2013
GRV. Code #: 6.02
GRIEVANCE OFFICE

Name __Ronald D. O'Neal__

ADC# __128560__   Brks # __3__   Job Assignment __Picket__

__1-25-13__ (Date) STEP ONE: Informal Resolution

__1-30-13__ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: THE INFIRMARY 1-28-13 ANSWER
To Step (1) ONE does NOT NULLIFY THE TIME PERIOD I HAD To GO WITHOUT A HEARING AID.

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

*Is this Grievance concerning Medical or Mental Health Services?* __yes__ *If yes, circle one.* medical *or mental*
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): 1-24-13 I was called to the Infirmary and my hearing aid that had been broken for over three months was returned to me by Ms Essex. Both of my ears have the same hearing loss, Corizon Health Inc (CHI) employees decision that I only require one hearing aid are responsible for me being placed in harms way of closing riot gates, moving carts and other hazards for the past three months! IF I had been issued two hearing aids I at least would have had 50% protection from hazards and a chance for some normal hearing when the facility hearing aid was sent for repair. When I'm issued glasses, the glasses have two lens. The only reason for my hearing not being treated the same is CHI employees deliberate indifference to my medical needs.    In order to comply with grievance policy this grievance is addressing the last fourteen days of this time period.

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

__Ronald D. O'Neal__                          __1-25-13__ MAR 15 2013
Inmate Signature                               Date

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on __1-25-13__ (date), and determined to be **Step One** and/or an Emergency Grievance
__yes__ (Yes or No). This form was forwarded to medical or mental health? __yes__ (Yes or No). If yes, name of the person in that department receiving this form: __Wright__ CP?  Date __1/25/13__
__Lisa Bailey__        __49708__       __Tina Bar__       __1-25-13__
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature        Date Received
Describe action taken to resolve complaint, including dates: 1/28/13 On 3/8/10 you were approved for one hearing aid because only one was found medically necessary, feel free to submit a sick call request in order to discuss further with the provider. (Bardin) 1/28/13
__R.O. Wright__  1-29-13   __Ronald O'Neal__ 1-29-13
Staff Signature & Date Returned  1-29-13    Inmate Signature & Date Received
This form was received on __1-30-13__ (date), pursuant to **Step Two.** Is it an Emergency? N(0) (Yes or No)
Staff Who Received Step Two Grievance: __Lisa Bailey__
Action Taken: __Forwarded__ (Forwarded to Grievance Officer/Ward
If forwarded, provide name of person receiving this form: _____

**Exhibit # V**
THREE Pages

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance Office,

BK 3/0002-V

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>   ADC #: <u>128560A</u>   GRIEVANCE #: <u>CU-13-00273</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(610) Your 1/30/2013 grievance has been received and reviewed as well as your medical record to determine if medically necessary health care, as determined by your health care providers, has been provided to you.</u>

<u>You stated in your 1/30/2013 grievance that on 1/24/2013 you were called to the infirmary and only received one hearing aid, and you need two hearing aids.</u>

<u>Records reflect you were sent out for a consultation for an audiogram on 10/18/2011. You were approved for one hearing aid, because only one was found to be medically necessary; therefore I find your grievance without merit.</u>

_____
Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

MAR 15 2013

HEALTH & CORRECTIONAL PROGRAMS

Laura Lee Morgan
_____
Title

03/13/2013
_____
Date

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? I would like to direct the examiner considering this appeal to my 1-29-2004 Hearing Evaluation Report located in my medical file. O= the right ear and X= the left ear on the chart. (see Legend chart) The examiner can plainly see the hearing loss in both ears mirrow each other. I am 66 year old, it is a medical fact a persons hearing does not improve with age in older people. I am requesting that a medical doctor review my 2004 and 2011 hearing test results. After the examination I would appreciate it if the examiner would direct the Cummins medical staff to issue me a hearing aid for both ears. Thank you

_Ronald D. O'Neal_   _128560_   _3-13-2013_
Inmate Signature   ADC#   Date

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-00273

January 25, 2013, you grieved you have the same hearing loss in both ears, but the medical department only provides you with one hearing aid. You claim when it was turned in to be repaired you were placed in harms way of closing riot gates, moving carts, and other hazards. You request hearing aids for both ears.

The medical department responded, "Records reflect you were sent out for a consultation for an audiogram on 10/18/2011. You were approved for one hearing aid, because only one was found to be medically necessary; therefore I find your grievance without merit."

Your appeal states that your Hearing Evaluation Report from January 29, 2004, plainly shows the hearing loss in both ears mirror each other. You state you are 66 years old and it is a medical fact that hearing does not improve with age. You want a doctor to review both your 2004 and 2011 hearing test results.

You were seen by Dr. Warren on April 26 complaining that you were unable to use the telephone due to loud ringing from your hearing aid when you were on the phone. He noted you appeared to hear and understand him whether you had the hearing aid in place or not. He submitted a consult request for an audiology evaluation and it was approved today and will be scheduled in the near future. As for now, you signed for a hearing aid with two batteries on January 24, 2013. Teletype (TTY) machines are used by deaf and hard of hearing people to communicate by typing and reading text and one is in located at your unit. If you have problems hearing over the telephone with your hearing aid, you can request access to your unit's TTY machine from any ADC supervisor.

This appeal is without merit.

Director          Date
4/29/13

IGTT430
Page 1 of 1

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _Cummins_

Name _Ronald D. O'NEAL_

ADC# _128560_   Brks # _3_   Job Assignment _PICKET_

FOR OFFICE USE ONLY
GRV. # _CU-13-00744_
Date Received: _CUMMINS UNIT   MAR 18 2013_
GRV. Code # _1005_

_3-13-13_ (Date) STEP ONE: Informal Resolution

_3-15-13_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)

If the issue was not resolved during Step One, state why: _I put in a sick call for my hearing problem in February, I saw nurse Carpenter, she referred me to see a doctor, I was never called in._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

---

Is this Grievance concerning Medical or Mental Health Services? _yes_ If yes, circle one: (medical) or mental

**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how you were affected. (Please Print): _March 10, 2013 I called my daughter and grandchildren. My high Frequency hearing loss is so bad I could not understand what my grandson was saying. The hearing aid I was issued by Correctional Medical Services Inc will not work while using the telephone because when the phone gets close to the hearing aid the hearing aid starts to squeal making it impossible to hear everything. At (30) thirty months my grandson is not old enough to use a teletype machine at the loft. I need to be issued a hearing aid that I can talk and hear with while using the telephone. To deny a handicap person such as myself the ability to hear and interact in conversation with his grandchildren shows a cruel deliberate indifference by all the decision makers involved in this denial of my medical needs._

---

_Ronald D. O'Neal_                                      _March 13, 2013_
Inmate Signature                                        Date

RECEIVED-DEPUTY DIRECTOR ARKANSAS DEPARTMENT OF CORRECTION   APR 19 2013

**If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.**

---

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _3-13-13_ (date), and determined to be **Step One** and/or an Emergency Grievance _Yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _____   Date _3/13/13_

_Sgt. M. Nash_              _46821_              _Sgt. M. Nash_              _3-13-13_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: _Please place a sick call for your medical concerns_

_____ _3/14/13_
_____ _3/15/13_              X_Ronald D O'Neal_ _128560_ _3-15-13_
Staff Signature & Date Returned              Inmate Signature & Date Received

This form was received on _3/15/13_ (date), pursuant to **Step Two**. Is it an Emergency? _No_ (Yes or No)

Staff Who Received Step Two Grievance: _Bridge Waters_

Action Taken: _____ (Forwarded to Grievance Officer/Ward

If forwarded, provide name of person receiving this form: _____

**Exhibit # W**

_Four  Pages_

---

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance

🖊 3 BKS/02 √

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>          ADC #: <u>128560A</u>          GRIEVANCE #: <u>CU-13-00744</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(610) You submitted a grievance on March 13, 2013, grieving that you are unable to hear while using the telephone with your current hearing aid.</u>

<u>You were instructed to submit a sick call request at the informal level. You filed Step 2 stating that you submitted a request back in February and Nurse Carpemter saw you and referred you to doctor's call but you were never seen. I found not record of the above nurse sick call visit nor referral but I did find you February 3 request which was triaged by medical the next day but your visit has not been completed at this time. You are scheduled for tomorrow's sick call. Due to the above oversight, I find your grievance with merit but resolving.</u>

<u>Below is a portion of Wendy Kelley's February 11, 2013, response to your other grievance (CU-12-2918) regarding your hearing issues:</u>

<u>"Teletype (TTY) machines are used by deaf and hard of hearing people to communicate by typing and reading text and one is located in the Library at your unit. If you have problems hearing over the telephone with your hearing aid, you can request access to your unit's TTY machine from any ADC supervisor". This portion of your grievance is without merit because ADC has an alternative option for you to utilize to communicate with your family.</u>

_(signature)_ Gardner

Signature of Health Services
Administrator/Mental Health Supervisor or
Designee

<u>Medical Grv Officer</u>
Title

<u>04/15/2013</u>
Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

### INMATE'S APPEAL

APR 1 9 2013

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? Part 1: you are correct this grievance has merit and this issue will not resolved until I am issued a hearing aid that is usable with a telephone so that I can understand what my grand children are saying on the phone. Part 2: Ms A. Sides showed me the Teletype (TTY) machine today and she agreed with me that anyone with common sense would know 18 to 60 month old children can not use

a TTY machine. To use the use of a TTY machine as an excuse to denie me the normal hearing and understanding of my grand childrens voices not only shows deliberate indifference to my hearing needs it goes into the cruel and unusual punishment zone. Please order me the correct hearing aids.

| Ronald D. O'Neal | 128560 | 4-17-13 |
|---|---|---|
| Inmate Signature | ADC# | Date |

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

APR 1 9 2013

HEALTH & CORRECTIONAL PROGRAMS

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-00744

---

March 13, 2013, you grieved you are unable to hear while using the telephone with your current hearing aid.

The medical department responded, "You were instructed to submit a sick call request at the informal level. You filed Step 2 stating that you submitted a request back in February and Nurse Carpenter saw you and referred you to doctor's call but you were never seen. I found not record of the above nurse sick call visit nor referral but I did find you February 3 request which was triaged by medical the next day but your visit has not been completed at this time. You are scheduled for tomorrow's sick call. Due to the above oversight, I find your grievance with merit but resolving. Below is a portion of Wendy Kelley's February 11, 2013, response to your other grievance (CU-12-2918) regarding your hearing issues: "Teletype (TTY) machines are used by deaf and hard of hearing people to communicate by typing and reading text and one is in located in the Library at your unit. If you have problems hearing over the telephone with your hearing aid, you can request access to your unit's TTY machine from any ADC supervisor". This portion of your grievance is without merit because ADC has an alternative option for you to utilize to communicate with your family."

Your appeal states this issue will not be resolved until you are issued a hearing aid that is usable with a telephone and you can understand what your grandchildren are saying on the phone. You complain that children from 18 to 60 months old cannot use a TTY machine. You claim this is deliberate indifference to your needs and request that the correct hearing aids be ordered.

You were seen by Dr. Warren on April 26 complaining that you were unable to use the telephone due to loud ringing from your hearing aid when you were on the phone. He noted you appeared to hear and understand him whether you had the hearing aid in place or not. He submitted a consult request for an audiology evaluation and it was approved today and will be scheduled in the near future. As for now, you signed for a hearing aid with two batteries on January 24, 2013. Teletype (TTY) machines are used by deaf and hard of hearing people to communicate by typing and reading text and one is in located in the Library at your unit. If you have problems hearing over the telephone with your hearing aid, you can request access to your unit's TTY machine from any ADC supervisor.

You are being evaluated for your complaints concerning your hearing and an audiology consult has been approved. This appeal is without merit.

---

_Wendy Kelley_                                   4/29/13
Director                                          Date

IGTT430                                      Page 1 of 1

**UNIT LEVEL GRIEVANCE FORM (Attachment I)**

*Untimely Manner*

Unit/Center _CUMMINS_

*Not an emergency JM AO*

RECEIVED
FOR OFFICE ON
CU-12-01889
Date Rec___  CUMMINS UNIT
GRV. Code #___  GRIEVANCE OFFICE
AUG 10 2012
1009

Name _RONALD D. O'NEAL_

GRV. # ___

ADC # _128560_  Brks # _3_  Job Assignment _PICKET_

_8-3-12_ (Date) STEP ONE: Informal Resolution

_8-7-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _I filed this grievance because I put in a sick call for back pain 7-23-12 and was never called to sick call. Its not about a Hernia._

___ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: ___

*Is this Grievance concerning Medical or Mental Health Services?* _YES_ If yes, circle one: (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _July 25, 2012 I put in a sick call requesting help requesting help for the pain I am suffering in my back, neck and left lung areas. My already existing injuries were aggravated and my pain has been magnified because of the 5 hour and 44 minutes I was forced to stand or sit on concrete while waiting to see the doctor for a hernia problem._

_My grievance is: It's been (9) nine days since I put in my sick call request and I haven't been called to see a Corizon Health Inc. medical nurse or doctor for these problems._

_I have copies of my 7-25-12 sick call request._

RECEIVED DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION
AUG 15 2012
CORRECTIONAL PROGRAMS

_Ronald D. O'Neal_                          _8-3-12_
Inmate Signature                              Date

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _8/3/12_ (date), and determined to be **Step One** and/or an Emergency Grievance _No_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form ___ Date _8/3/12_
PRINT STAFF NAME (PROBLEM SOLVER)  ID Number _1370_  Staff Signature _Ashley_  Date Received _8/3/12_
Describe action taken to resolve complaint, including **dates**: _Computer shows, you were seen 7/03/12 for your Hernia, Records show you are on the list to receive A Hernia Belt, they Are on Back order. you have been referred to Outside Provider._
_Providers on 8/6/12_

Staff Signature & Date Returned _Q King 8-7-12_  Inmate Signature and Date Received
This form was received on _8/7/12_ (date), pursuant to Step **Two**. Is it an Emergency? _No_ (Yes or No)
Staff Who Received Step Two Grievance: _Ronald O'Neal_
Action Taken: _Forward to Warden's__ Forwarded to Grievance Officer/Warden  **Exhibit # X**
If forwarded, provide name of person receiving this form: _Mrs Free_  *THREE Pages*

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance (
to Inmate After Completion of Step One and Step Two.

IGTT400

3GR

Attachment II

## ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate  Oneal, Ronald D.                    ADC #:  128560A

FROM:  Moncrief, Treill R                         TITLE:  ADC Inmate Grievance Coord

DATE:  08/10/2012                                 GRIEVANCE #:  CU-12-01889

Please be advised, I have received your Grievance dated  08/03/2012  on  08/10/2012 .

Your grievance was rejected as either non-grievable, untimely, duplicative, frivolous, or vexatious.

_____

Signature of ADC Inmate Grievance Coord

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 15 2012

CORRECTIONAL PROGRAMS

### CHECK ONE OF THE FOLLOWING

◦    This Grievance will be adressed by the Warden/Center Supervisor or designee.

◦    This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.

◦    This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.

☐    This Grievance has been determined to be an emergency situation, as you so indicated.

◦    This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.

⊙    This Grievance was REJECTED because it was either non-grievable ( • ), untimely, was a duplicate of , or was frivolous or vexatious.

### INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below. After waiting nine days in vain to be called for a sick call request that was turned in 7-25-12 I filed grievance CU-12-01889 on 8-3-12. Four days later I received a response to Step One on 8-7-12. I responded with step two and had the unit officer sign off on my response the same day, 8-7-12. The grievance was then placed in the grievance box. Step One was filed within the 15 day time limit and step two was filed within the three day time limit.

Ronald D. O'Neal                 128560              8-11-12

Inmate Signature                 ADC #               Date

This grievance, including all steps were filed in a timely manner and is with merit.

Note: July 28, July 29, Aug 4 and Aug 5 are weekend nonworking days.

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-12-01889

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

August 3, 2012, you grieved it has been 9 days since you submitted a sick call request and you still have not been seen.

Your grievance was rejected as untimely and you submitted an appeal to the rejection stating you submitted a sick call request on July 25 and filed your Informal on August 3. When you received the response to your Informal on August 7 you submitted Step Two on the same day. You add that July 28, 29, August 4, and 5 are week-end, not work days.

You are correct, your grievance was filed within the 15 day timeframe allowed by policy and the Unit Level Grievance Form verifies you received the Informal response on August 7 and Ms. Free accepted your Step Two form on August 7.

My staff contacted the medical department and they had a sick call request submitted on June 26 and a sick call request submitted on July 15. They did not have a sick call request dated on July 25 for a hernia. You were seen in sick call on July 17 for your July 15 sick call request and referred to a provider. You then saw Dr. Moore on July 23 for that request and had a follow-up with him on August 28. You did not complain of back, neck, or left lung pain during any of these encounters.

This appeal is with merit because it should not have been rejected as untimely, but the grievance itself is without merit.

Wendy Kelley                        10/21/12
Director                           Date

ARKANSAS
DEPARTMENT OF CORRECTION                                    MSF-202C

Health Service Request Form

| Name (Last, First, MI) | ADC# | Date of Birth | Barracks | Date of Request |
|---|---|---|---|---|
| O'NEAL RONALD D | 128560 | 6-26-46 | 3 | 7-25-12 |

Job Assignment
PICKET

Description of the problem  Monday, 7-23-12 I was called for DR Moore's
Login and signed in at 3:31 pm. I was not called to see
DR Medic until 9:15 PM. The 5 hours and 44 minutes I was forced
to set in the holding on a concrete bench aggravated the degenerative
arthritis in my back into a painful state, which is still hurting today.

I consent to be treated by the Health Services staff for the condition described.

PLACE THIS SLIP IN THE MEDICAL BOX OR DESIGNATED AREA AND DO NOT WRITE BELOW THIS LINE

List Protocol(s) Below                          NURSING DOCUMENTATION
1)                          2)                                  3)

Subjective Data

Objective Data   BP        P        R        T        Finger stick

Assessment

Plan by Nursing Care

Body System Code (from problem list)    Patient Education  [ ] Handout  [ ] Verbal Instruction  Topic

Refer to  [ ] Physician   [ ] Mid level   [ ] Mental Health  [ ] Dental   [ ] Other (list)

Signature                               Title        Unit    Date    Time

Name
ADC#
Date of Birth
SSN

**Exhibit # Y**
ONE Page

**ARKANSAS DEPARTMENT
OF CORRECTION**

HEALTH SERVICES
POLICY & PROCEDURE MANUAL

| NO: | 38.00 |
|---|---|
| EFFECTIVE: | JULY 1, 1997 |
| ADMIN AUTH: G WILSON, REG MGR | |
| MED AUTH: R ANDERSON, REG | |
| MEDICAL DIRECTOR | |
| REVISED: September 1, 2004 | |

| TITLE:   SICK CALL | PAGE 1 OF 4 |
|---|---|

References:    ACA 4-4346
ACA 4-ACRS-4C-01
ACA 1-HC-1A-04
NCCHC P-38, J-35

Purpose:    To provide offenders with an opportunity to have their health care requests for non-emergency illness or injury evaluated and/or treated by qualified healthcare staff within a reasonable time.

Policy:    1.  Offenders shall submit a written request for non-emergent health service(s) using a standard form.

2.  Requests for health services will be triaged daily by a qualified health professional. The triaging health professional shall assign a 'priority of need' to the request(s) which will be used to determine the proper location and time to schedule clinical services. The following 'priorities' will be used:

Priority 1 – the 'request' identifies a health problem(s) or concern which may be require immediate evaluation and/or treatment. The offender will be brought to the medical department within 24 hours of receipt of the 'request'.

Priority 2 – the 'request' identifies a health problem(s) or concern which appears to require prompt evaluation and/or treatment. The offender will be brought to the medical department within 48 hours of receipt of the 'request'.

Priority 3 – the 'request' identifies a health problem(s) or concern which can be addressed by routine evaluation and/or treatment. The offender may be brought to the medical department as schedule permits within a period of no greater than 72 hours of receipt of the 'request'.

**Exhibit # 2**
FOUR Pages

| TITLE:    SICK CALL   NO. 38.00 | PAGE 2 OF 4 |
|---|---|

Priority 4 – the 'request' identifies a health concern which can be accommodated without requiring the offender to be brought to the medical department, such as medication refill, etc.

3. Clinical services will be conducted in a clinical setting at least five days a week and will be performed by qualified health care professionals.

Procedures:

1. The Sick Call process will be scheduled a minimum of five days a week, excluding holidays. Clinical services will be scheduled depending upon priority of need. Requests determined to be of an emergent nature through triage will be seen immediately.

2. A Sick Call Log, Enclosure #1, will be generated by all Medical Departments to document the receipt of offender generated Health Services Request Forms (MSF202C), the basic nature of the 'Request', and the disposition of the 'Request' including assigned 'priority of need.

3. LPN's and RN's will use Nursing Protocols when treating offenders for healthcare complaints. Any medical complaint not covered by a Nursing Protocol will be referred to the site physician, psychiatrist, or dentist as appropriate.

4. If an offender has been seen in Sick Call twice for the same complaint, but has not yet seen a physician or mid-level provider (RNP/APN/PA), upon receipt of the third complaint for the same condition, the offender will be scheduled to see the physician or mid-level provider within five working days of the referral to the physician or mid-level provider.

5. All offender encounters will be documented using the SOAPE format and will include date, time, signature and title of healthcare provider. Vital signs will be included in the objective information. Vital signs will include current weight.

6. Daily Sick Call Logs will be maintained and monthly statistics generated for the Health Services Report.

7. No shows for sick call and other missed appointments will be reviewed as part of Quality Improvement activities. An effort should be made by clinical personnel to determine the reason for a no show

for nursing sick call and the reason will be documented in the medical
record on the nursing protocol/sick call form (MSF-202 series).

| | |
|---|---|
| TITLE:    SICK CALL   NO. 38.00 | PAGE 3 OF 4 |

8. Any no show for a physician or mid-level visit will be handled as
follows:

    a.  Medical personnel will notify the security staff to escort the
offender to the medical department.

    b.  The reason for the visit and the consequences of not completing
the visit will be explained to the offender by medical department
personnel.

    c.  If the offender continues to refuse care, the offender will be
offered the opportunity to complete a Release from Responsibility
for Medical Examination/Treatment Form (MSF-206).  When
offenders refuse to be seen by the physician/mid-level provider and
refuses to complete a Release from Responsibility for Medical
Examination / Treatment Form (MSF-206), a medical department
representative will complete the Form and have it witnessed by a
member of the medical department or security staff.  An
explanation of the consequences of the refusal of care/treatment
will be included on the form.

References:
National Commission on Correctional Health Care:  Standards for Health Services in Prisons, 1997. P-38.
American Correctional Association: Performance Based Standards for Adult Community Offenderial
Services, 4th Ed. 2000. 4-ACRS-4C-01.
American Correctional Association:  Standards for Adult Correctional Institutions, 4th Edition, 2003. 4-
4346.

TITLE:   SICK CALL   NO. 38.00                                  PAGE 4 OF 4

ENCL #1

CORRECTIONAL MEDICAL SERVICE
SICK CALL LOG

DATE_____
TYPE_____

| | NAME | ID# OR LOCATION | COMPLAINT | DISPOSITION/ PRIORITY |
|---|---|---|---|---|
| 1 | | | | |
| 2 | | | | |
| 3 | | | | |
| 4 | | | | |
| 5 | | | | |
| 6 | | | | |
| 7 | | | | |
| 8 | | | | |
| 9 | | | | |
| 10 | | | | |
| 11 | | | | |
| 12 | | | | |
| 13 | | | | |
| 14 | | | | |
| 15 | | | | |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |
| 21 | | | | |
| 22 | | | | |
| 23 | | | | |
| 24 | | | | |
| 25 | | | | |

Total Sick Call_____          Total History & Physicals_____

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center ___CUMMINS___

Name ___Ronald O'NEAL___

ADC# __128560__  Brks # __3__  Job Assignment __PICKET MAN__

FOR OFFICE USE ONLY
GRV. # __CU-11-02167__
Date Received NOV 0 2 2011
GRV. Code #__1600__
GRIEVANCE OFFICE

__10-29-11__ (Date) STEP ONE: Informal Resolution

__11-1-11__ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _10-19-11 MS ERVIN tok 4 X-rays of_
_my back. Ms ERVIN could of turned on the X-RAY viewing light thus Preventing the Pain I stress._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to
a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious
nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the
attached emergency receipt. If an Emergency, state why: _____

*Is this Grievance concerning Medical or Mental Health Services?* __YES__ *If yes, circle one* (medical) *or mental*
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel
involved and how **you** were affected. (Please Print): _10-19-11 I WAS GIVEN ACCESS TO_
_29 OF MY X-RAYS. I NEEDED TO LINE THE X-RAYS UP IN_
_CHRONOLOGICAL ORDER, THEN MEASURE THE AMOUNT OF COLLAPSE_
_OF MY LEFT LUNG IN EACH X-RAY. I ASKED MS CROMPTON AND MS J_
_KING IF I COULD USE THE X-RAY VIEWING BOXES MOUNTED ON THE_
_WALL OF THE EXAM ROOM. MS CROMPTON AND MS J KING_
_BOTH REFUSED TO LET ME USE THE X-RAY LIGHT BOXES. HAVING_
_TO USE THE CEILING LIGHT TO READ THE X-RAY DATES CAUSED_
_ME TO USE NEARLY THE WHOLE TIME PERIOD I WAS ALLOWED_
_JUST TO LINE THE X-RAYS UP IN CHRONOLOGICAL ORDER. HAVING_
_TO LOOK UP TO SEE THE X-RAYS FOR OVER AN HOUR CAUSED_
_ME A LOT OF NECK PAIN AND UNNECESSARY STRESS._

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

DEC 1 6 2011

___Ronald O'Neal___                    ___10-29-11___
Inmate Signature        HEALTH & CORRECTIONAL PROGRAMS     Date

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on __10-29-11__ (date), and determined to be **Step One** and/or an Emergency Grievance
__NO__ (Yes or No). This form was forwarded to medical or mental health? ____ (Yes or No). If yes, name
of the person in that department receiving this form: _____ Date _____

_Lindsay L. Manning_       _78244_     _C/E Lindsay M__       _10-29-11_
PRINT STAFF NAME (PROBLEM SOLVER)  ID Number  Staff Signature        Date Received

Describe action taken to resolve complaint, including **dates**: _You were allowed to view_
_xrays and reports. If you are experiencing neck pain or_
_stress, submit a sick call or request to mental health._
_Approved 10/31/11_

Staff Signature & Date Returned _T. Graphe 10/31/11_       _Ronald O'Neal_  _10-31-11_
                                                        Inmate Signature and Date Received

This form was received on __11-1-11__ (date), pursuant to **Step Two**. Is it an Emergency? __NO__ (Yes or No).
aff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _forward_ (Forwarded to Grievance Officer/Warde
If forwarded, provide name of person receiving this form: _Lisa Free_

**Exhibit #** AA
THREE Pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance (
to Inmate After Completion of Step One and Step Two

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC #: <u>128560A</u>     GRIEVANCE #: <u>CU-11-02167</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(652) You report in your complaint that because Mrs Crompton and Mrs King would not let you use the x ray viewing box you had to use the ceiling light to read the x ray dates. You report that this caused you a lot of neck pain and unnecessary stress. The x ray viewing box is not necessary to see the dates on your x ray. I find this grievance without merit.</u>

_____     _____     _____
Signature of Health Services          Title                    Date
Administrator/Mental Health
Supervisor or Designee

H.S.A     12-5-11

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

DEC 19 2011

**INMATE'S APPEAL**

.HEALTH & CORRECTIONAL PROGRAMS

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? The step One response given by Mrs J Butler was untrue because Ms ERVIN, the x ray technician was in the x ray room next door while I was trying to view my X-rays.

The response given by Mrs M Austin 12-5-11 compares with trying to close the barn door after the horse has run off. The court hearing I was trying to prepare for was held 11-16-11 and I was not able to obtain the information I needed because Ms Austin denied my request for assistance.

_____     _____     _____
Ronald D. O'Neal                128560                   12-6-11
Inmate Signature                 ADC#                      Date

I needed the light box to see the lung shapes while lining up the x rays in chronological order to determine which x-rays I would need for court exhibits.

IGTT430
3GD

<div align="right">Attachment VI</div>

INMATE NAME: <u>Oneal, Ronald D.</u>      ADC#: <u>128560</u>     GRIEVANCE#:CU-11-02167

<div align="center">CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION</div>

October 29, 2011, you grieved Ms. Crompton and Ms. J. King would not let you use the x-ray light viewing box on October 19 to review 29 of your x-rays. You claim you had to use the ceiling light to read the x-ray dates and that caused you to use almost the entire time period you were allowed to just to line them up chronologically. You report that this caused you a lot of neck pain and unnecessary stress.

The medical department responded, "The x ray viewing box is not necessary to see the dates on your x ray. I find this grievance without merit."

You disagree in your appeal stating you needed the light box to see the lung shapes while lining up the x-rays in chronological order to determine which x-rays you would need for court exhibits.

You grieved you had problems reading the dates without a viewing box and that took up almost the entire period. The patient name, x-ray date, and other identifying information (determined by the facility the x-ray is taken at) are located in a corner of the x-ray and are easily visible with the naked eye. You would not have to hold the x-ray up to a light to view the date it was taken; therefore, this would not affect your neck. Sorting 29 x-rays by date should have not taken more than a few minutes.

My staff contacted Ms. Austin concerning your appeal complaint and she stated she would approve the use of the view box if you submitted another request to review your x-rays.

There is a difference in viewing an x-ray and using breakable medical equipment in a sensitive area. X-rays can be easily viewed by holding them up to a light and commonly are. You did not request the use of a view box when you submitted your request; therefore, I find this appeal without merit.


_____          _____
            Signature                                     Date

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

CU-11-02357
FOR OFFICE USE ONLY
GRV. RECEIVED
Date Received DEC 0 7 2011
GRV. Code CUMMINS Unit
GRIEVANCE OFFICE

Unit/Center ___CUMMINS___

Name ___Ronald D. O'Neal___

ADC# __128560__   Brks # __3__   Job Assignment ___PICKET___

__12-5-11__ (Date) STEP ONE: Informal Resolution

__12-6-11__ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
If the issue was not resolved during Step One, state why: _Check the facts: The medical policy_
_was violated, then the violation was excused by Ms Kelly using the grievance process._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to
a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a
serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the
attached emergency receipt. If an Emergency, state why: _____

Is this Grievance concerning Medical or Mental Health Services? __YES__ If yes, circle one (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel
involved and how **you** were affected. (Please Print): _I received a response to grievance_
_CU-11-01831, dated 11-15-11, from Ms Wendy Kelly. I had grieved because_
_I had to wait over 60 days to review my medical jacket after making_
_the request. That long of a wait is a violation of ADC Health Services_
_Policy and Procedure Manual 59.01, 18 c and d. Ms Kelly's response_
_was: I was allowed to review my medical jacket later so the_
_issue is resolved. COMPARABLE EXAMPLE: Ms Austin is ticketed by_
_the state Police for driving 80 miles per hour (mph) in a 50 mph zone. When_
_they go to court in front of the Judge the trooper is told the ticket_
_is without merit because Ms Austin drove the rest of the trip at_
_the speed limit. A crime is not excused by later actions!_
_: CORIZON, INC and their employees_
MY GRIEVANCE IS: _Ms J Crompton and Ms M Austin are being allowed to_
_use Ms W. Kelly and the grievance process to cover up their violations of_
_ADC Policy and Procedures._

_Ronald D. O'Neal_                    JAN 19 2012          _12-5-2011_
Inmate Signature                                          Date

HEALTH & CORRECTIONAL PROGRAMS

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**

This form was received on _12/5/11_ (date), and determined to be Step One and/or an Emergency Grievance
_Yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name
of the person in that department receiving this form: _M Chu Lin_ Date _12-5-11_
_Jason Hamilton_   _50528_   _M. Chu Lin_   _12/5/11_
**PRINT STAFF NAME (PROBLEM SOLVER)**   ID Number   Staff Signature   Date Received
Describe action taken to resolve complaint, including dates: _This is not a medical_
_issue and per policy Ms Kelly's response is the end_
_of the grievance process. Audi: 12-5-11_

                                                    _Ronald O'Neal_    _12-5-2011_
Staff Signature & Date Returned _E. Crompt 12/6/11_   Inmate Signature & Date Received
This form was received on _12-6-11_ (date), pursuant to **Step Two**. Is it an Emergency? _No_ (Yes or No)
Staff Who Received Step Two Grievance: _Cpl Manning_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Warden)
If forwarded, provide name of person receiving this form: _L. Free_

**Exhibit #** BB
THREE pages

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE** – Grievance

IGTT420
3GH

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>     ADC #: <u>128560A</u>     GRIEVANCE #: <u>CU-11-02357</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(619) You reported in your complaint of 12-5-11 that you received a response to grievance CU-11-01831 from Wendy Kelley and that her response was that you were allowed to review your medical record so the issue is resolved. You report that Ms Compton and Ms Austin are being allowed to use Ms Kelley and the grievance process to cover up their violations of ADC policy and procedure. This is not a medical issue and per policy Mrs Kelleys' response is the end of the grievance process. I find this grievance without merit.</u>

_M. Austin_     _H.S.A_     _1-9-12_

Signature of Health Services
Administrator/Mental Health
Supervisor or Designee

Title

Date

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

JAN 1 9 2012

HEALTH & CORRECTIONAL PROGRAMS

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? Ms Crompton and Austin clearly violated ADC Health Services Policy and Procedure 59.01, 18 c and d when they forced me to wait longer than 30 days to review my medical jacket after the request to review was made. Responding to CU-11-01831 Ms Kelly ruled that the grievance was with out merit because I was allowed to review my jacket at a later date well past the 30 day time requirement in 59.01. This is wrong, Ms Kelly completly disregards the time line requirements in Policy 59.01. Crompton and Austin know Ms Kelly will rule this way and are using her to get out of their violations of ADC Policy 59.01, 18 c and d.

_Ronald O'Neal_     _128560_     _1-11-12_

Inmate Signature

ADC#

Date

IGTT430
3GD

<div align="right">Attachment VI</div>

INMATE NAME: <u>Oneal, Ronald D.</u>      ADC#: <u>128560</u>     GRIEVANCE#:CU-11-02357

### CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

December 6, 2011, you grieved Ms. Kelley found your appeal to grievance CU-11-01831 resolved because you reviewed your medical record. You complain you had to wait over 60 days to review your medical record and Ms. Compton and Ms. Austin are being allowed to use Ms. Kelley and the grievance process to cover up their violations of ADC policy and procedure.

The medical department responded, "This is not a medical issue and per policy Mrs Kelley's response is the end of the grievance process. I find this grievance without merit."

You complain in your appeal that Ms. Compton and Ms. Austin forced you to wait longer than 30 days to review your medical record and Ms. Kelley said the grievance was without merit because you had been allowed to review your medical record.

Although the appeal response to CU-11-01831 did not state "with merit", it was found with merit, but resolved. It was resolved because when answered, you had been allowed to review your medical record. The electronic record of CU-11-01831 reflects that appeal was "upheld". Note that a grievance that is without merit does not need to be resolved.

This appeal is without merit.


_____      _____
        Signature                        Date
                                         3/13/12

IGTT440
3GE

Attachment X

# GRIEVANCE EXTENSION

TO INMATE:  Oneal, Ronald D.
FROM:  Kelley, Wendy L
DATE: 02/06/2012

ADC#:  128560
TITLE: Grievance Officer
GRIEVANCE #:  CU-11-02167

ADDITIONAL TIME IS NECESSARY IN ORDER TO:
obtain additional medical documents.

YOU WILL RECEIVE COMMUNICATION FROM THIS OFFICE BY:  03/13/2012

This Extension is automatic unless you specifically disagree; If you agree to the extension then no action is
required on your part. If you DO NOT agree to the extension, check DISAGREE, sign your name on the
signature line, write your ADC#, and date this form, and return the orginal to this office. If you do not agree,
you understand that, with your decision, NO FURTHER ACTION will be taken on this issue, you WILL NOT
have exhausted your administrative remedies, and your grievance will be returned to you without a decision
regarding its merit.

☐DISAGREE   By disagreeing with this extension, I waive my right to have this grievance issue considered,
and acknowledge I have not exhausted the grievance process as necessary to pursue a
complaint.

_____   ADC#: 128560   Date: _____
Inmate Signature

_____   _____
Warden/Center Supervisor Signature   Date

_____   _____
Chief Deputy/Deputy/Assistant Director/Director Signature   Date
2-6-12

**Exhibit #** CC
FOUR Pages

IGTT440
3GE

Attachment X

# GRIEVANCE EXTENSION

TO INMATE:  Oneal, Ronald D.  
FROM:  Kelley, Wendy L  
DATE: 02/06/2012

ADC#: 128560  
TITLE: Grievance Officer  
GRIEVANCE #:  CU-11-02168

ADDITIONAL TIME IS NECESSARY IN ORDER TO:  
obtain additional medical documents.

YOU WILL RECEIVE COMMUNICATION FROM THIS OFFICE BY:  03/13/2012

This Extension is automatic unless you specifically disagree; If you agree to the extension then no action is required on your part. If you DO NOT agree to the extension, check DISAGREE, sign your name on the signature line, write your ADC#, and date this form, and return the orginal to this office. If you do not agree, you understand that, with your decision, NO FURTHER ACTION will be taken on this issue, you WILL NOT have exhausted your administrative remedies, and your grievance will be returned to you without a decision regarding its merit.

☐ DISAGREE   By disagreeing with this extension, I waive my right to have this grievance issue considered, and acknowledge I have not exhausted the grievance process as necessary to pursue a complaint.

_____     ADC#: 128560     Date: _____  
            Inmate Signature


_____                       _____  
    Warden/Center Supervisor Signature                                Date


_____                       _____  
Chief Deputy/Deputy/Assistant Director/Director Signature                    Date

IGTT440
3GE

Attachment X

# GRIEVANCE EXTENSION

TO INMATE: Oneal, Ronald D.          ADC#: 128560
FROM: Kelley, Wendy L                TITLE: Grievance Officer
DATE: 05/09/2012                     GRIEVANCE #: CU-12-00395

ADDITIONAL TIME IS NECESSARY IN ORDER TO:
investigate your appeal.

YOU WILL RECEIVE COMMUNICATION FROM THIS OFFICE BY: 05/18/2012

This Extension is automatic unless you specifically disagree; If you agree to the extension then no action is
required on your part. If you DO NOT agree to the extension, check DISAGREE, sign your name on the
signature line, write your ADC#, and date this form, and return the orginal to this office. If you do not agree,
you understand that, with your decision, NO FURTHER ACTION will be taken on this issue, you WILL NOT
have exhausted your administrative remedies, and your grievance will be returned to you without a decision
regarding its merit.

☐ DISAGREE   By disagreeing with this extension, I waive my right to have this grievance issue considered,
             and acknowledge I have not exhausted the grievance process as necessary to pursue a
             complaint.

_____          ADC#: 128560     Date: _____
       Inmate Signature

_____                           _____
   Warden/Center Supervisor Signature                              Date

_____                           _____
Chief Deputy/Deputy/Assistant Director/Director Signature          Date

IGTT440
3GE

Attachment X

# GRIEVANCE EXTENSION

TO INMATE:  Oneal, Ronald D.                    ADC#:  128560
FROM:  Kelley, Wendy L                          TITLE: Grievance Officer
DATE:  09/28/2012                               GRIEVANCE #:  CU-12-01889

ADDITIONAL TIME IS NECESSARY IN ORDER TO:
investigate your appeal.

YOU WILL RECEIVE COMMUNICATION FROM THIS OFFICE BY:   10/24/2012

This Extension is automatic unless you specifically disagree; If you agree to the extension then no action is
required on your part. If you DO NOT agree to the extension, check DISAGREE, sign your name on the
signature line, write your ADC#, and date this form, and return the orginal to this office. If you do not agree,
you understand that, with your decision, NO FURTHER ACTION will be taken on this issue, you WILL NOT
have exhausted your administrative remedies, and your grievance will be returned to you without a decision
regarding its merit.

☐DISAGREE   By disagreeing with this extension, I waive my right to have this grievance issue considered,
             and acknowledge I have not exhausted the grievance process as necessary to pursue a
             complaint.


_____   ADC#: 128560    Date: _____
        Inmate Signature


_____                   _____
   Warden/Center Supervisor Signature                          Date


_____                   _____
  Chief Deputy/Deputy/Assistant Director/Director Signature     Date

*Untimely Manner*

# UNIT LEVEL GRIEVANCE FORM (Attachment I)

Unit/Center: *Cummins*     Not an emergency

**Name** *Ronald D. O'NEAL*

RECEIVED
FOR OFFICE USE ONLY
AUG 1 0 2012
CU-12-01888
Date Received:
GRV. CODE
CUMMINS UNIT
GRIEVANCE OFFICE

**ADC#** *128560*  **Brks #** *3*  **Job Assignment** *PICKET*

*8-5-12* (Date) STEP ONE: Informal Resolution

*8-8-12* (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.) If the issue was not resolved during Step One, state why: *The provider is not the problem, the problem is the Corizon medical staff is not completely controlling the layins.*

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

Is this Grievance concerning Medical or Mental Health Services? *YES* If yes, circle one: (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and how **you** were affected. (Please Print): *7-23-12 when I arrived at the Infirmary for my layin to see Dr. Moore I was logged in by Arkansas Department of Corrections Security Officers (ADCSO). The 5 hours and 44 minutes I had to wait to see the doctor was controlled by these ADCSO. ADCSO do a great job maintaining the count and providing a safe work place for Infirmary staff. However, ADCSO are not allowed to see inmate medical files and should not make medical decisions for or about inmates. When calling sick or injured inmates for layins their medical conditions should be considered to insure minimal waiting time in the holding cell when the Inmates condition warrants special consideration. The extended waiting time I had to endure has caused me a lot of pain and suffering.*
*My grievance is Corizon Health Inc employees are putting inmates health and well being at risk by allowing ADCSO to have anything to do with the calling out or rotation of medical layins.*

RECEIVED DEP DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

*Ronald D. O'Neal*     *8-5-12*
Inmate Signature                          Date

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

CORRECTIONAL PROGRAM

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on *8-5-12* (date), and determined to be Step One and/or an Emergency Grievance *YES* (Yes or No). This form was forwarded to (medical) or mental health? *YES* (Yes or No). If yes, name of the person in that department receiving this form: *J. Williams*   Date *8/5/12*

*Sgt. J. Haynes*       *5418*       _____       *8-5-12*
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: *We have no control how long it takes the providers to see each patient. We try to give the very best of care to everyone. We are not security, only taked care of medical. Chartros 9 8/10/12*

*8-7-12*     *Ronald D. O'Neal* *8-7-12*
Staff Signature & Date Returned          Inmate Signature and Date Received

This form was received on *8-8-12* (date), pursuant to Step Two. Is it an Emergency? *NO* (Yes or No).
Staff Who Received Step Two Grievance: *Cpl. L. Manning*
Action Taken: *Forwarded to Grievance office* (Forwarded to Grievance Officer/Warden
If forwarded, provide name of person receiving this form: *Mrs. Free*

**Exhibit #** *DD*
*FOUR Pages*

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance O
to Inmate After Completion of Step One and Step Two

IGTT400

3GR

Attachment II

## ACKNOWLEDGMENT OR REJECTION OF UNIT LEVEL GRIEVANCE

TO: Inmate  Oneal, Ronald D.          ADC #:  128560A

FROM: Moncrief, Treill R          TITLE:  ADC Inmate Grievance Coord

DATE:  08/10/2012          GRIEVANCE #:  CU-12-01888

Please be advised, I have received your Grievance dated  08/05/2012 on  08/10/2012 .

Your grievance was rejected as either non-grievable, untimely, duplicative, frivolous, or vexatious.

Signature of ADC Inmate Grievance Coord

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

AUG 15 2012

HEALTH & CORRECTIONAL PROGRAMS

### CHECK ONE OF THE FOLLOWING

○  This Grievance will be adressed by the Warden/Center Supervisor or designee.

◉  This Grievance is of a medical nature and has been forwarded to the Health Services Administrator who will respond.

○  This Grievance involves a mental health issue and has been forwarded to the Mental Health Supervisor who will respond.

☐  This Grievance has been determined to be an emergency situation, as you so indicated.

○  This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.

☑  This Grievance was REJECTED because it was either non-grievable ( • ), untimely, was a duplicate of , or was frivolous or vexatious.

### INMATE'S APPEAL

If you disagree with a rejection, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director. Keep in mind that you are appealing the decision to reject the original complaint. Address only the rejection; do not list additional issues, which were not a part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below. *The Violations against my health occurred 7-23-12. I filed step one concerning these violations in grievance CU-12-01888 on 8-5-12. I received the response to step one 8-7-12. I responded with step two the next day and had the unit officer sign off on my response that day, 8-8-12. The grievance was then placed in the grievance box. Step one was filed within the 15 day time limit*

| *Ronald D. O'Neal* | *128560* | *8-11-12* |
|---|---|---|
| Inmate Signature | ADC # | Date |

*and step two was filed within the three day time limit. All steps of this grievance were filed in a timely manner and the contents of the grievance should be found with merit.*

*Note: July 28, July 29, Aug 4 and Aug 5 are weekend so working days.*

9-14-12

Ronald D. O'Neal  #128560
PO Box 500
Grady, AR  71644-0500

Ms Wendy Kelley
Deputy Director for Health & Corrections Programs
PO Box 8707
Pine Bluff, ARKANSAS  71611

Dear Ms Kelley:

MR J. Mitzell, Cummins grievance officer
suggested I write you this letter.

I filed Step 1 of grievance CU-12-01888 on 8-5-12.
I received a response from Ms King     on 8-7-12.
I filed Step 2                          on 8-8-12.
I received notice from Ms T Moncrief that the
grievance was filed in an untimely manner on 8-10-12
July 23rd to Aug 5th is only 14 days if
you count the 23rd.
I filed on appeal to you, Ms Kelley on    8-11-12
Your office stamped my appeal received on    8-15-12

The next week I showed the grievance untimely

pg. 1 of 2

manner notice and the mistake in the day count made by Ms Moncrief to my problem solver CO2 L. Bailey. Ms Bailey contacted grievance officer Ms Gibson and alerted her to the mistake. Ms Gibson contacted Ms Williams in Pine Bluff about the problem. A few days later Ms Gibson came to my work place and informed me they found a glich in their computer system and the problem was being fixed. And that my grievance CU-12-01888 was not filed in a untimely manner.

Meanwhile, I was waiting on you, Ms Kelley to address the subject matter in Step 1 and 2 of grievance CU-12-01888. Instead of answering the contents of the grievance I received a notice 9-11-12 that you received my appeal 8-29-12 and the time allowed had expired.
for my appeal

Here's the problem: Your office stamped my appeal received 8-15-12 not 8-29-12. This proves every date requirment in this process has been met by me. The mistakes have been made 1st by the computer date counter and 2nd by your office for holding my appeal 2 weeks before it was ~~forwarded~~ to you.

Please verify ~~these~~ mistakes then answer my grievance.

Respectfully. Ronald O'Neal                    pg 2 of 2

## UNIT LEVEL GRIEVANCE FORM (Attachment I)

Unit/Center _Cummins_

Name _Ronald D. O'NEAL_

JC# _128560_   Brks # _3_   Job Assignment _PICKET_

FOR OFFICE USE ONLY
GR# _Cu-12-01917_
Date Received: AUG 3 2012
GRV. Code #: _6_

_8-8-12_ (Date) STEP ONE: Informal Resolution

_8-9-12_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
_____ If the issue was not resolved during Step One, state why: _Stopping Corizon Health Inc Staff from conveniently allowing inmate sick call request to go missing is the while point of this grievance._

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

_Is this Grievance concerning Medical or Mental Health Services?_ _YES_ _If yes, circle one:_ (medical) or mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, date, place, name of personnel involved and **how you** were affected. (Please Print): _7-25-12 I put in a sick call request in the sick call box requesting help for pain in my back. IF I hadn't made copies of this request before I turned it in I could not prove the 7-25-12 sick call request exist._

_My grievance is: The sick call request forms we now have to use does not have a 2nd page that produces a copy of the 1st page to prove what the contents of the sick call request was. And these two page type of sick call request are not being submitted to a nurse at the pill window, where the nurse signs, dates and then returns the 2nd page to the inmate for his records, so that inmate can prove his sick call request was received by medical staff._

_____

_____

_____

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION
SEP 17 2012
CORRECTIONAL PROGRAMS

_Ronald D. O'Neal_                              _8-8-12_
Inmate Signature                                Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

### THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on _8-5-12_ (date), and determined to be **Step One** and/or an Emergency Grievance _NO_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _A. Hunter_   Date _8/8/12_

_Cpl. L. Manning_          _78244_          _Cpl. L Man_          _8-8-12_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: _We Have Not Recieved A Sick Call Request from you Dated 7/25/12. You were Last Seen 7/23/12, With Porter. (Strattera) On 8/9/10_

_King 8-9-12_          X _Ronald O'Neal 128560_
Staff Signature & Date Returned        Inmate Signature & Date Received

This form was received on _8-9-12_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Cpl. C. Marlow_
Action Taken: _Forwarded to Grievance_ (Forwarded to Grievance Officer/Ward
If forwarded, provide name of person receiving this form: _Mrs. Free_

**Exhibit # EE**
_FOUR Pages_

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance
to Inmate After Completion of Step One and Step Two.

IGTT420
3GH

*BX3/d*

Attachment IV

INMATE NAME: <u>Oneal, Ronald D.</u>   ADC #: <u>128560A</u>   GRIEVANCE #: <u>CU-12-01917</u>

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

<u>(603) Your 8-9-12 grievance has been received and reviewed as well as your medical record to determine if</u>
<u>medically necessary healthcare, as determined by your healthcare provider, has been provided to you.</u>
<u>You state your grievance is: The sick call request forms you now have to use does not have a 2nd page that</u>
<u>produces a copy of the 1st pate to prove what the contents of the sick call request was. You state the sick call</u>
<u>you submitted on 7-25-12, for back pain, has not been responded to.</u>
<u>We have not received a sick call from you dated 7-25-12. You were seen by the provider on 7-23-12 and again</u>
<u>on 8-28-12 and made no complaint of back pain. Your grievance is without merit.</u>
<u>If your medical condition changes please address any concerns through the sick call process.</u>

_____          _____          _____
Signature of Health Services                    Title                              Date
Administrator/Mental Health
Supervisor or Designee

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 1 7 2012

HEALTH & CORRECTIONAL PROGRAMS

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in
the information requested below and mailing it to the Deputy Director for Health & Correctional Programs
along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original
grievance. Do not list additional issues which were not part of your original grievance as they will not be
addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? *Inmate sick call*
*request that are placed in the sick call box, at times, go missing.*
*when the missing sick call request are complained about*
*with a grievance or request for interview the Infirmary's*
*standard answer is: we did not receive a sick call*
*request from you, as is the case with the 7-25-12*
*sick call request I had a staff member place in the*

_Ronald D. O'Neal_          _128560_          _9-12-12_
Inmate Signature              ADC#                Date

*(see pg 2)*

Name O'NEAL, Ronald D        ADC# 128560A        Grievance # CU-12-01917

sick call box after I had copies of the request made.

This abuse will not stop until the current sick call request forms are replaced with a two page sick call form that produces a 2nd page carbon copy for the inmate to keep for his/her records. And also require the sick call form to be submitted at the sick call window to be date stamped before the two pages are seperated. Only after the sick call request form is date stamped will the 2nd page be handed back to the inmate for his/her records.

These changes are necessary to ensure the sick call needs of the inmates are protected and to stop the deliberate indifference of Corizon Health Inc employees who loose or cause inmates sick call request to go missing.

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

SEP 1 7 2012

HEALTH & CORRECTIONAL PROGRAMS

3GD

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.        ADC #: 128560        GRIEVANCE#:CU-12-01917

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

August 8, 2012, you grieved you submitted a sick call request on July 25 requesting help for pain in your back.
You state if you had not made a copy of that request before you turned it in you could not prove the July 25 sick
call request existed. You state your grievance is that you want a form similar to the grievance form that would
require a nurse to sign for your sick call request and return a copy of the form with their signature to you so you
would have proof it was submitted.

The medical department responded, "We have not received a sick call from you dated 7-25-12. You were seen by
the provider on 7-23-12 and again on 8-28-12 and made no complaint of back pain. Your grievance is without
merit. If your medical condition changes please address any concerns through the sick call process."

You claim in your appeal that inmate sick call requests that are placed in the sick call box go missing at times. You
complain if you place a request for interview or file a grievance the Infirmary's standard answer is they did not
receive it as in the case with your July 25 sick call request you had a staff member place in the sick call box after
you had copies of the request made. The remainder of your complaint is below the signature line and not part of
the appeal process by policy.

Your complaint concerning the July 25 sick call request was addressed in CU-12-01889 and found without merit. If
copies of your July 25 sick call request were made the staff member, or inmate making the copies were violating
policy. You did not include the name of the staff member you claim you had place the sick call request in the sick
call box. This prevents me from obtaining a statement from them to either support or refute your claim.

Issuing a signed and date stamped receipt for sick call requests is not feasible and not required by policy at this
time. Your appeal is without merit.

_Wendy Kelley_

Director

Date _10/31/12_

Exhibit #  FF
17 PAGES

# Prison Legal News

VOL. 25  No. 3
ISSN 1075-7678

*Dedicated to Protecting Human Rights*

March 2014

# Corizon Needs a Checkup: Problems with Privatized Correctional Healthcare

### by Greg Dober

CORIZON, THE NATION'S LARGEST FOR-profit medical services provider for prisons, jails and other detention facilities, was formed in June 2011 through the merger of Prison Health Services (PHS) and Correctional Medical Services (CMS).

In April 2013, the debt-rating agency Moody's downgraded Corizon's nearly $360 million worth of debt to a rating of B2 – an indication the company's debt is highly speculative and a high credit risk. According to Moody's, the rating downgrade was due to an "expectation of earnings volatility following recent contract losses, margin declines from competitive pricing pressure on new and renewed contracts, and Moody's belief that Valitás [Corizon's

## INSIDE

| | |
|---|---|
| From the Editor | 18 |
| Private Prison Racial Disparities | 20 |
| When Victims Speak for Criminals | 24 |
| Texas Criminal Court Fees | 28 |
| CA Female Prisoners Sterilized | 32 |
| Michigan Parole Scrutinized | 42 |
| Introduction to the FTCA | 44 |
| Execution Drugs Hard to Find | 46 |
| A Look Inside Maine's Supermax | 48 |
| Video Visitation in Jails | 50 |
| UNICOR Faces Criticism | 52 |
| Oregon Jail Death Lawsuits | 54 |
| News in Brief | 56 |

parent corporation] will be unable to restore metrics to levels commensurate with the prior B1 rating over the near to intermediate term."

Valitás Health Services is majority owned by Beecken Petty O'Keefe & Company, a Chicago-based private equity management firm. Beecken's other holdings are primarily in the healthcare industry.

On September 23, 2013, Moody's again downgraded Corizon's debt rating and changed the company's rating outlook from "stable" to "negative." The following month Corizon announced that it had replaced CEO Rich Hallworth with Woodrow A. Myers, Jr., the former chief medical officer at WellPoint Health. Hallworth, who had been appointed Corizon's CEO in 2011, previously served as the president and CEO of PHS. At the same time that Hallworth was replaced, Corizon president Stuart Campbell also stepped down.

## Prison Medical Care for Profit

ACCORDING TO CORIZON'S WEBSITE, the company provides healthcare services at over 530 correctional facilities serving approximately 378,000 prisoners in 28 states. In addition, Corizon employs around 14,000 staff members and contractors. The company's corporate headquarters is located in Brentwood, Tennessee and its operational headquarters is in St. Louis, Missouri.

The 2011 merger that created Corizon involved Valitás Health Services, the parent company of CMS, and America Service Group, the parent company of PHS. The *Nashville Business Journal* reported the deal was valued at $250 million.

"Corizon's vision is firmly centered around service – to our clients, our patients

and our employees," Campbell said at the time. "To that we add the insight of unparalleled experience assisting our client partners, and caring professionals serving the unique healthcare needs of [incarcerated] patients."

Corizon has around $1.5 billion in annual revenue and contracts to provide medical services for the prison systems in 13 states. The company also contracts with numerous cities and counties to provide healthcare to prisoners held in local jails; some of Corizon's larger municipal clients include Atlanta, Philadelphia and New York City (including the Rikers Island jail). Additionally, the company has its own in-house pharmacy division, PharmaCorr, Inc.

The prison healthcare market has flourished as state Departments of Corrections and local governments seek ways to save money and reduce exposure to litigation. [See: *PLN*, May 2012, p.22]. Only a few major companies dominate the industry. Corizon's competitors include Wexford Health Sources, Armor Correctional Health Services, NaphCare, Correct Care Solutions and Centurion Managed Care – the latter being a joint venture of MHM Services and Centene Corporation. Around 20 states outsource all or some of the medical services in their prison systems.

As Corizon is privately held, there is little transparency with respect to its internal operations and financial information, including costs of litigation when prisoners (or their surviving family members) sue the company, often alleging inadequate medical care.

For example, when Corizon was questioned by the news media in Florida during

Exhibit # FF
SEVENTEEN Pages

# ⫶⫶ Prison Legal News

*a publication of the*
*Human Rights Defense Center*
www.humanrightsdefensecenter.org

**EDITOR**
Paul Wright

**MANAGING EDITOR**
Alex Friedmann

**COLUMNISTS**
Michael Cohen, Kent Russell,
Mumia Abu Jamal

**CONTRIBUTING WRITERS**
Matthew Clarke, John Dannenberg,
Derek Gilna, Gary Hunter,
David Reutter, Mark Wilson,
Joe Watson, Christopher Zoukis

**RESEARCH ASSOCIATE**
Mari Garcia

**ADVERTISING DIRECTOR**
Susan Schwartzkopf

**LAYOUT**
Lansing Scott

**HRDC LITIGATION PROJECT**
Lance Weber—General Counsel
Robert Jack—Staff Attorney

*PLN* is a monthly publication.

A one year subscription is $30 for prisoners, $35 for individuals, and $90 for lawyers and institutions. Prisoner donations of less than $30 will be pro-rated at $3.00/issue. Do not send less than $18.00 at a time. All foreign subscriptions are $100 sent via airmail. PLN accepts Visa and Mastercard orders by phone. New subscribers please allow four to six weeks for the delivery of your first issue. Confirmation of receipt of donations cannot be made without an SASE. PLN is a section 501 (c)(3) non-profit organization. Donations are tax deductible. Send contributions to:

**Prison Legal News**
**PO Box 1151**
**Lake Worth, FL 33460**
**561-360-2523**
**info@prisonlegalnews.org**
**www.prisonlegalnews.org**

*PLN* reports on legal cases and news stories related to prisoner rights and prison conditions of confinement. *PLN* welcomes all news clippings, legal summaries and leads on people to contact related to those issues.

Article submissions should be sent to - The Editor - at the above address. We cannot return submissions without an SASE. Check our website or send an SASE for writer guidelines.

Advertising offers are void where prohibited by law and constitutional detention facility rules.

*PLN* is indexed by the *Alternative Press Index, Criminal Justice Periodicals Index* and the *Department of Justice Index.*

## Privatized Healthcare Problems (cont.)

a contract renewal, the company initially tried to prevent the release of its litigation history, claiming it was a "trade secret."

In 2012, Corizon agreed to settle a lawsuit filed against PHS – one of its predecessor companies – by *Prison Legal News,* seeking records related to the resolution of legal claims against the firm in Vermont. Based on the records produced pursuant to that settlement, PHS paid out almost $1.8 million in just six cases involving Vermont prisoners from 2007 to 2011. [See: *PLN,* Dec. 2012, p.16].

Companies like Corizon provide healthcare in prisons and jails under the HMO model, with an emphasis on cutting costs – except that prisoners have no other options to obtain medical treatment except through the contractor.

## Arizona DOC

A former Corizon nurse had her license suspended and is currently under investigation by the Arizona State Board of Nursing for incompetence. In January 2014, nurse Patricia Talboy was accused of contaminating vials of insulin at three units at the ASPC-Lewis prison, potentially exposing two dozen prisoners to HIV or hepatitis.

Talboy reportedly used a needle to stick prisoners' fingers to check their blood sugar levels. She then used the same needle to draw insulin from vials of the medication utilized for multiple prisoners, possibly contaminating the insulin in the vials. After placing the vials back into inventory, other staff members may have unknowingly used them to dispense insulin.

"Every indication is that the incident is the result of the failure by one individual nurse to follow specific, standard and well-established nursing protocols when dispensing injected insulin to 24 inmates," Arizona Department of Corrections (ADC) director Charles L. Ryan said in a January 9, 2014 statement.

Talboy's failure to follow procedures was discovered after a prisoner told a different nurse about the issue. Corizon reportedly delayed three days before publicly reporting the incident; in a press release, the company admitted that one of its nurses had been involved in "improper procedures for injections." Talboy received her nursing

license in August 2012 and became an RN in June 2013; as a rookie nurse, Corizon likely paid her less than more experienced nurses.

Following the insulin-related incident, the company was ordered to develop a comprehensive plan that includes "supplemental training and competency testing procedures for blood glucose testing and administration of insulin," as well as "nurse-peer reporting education to ensure professional accountability" and "patient awareness education on injection protocols."

Granted, Corizon isn't alone with respect to such incidents. In August 2012, a nurse employed by the ADC's previous medical services contractor, Wexford Health Sources, contaminated the insulin supply at ASPC-Lewis through improper injection protocols, potentially exposing 112 prisoners to hepatitis C. [See: *PLN,* July 2013, p.1].

Corizon has a three-year, approximately $370 million contract to provide medical care in Arizona state prisons, which began in March 2013. The contract award generated controversy because former ADC director Terry Stewart was hired by Corizon as a consultant; current director Charles Ryan had previously worked under Stewart, raising a potential conflict of interest. Ryan denied any improprieties.

According to a report by the American Friends Service Committee released in October 2013, titled "Death Yards: Continuing Problems with Arizona's Correctional Health Care," medical services in Arizona prisons did not improve after Corizon replaced Wexford as the ADC's healthcare contractor. "Correspondence from prisoners; analysis of medical records, autopsy reports, and investigations; and interviews with anonymous prison staff and outside experts indicate that, if anything, things have gotten worse," the report stated.

## Florida DOC

In 2013, the Florida Department of Corrections (FDOC) awarded Corizon a five-year, $1.2 billion contract to provide medical services to state prisoners in north and central Florida. Wexford Health Sources was contracted to provide similar services in the southern region of the state for $240 million. [See: *PLN,* June 2013, p.24]. The wholesale privatization of healthcare in Florida's prison system followed a 2011 legislative decision to disband the state's

### Privatized Healthcare Problems (cont.)

Correctional Medical Authority, which had oversight over prison medical care. [See: *PLN*, May 2012, p.30].

The contracts were part of the Republican administration's initiative to expand privatization of government services, including prison management and healthcare, in spite of previous setbacks. In 2006, PHS withdrew two months into an almost $800 million contract to provide medical care to Florida prisoners; at that time, the company said the contract was not cost-effective and claimed it would lose money.

The 2013 contract awards to Corizon and Wexford followed a two-year legal fight. In 2011, AFSCME Florida and the Federation of Physicians and Dentists/Alliance of Healthcare and Professional Employees filed suit challenging the prison healthcare contracts, in an effort to protect the jobs of nearly 2,600 state workers.

On June 21, 2013 the First District Court of Appeals approved the privatization of medical care in FDOC facilities,

overturning a ruling by the Leon County Circuit Court. The appellate court noted in its decision that "The LBC [Legislative Budget Committee] simply moved funds from different line items within the Department's Health Services' program, providing additional funds for contracts that the Department otherwise had the authority to enter." See: *Crews v. Florida Public Employers Council 79*, 113 So.3d 1063 (Fla. Dist. Ct. App. 1st Dist. 2013).

Under the terms of the FDOC's contract with Corizon, the company must provide medical care to Florida state prisoners for 7% less than it cost the FDOC in 2010. When entering into the contract, state officials apparently had few concerns about the numerous lawsuits previously filed against Corizon, and no hard feelings toward the company's predecessor, PHS, when it terminated its 2006 contract to provide medical services to Florida prisoners because it wasn't profitable.

"Most people feel, as long as they achieve their 7 percent savings who cares how they treat inmates?" noted Michael Hallett, a professor of criminology at the University of North Florida.

### Florida Counties

IN A SEPTEMBER 6, 2012 UNPUBLISHED ruling, the Eleventh Circuit Court of Appeals affirmed a $1.2 million Florida jury verdict that found Corizon – when it was operating as PHS – had a policy or custom of refusing to send prisoners to hospitals. The Court of Appeals held it was reasonable for jurors to conclude that PHS had delayed medical treatment in order to save money. See: *Fields v. Corizon Health*, 490 Fed.Appx. 174 (11th Cir. 2012).

The jury verdict resulted from a suit filed against Corizon by former prisoner Brett A. Fields, Jr. In July 2007, Fields was being held in the Lee County, Florida jail on two misdemeanor convictions. After notifying PHS staff for several weeks that an infection was not improving, even with antibiotics that had been prescribed, Fields was diagnosed with MRSA. PHS did not send him to a hospital despite escalating symptoms, including uncontrolled twitching, partial paralysis and his intestines protruding from his rectum. A subsequent MRI scan revealed that Fields had a severe spinal compression; he was left partly para-


Ads omitted.

lyzed due to inadequate medical care.

The Eleventh Circuit wrote that PHS "enforced its restrictive policy against sending prisoners to the hospital," and noted that a PHS nurse who treated Fields at the jail "testified that, at monthly nurses' meetings, medical supervisors 'yelled a lot about nurses sending inmates to hospitals.'" Further, PHS "instructed nurses to be sure that the inmate had an emergency because it cost money to send inmates to the hospital."

At trial, the jury found that PHS had a custom or policy of deliberate indifference that violated Fields' constitutional right to be free from cruel and unusual punishment. The jurors concluded that Fields had a serious medical need, PHS was deliberately indifferent to that serious medical need, and the company's actions proximately caused Fields' injuries. The jury awarded him $700,000 in compensatory damages and $500,000 in punitive damages. [See: *PLN*, March 2013, p.54; Aug. 2011, p.24].

More recently, the estate of a 21-year-old prisoner who died at a jail in Manatee County, Florida filed a lawsuit in October 2013 against the Manatee County Sheriff's Office and Corizon, the jail's healthcare provider. The complaint accuses the defendants of deliberate indifference to the serious medical needs of Jovon Frazier and violating his rights under the Eighth Amendment.

In February 2009, Frazier was incarcerated at the Manatee County Jail; at the time of his medical intake screening, staff employed by Corizon, then operating as PHS, noted that his health was unremarkable. Frazier submitted a medical request form in July 2009, complaining of severe pain in his left shoulder and arm, and a PHS nurse gave him Tylenol.

Throughout August and September 2009, Frazier submitted five more medical requests seeking treatment for his arm and shoulder. "It really hurts! HELP!" he wrote in one of the requests. PHS employees saw him and recorded his vital signs. Despite the repeated complaints, Frazier was never referred to a doctor or physician assistant; on September 9, 2009 his treatment was documented as routine but he was placed on the "MD's list."

An X-ray was taken on September 17, 2009 to rule out a shoulder fracture.

The X-ray was negative for a fracture, and Frazier was not referred to a doctor. He submitted two more medical requests that month and five requests in October 2009 seeking treatment for his increasingly painful condition. The complaint alleges that in total, Frazier submitted 13 medical request forms related to pain over a period of three months; he was seen by a nurse each time but not examined by a physician.

On October 29, 2009, Frazier received an X-ray to determine if he had a tendon injury. An MRI was recommended and he was transported to a hospital where an MRI scan revealed a large soft tissue mass on his shoulder. A doctor at the hospital, concerned that the mass was cancerous, recommended additional tests.

After being diagnosed with osteosarcoma, a form of bone cancer, Frazier was returned to the jail and subsequently treated at the Moffitt Cancer Center, where he received chemotherapy, medication and surgery. Despite this aggressive treatment the cancer progressed and Frazier's left arm was amputated. The cancer continued to spread, however, and he was diagnosed with lung cancer in June 2011. He died



William L Schmidt
ATTORNEY at LAW, P.C.

911CIVILRIGHTS@GMAIL.COM
559.261.2222

**OCTOBER 2013, CALIFORNIA:**
- **$90,000 settlement with CDCR and LA Sheriff**
- **Confidential settlement with CDCR**
- **$600,000 injury recovery**
- **$150,000 bad faith settlement**
- **Federal action dismissed without penalty by agency**
- **Parole dates granted by BPH**

CIVIL RIGHTS-SECTION 1983-FEDERAL AND STATE
APPEALS AND WRITS- ONLY COMPLEX AND UNIQUE CASES
PRISON-TRANSFER-DISCIPLINE-VISITING-CLASSIFICATION-HOUSING
PROP. 36 RE-SENTENCING-3 STRIKES-MEDICAL-PAROLE HEARINGS
----------------OUR CLIENTS GO HOME, HOW ABOUT YOU? ----------------
*Please submit a single page summary of your case. Due to the volume, we cannot return documents or respond to all inquires. We are not a low cost or pro bono law firm, but if you want results, contact us.*

**PO Box 25001
Fresno, CA
93729**

## Privatized Healthcare Problems (cont.)

within three months of that diagnosis, on September 18, 2011.

In a letter to the attorney representing Frazier's estate, Florida oncologist Howard R. Abel wrote that the lack of treatment provided by Corizon at the Manatee County Jail constituted "gross negligence and a reckless disregard to Mr. Frazier's right to timely and professionally appropriate medical care."

The lawsuit filed by Frazier's estate claims that Corizon was aware of his serious medical condition but failed to provide adequate treatment. In addition, the complaint contends the company has a widespread custom, policy and practice of discouraging medical staff from referring prisoners to outside medical practitioners and from providing expensive medical tests and procedures. Finally, the lawsuit states that "Corizon implemented these widespread customs, policies and practices for financial reasons and in deliberate indifference to [the] serious medical needs of Frazier and other inmates incarcerated at Manatee County Jail."

On January 10, 2014, U.S. District Court Judge James Moody denied Corizon's motion to dismiss the case. The company had argued that the allegations in the lawsuit failed to assert sufficient facts to establish deliberate indifference, amounted only to medical negligence and were insufficient to establish gross negligence, and

failed "to adequately allege a policy or custom that violated Frazier's rights." Judge Moody disagreed, finding the claims set forth in the complaint were "sufficient to establish a constitutional violation."

The Manatee County Sheriff's Office had better luck with its motion to dismiss. The Sheriff argued the complaint did not establish facts indicating that the jail had a similar practice – like Corizon – of providing deliberately indifferent medical care to prisoners. The court agreed and dismissed the claims against the Sheriff's Office; the claims against Corizon remain pending. See: *Jenkins v. Manatee County Sheriff*, U.S.D.C. (M.D. Fla.), Case No. 8:13-cv-02796-JSM-TGW.

### Idaho DOC

IN FEBRUARY 2013, THE IDAHO DEPARTment of Corrections (IDOC) announced it had reached a one-year extended agreement with Corizon to provide medical care in the state's prison system. However, the *Idaho Business Review* reported that the extension also resulted in a rate increase. Then-Corizon president Stuart Campbell informed the IDOC Board of Correction that the company wouldn't sign an extension for less money, stating the current contract had become too costly. During the preceding three years of the contract the IDOC had incurred approximately 20% in cumulative rate increases.

Both sides agreed that the contract would run through December 2013 and the IDOC would pay an additional $250,000.

It seems odd that Idaho was willing to continue contracting with the company, though, as the relationship between the IDOC and Corizon has been a rocky one.

The quality of medical care at the Idaho State Correctional Institution (ISCI) in Boise has been an ongoing issue for nearly three decades. The prison was the focus of a class-action lawsuit filed on behalf of prisoners alleging a variety of problems, including inadequate healthcare. The lawsuit was known as the *Balla* litigation after plaintiff Walter Balla.

In July 2011, after new complaints were filed regarding medical care at ISCI, U.S District Court Judge B. Lynn Winmill appointed a special master, Dr. Marc F. Stern, to assess the situation at the facility. The court wanted Stern to confirm whether ISCI was in compliance with the temporary agreements established in the *Balla* case, and to investigate and report on "the constitutionality of healthcare" at the facility.

Dr. Stern, a former health services director for the Washington Department of Corrections who also had previously worked for CMS, one of Corizon's predecessor companies, issued a scathing report in February 2012. With the aid of psychiatrist Dr. Amanda Ruiz, Stern and his team reviewed ISCI over a six-day period and met with dozens of prisoners, administrators and Corizon employees.

Stern stated in the report's executive summary: "I found serious problems with the delivery of medical and mental health care. Many of these problems have either



**FreedomLine**
Serving You with Excellence Since 2009!
**We make it simple.**
You reach your loved ones by calling a local number. That's a lot cheaper than calling long distance. It's that simple!
• We charge $2.50 per month for the number.
• For Calls to anywhere in the U.S., we charge you 5¢ per minute
• To Mexico - 15¢; to Canada - 11¢, to just about anywhere else in the world - 31¢
• No Contract, No Credit Check, No Setup Fee, No Cancellation Fee, No Early Termination Fee
• Cancel anytime; any money left on the account is refunded
Tell Your Folks to Sign Up at www.freedomline.net
Or Mail: FreedomLine P.O. Box 7 - SCA Connersville, IN 47331
Any time you refer a new customer and they sign up, you both get 300 free minutes! Some restrictions apply. Details upon request.
Also see our long-running Classified Ad in this and every issue!
FCC Reg. No 002-20/047

resulted or risk resulting in serious harm to prisoners at ISCI. In multiple ways, these conditions violate the rights of prisoners at ISCI to be protected from cruel and unusual punishment. Since many of these problems are frequent, pervasive, long-standing, and authorities are or should have been aware of them, it is my opinion that authorities are deliberately indifferent to the serious health care needs of their charges."

The report found that prisoners who were terminally ill or in long-term care were sometimes left in soiled linens, given inadequate pain medication and went for long periods without food or water. The findings regarding sick call noted instances in which prisoners' requests either resulted in no care, delayed care or treatment that was deemed dangerous. Emergency care situations had insufficient oversight, delays or no response; inadequately trained medical staff operated independently during emergencies without oversight from an RN or physician. The report also found problems with the pharmacy and medication distribution at ISCI.

In one case, a prisoner with a "history of heart disease was inexplicably dropped from the rolls of the heart disease Chronic Care Clinic." As a result, medical staff stopped conducting regular check-ups and assessments related to the prisoner's heart condition. A few years later the prisoner went in for a routine visit, complaining of occasional chest pain. No evaluation or treatment was ordered and the prisoner died four days later due to a heart attack. In another case, Corizon staff failed to notify a prisoner for seven months that an X-ray indicated he might have cancer.

Dr. Stern's report not only reviewed processes but also staff competency and adequacy. The report cited allegations that a dialysis nurse at ISCI overtly did not like prisoners, and routinely "failed to provide food and water to patients during dialysis, prematurely aborted dialysis sessions or simply did not provide them [dialysis] at all and failed to provide ordered medications resulting in patients becoming anemic." Stern concluded that prison officials were aware of this issue and the danger it presented to prisoners, but "unduly delayed taking action."

The mental health care provided by Corizon at ISCI was found to be deficient by Dr. Ruiz, who conducted the psychiatric portion of the court-ordered review. The report noted that the facility had 1) inadequate "screening of and evaluating prisoners to identify those in need of mental health care," 2) "significant deficiencies in the treatment program at ISCI" which was "violative of patients' constitutional right to health care," 3) an "insufficient number of psychiatric practitioners at ISCI," 4) incomplete or inaccurate treatment records, 5) problems with psychotropic medications, which were prescribed with no face-to-face visits or follow-up visits with prisoners and 6) inadequate suicide prevention training.

The report concluded: "The state of guiding documents, the inmate grievance system, death reviews and a mental health CQI [continuous quality improvement] system at ISCI is poor. While not in and of themselves unconstitutional, it is important for the court to be aware of this and its possible contribution to other unconstitutional events."

In March 2012, shortly after Dr. Stern's report was released over the objection of state officials, Corizon disagreed with its findings. The company retained

## Help From Outside, For Humanity Inside.

*Offering basic services on the outside.*

$ FINANCE & BUSINESS

SOCIAL NETWORKING

HFO HELP FROM OUTSIDE

ADMINISTRATIVE

INFORMATION

CREATIVE

PHONE

Help From Outside understands what you're going through. We can help you accomplish the things you need to get done but can't.

We offer:
- High standards & ethics
- Timely & professional services
- Personal touch

"HFO has excellent business etiquette and ethics."
- T. Brown

"I like that you sent a personal letter. HFO is more personable than your competitors."
- A. Mitchell

WE'VE MOVED! PLEASE CONTACT US AT OUR NEW ADDRESS:

For a brochure and application please send a SASE to:
Help From Outside | 2620 Bellevue Way NE #200 | Bellevue, WA 98004
206.486.6042 | www.helpfromoutside.com

## Learn The Law!

### It's a POWERFUL influence in your life.

Choose education to help yourself and others. Blackstone's Independent Study Paralegal Program offers you the opportunity to be productive while serving time.

- Learn Civil & Criminal Law
- Learn Legal Research
- 110 Years of Legal Training Experience
- Study in Your Spare Time
- Affordable Tuition, Easy Payment Plan

Only $30.00 Per Month

❏ **Yes!** I'd like to learn more   ❏ Paralegal Course
*Please rush me FREE course information.*

Name _____ Doc# _____

Address _____

_____

City _____ State ____ Zip _____

**Blackstone Career Institute**
SINCE 1890

Your tuition cost covers your entire program including all textbooks, study guides, exam and homework evaluation services, and your certificate.

**P.O. Box 3717 • Allentown, PA 18106**

**Privatized Healthcare Problems (cont.)**

the National Commission on Correctional Health Care (NCCHC) to review the report. Corizon described the review as an "independent assessment," even though it was paying NCCHC accreditation fees.

The NCCHC review consisted of a three-person team assessing the facility over a two-day period in April 2012. Unlike Stern's assessment of medical and mental health care, the NCCHC team did not interview prisoners or include a psychiatrist. Regardless, the agency concluded that "The basic structure of health services delivery at ISCI meets NCCHC's standards."

Corizon stated in a press release that Dr. Stern's report was "incomplete, mislead-



# Corcoran Sun

Full Color Prison Yard Monthly
News ♦ Entertainment ♦ Resources

**3 Month Special Subscription**

**$5 or1 Book of FCS**

**COLOR NEW 16 PAGES**
Expanded full color format with exciting episodes of thrilling novels and sexy pics. Many how-to articles on writing, art and health. Filled with entertainment: puzzles, trivia, jokes, poetry.. Submit your writing, art, poetry etc. See your submission, name and contact info in print.

Special 6-Issue Subscription ($10 or 2 Books FCS)
Special Full Year Subscription ($20 or 4 Books FCS)

Payments to: Freebird Publishers
Box 541- Dept. BK, North Dighton, MA 02764
www.FreebirdPublishers.com
Diane@FreebirdPublishers.com

ing and erroneous," and then-CEO Rich Hallworth appeared in a video defending the company. The NCCHC had previously accredited Corizon's healthcare services at ISCI, thus in essence the NCCHC's review was self-validating the organization's prior accreditation findings. Also, according to NCCHC's website, two Corizon officials sit on the agency's health professionals certification board of trustees.

Corizon's criticism of Dr. Stern's report is just one example where the company has objected to an independent, third-party assessment of its medical services. The *Balla* case settled in May 2012 after 30 years of litigation. [See: *PLN*, Feb. 2013, p.40].

## Indiana DOC

FOLLOWING A COMPETITIVE BIDDING process, Corizon was selected to continue providing medical care to Indiana state prisoners under a three-year contract effective January 1, 2014. The contract has a cap of $293 million, based on a per diem fee of $9.41 per prisoner.

Three weeks later, a lawsuit filed in federal court named Corizon and the Indiana Department of Correction as defendants in connection with the wrongful death of prisoner Rachel Wood. Wood, 26, a first-time drug offender, died in April 2012; the suit, filed on behalf of her family, claims she was transferred from prison to prison and denied care for her serious medical conditions, which included lupus and a blood clotting disorder.

"Notwithstanding the duty of the prison medical staff to provide adequate medical care to Rachel and to treat her very serious life threatening conditions, prison medical staff willfully and callously disregarded her condition, and allowed Rachel to

deteriorate and die," the complaint stated.

"That is just the attitude of these guys, is saving money rather than providing health care," said Michael K. Sutherlin, the attorney representing Wood's family.

Prison officials reportedly moved Wood among several different prisons and hospitals, and at one point lost track of her and claimed she had escaped even though she was still incarcerated.

"She died a horrible death and she died alone," stated her father, Claude Wood. The lawsuit remains pending. See: *Williams v. Indiana DOC*, Marion County Superior Court (IN), Case No. 49D05-1401-CT-001478.

## Maine DOC

IN AN OCTOBER 2013 *BANGOR DAILY NEWS* article, Steve Lewicki, coordinator of the Maine Prisoner Advocacy Coalition, discussed the state of healthcare in Maine's prison system. "Complaints by prisoners are less," he said, noting that while medical services provided to prisoners are better than in the past, there are still concerns. This relative improvement coincided with the end of the state's contract with Corizon. The contract, valued at approximately $19.5 million, was awarded to another company in 2012.

A year earlier, the Maine legislature's Office of Program Evaluation and Government Accountability (OPEGA) completed a review of medical services in state prisons. The agency contracted with an independent consultant, MGT of America, to conduct most of the fieldwork, and the review included services provided under Corizon's predecessor company, CMS.

The OPEGA report, issued in November 2011, cited various deficiencies in medical care at Maine prisons – including medications not always being properly

## MARILEE MARSHALL & ASSOCIATES, ATTORNEYS AT LAW

California State Bar Board of Specialization

**Certified Criminal Law and Appellate Law Specialist**

*If you have a California case you need a California lawyer!*

**(213) 489-7715**



**State and Federal Appeals and Writs, Lifer Parole Hearings and Related Writs**

**29 years of success**
523 West Sixth Street, Suite1109
Los Angeles, CA. 90014
marileemarshallandassociates.com

administered and recorded by CMS staff. Although the company was notified of the problem, no corrective action was taken. CMS employees did not follow policies related to medical intake and medical records; OPEGA reported that 38% of prisoners' medical files had inadequate or inaccurate documentation regarding annual physical assessments, and that files were not complete or consistently maintained. The report found 11% of sick calls reviewed were either not resolved timely or had no documented resolution. OPEGA also criticized CMS for inadequate staff training.

At a January 2012 legislative committee hearing, state Senator Roger Katz asked Corizon regional vice president Larry Amberger, "My question to you is in light of this history, why should the state seriously be considering any proposal your company might make to get this contract back again?"

In response, Amberger criticized the methodology used by MGT during the assessment and said he believed Corizon provided quality medical care. Questioning and challenging the findings of an independent reviewer is the same tactic the company used in Idaho. Regardless, Corizon's contract to provide medical care to Maine state prisoners is now a part of history.

## Louisville, Kentucky

WHILE SOME JURISDICTIONS, LIKE MAINE, have chosen not to renew their contracts with Corizon due to performance-related problems, in 2013 the Metro Department of Corrections in Louisville, Kentucky (LMC) offered the company a chance to rebid for its $5.5 million contract to provide medical care at the LMC jail. This time, however, it was Corizon that said "no thanks."

The rebid offer was made even though seven healthcare-related prisoner deaths occurred in a seven-month period in 2012 during Corizon's prior contract, which expired in February 2013. Nevertheless, LMC and Corizon agreed to extend the contract through July 30, 2013 on a month-to-month basis pending a formal rebid.

After the expiration of the month-to-month contract extension, Corizon notified LMC that it was no longer interested in providing services to the corrections department and would not seek to rebid the contract. LMC director Mark Bolton told the *Courier Journal* he was "surprised" by the company's decision. What seems more surprising is that LMC wanted to continue contracting with Corizon to provide medical services in spite of the number of prisoner deaths.

In April 2012, Savannah Sparks, 27, a heroin addict and mother of three, was arrested and held on shoplifting charges at the LMC jail. While withdrawing from heroin she vomited, sweat profusely, could not sit up, could not eat or drink, and defecated and urinated on herself. Six days later she was dead. According to the medical examiner, her death was due to "complications of chronic substance abuse with withdrawal."

A subsequent wrongful death suit alleged that Corizon and LMC employees were negligent in failing to provide treatment for Sparks' opiate addiction and withdrawal. Corizon settled the suit under confidential terms. See: *May v. Corizon*, Jefferson County Circuit Court (KY), Case No. 13-CI-001848.

Four months after Sparks' death, on August 8, 2012, another LMC prisoner, Samantha George, died. A lawsuit filed in Jefferson County Circuit Court claimed that George was moved from the Bullitt County Jail to the LMC facility on a charge of buying a stolen computer. According to the complaint, she told a Corizon nurse that she was a severe diabetic, needed insulin, and was feverish and in pain from a MRSA infection.

The nurse notified an on-call Corizon physician, who was not located at the facility and thus could not examine George in person, to decide if she should be taken to an emergency room. The doctor recommended monitoring George and indicated he would see her the next day. George's condition rapidly deteriorated while she was monitored by staff at the jail; she was found unresponsive a few hours after being admitted to the facility and pronounced dead a short time later.

An autopsy concluded that George died due to complications from a severe form of diabetes compounded by heart disease. According to the lawsuit, the Corizon doctor never saw George; among other defendants, the suit named Corizon and LMC director Mark Bolton as defendants.

LAW OFFICES OF

# ELMER ROBERT KEACH, III



Law Offices of Elmer Robert Keach, III, PC
One Pine West Plaza, Suite 109
Washington Avenue Extension
Albany, NY 12205-5531
518.434.1718
www.keachlawfirm.com

Attorney Bob Keach
NITA Master Advocate
Member, Multi-Million Dollar Advocates Forum
Outside Counsel, Prison Legal News
National Practice

## Experienced Civil Rights Attorney dedicated to seeking justice for those who are incarcerated

*Custodial Death Cases • Wrongful Arrest and Incarceration*
*Medical Indifference Cases • Corrections and Police Brutality*
*Sexual Abuse and Assault • Illegal Strip Searches*
*Class Actions • First Amendment Litigation (Northeast Only)*

Reasonable Hourly Rates for: Criminal Defense, Appeals,
Post-Conviction Relief, Habeas Corpus

### WHEN YOU OR A LOVED ONE HAVE BEEN WRONGED, YOU HAVE A VOICE.

Attorney Keach prefers all inquiries by mail to be typed, and limited to five pages.
DO NOT SEND ORIGINAL DOCUMENTS OR ORIGINAL MEDICAL RECORDS.
Make sure to exhaust your administrative remedies and comply with state law notice
requirements, if applicable, to preserve state law intentional tort/negligence claims.

## Privatized Healthcare Problems (cont.)

The case was removed to federal court, then remanded to the county circuit court in October 2013. See: *George v. Corizon*, U.S.D.C. (W.D. Ky.), Case No. 3:13-cv-00822-JHM-JDM.

A few weeks after George's death, Kenneth Cross was booked into the LMC jail on a warrant for drug possession. According to a subsequent lawsuit, upon Cross' arrival at the jail a nurse documented that he had slurred speech and fell asleep numerous times during the medical interview. Several hours later he was found unconscious, then died shortly thereafter due to a drug overdose. The lawsuit filed by Cross' estate alleged that employees at the LMC jail were deficient in recognizing and treating prisoners' substance abuse problems and that the facility was inadequately staffed for such medical care.

After the deaths of Sparks, George, Cross and four other prisoners in 2012, LMC director Bolton said he believed Corizon took too long to evaluate and treat prisoners at the jail. According to the *Courier-Journal*, Bolton sent an email to his staff in December 2012 regarding the prisoners' deaths, stating, "Mistakes were made by Corizon personnel and their corporation has acknowledged such missteps." He further indicated that Corizon employees – not LMC staff members – were responsible for the care of the prisoners who died. Six Corizon employees at the LMC jail resigned in December 2012 during an internal investigation; they were not identified.

Bolton's criticism was too little, too late to prevent the deaths of the seven LMC prisoners, though the jail has since made improvements to its medical services, including a full-time detox nurse and new protocols for prisoners experiencing withdrawal. One could speculate that LMC's critique of Corizon might be a litigation tactic, to deflect responsibility. The fact remains that seven deaths occurred under Corizon's watch and, notwithstanding those deaths, LMC was willing to renew its contract with the company.

In January 2014, the Louisville Metro Police's Public Integrity Unit concluded investigations into three of the deaths at the jail, and criticized both Corizon and LMC. The Commonwealth Attorney's Office found that Sparks' and George's deaths were preventable; however, no criminal charges were filed. Dr. William Smock, a forensic examiner who served as a consultant during the investigations, stated with respect to George's death: "There is compelling evidence of a significant deviation from the standard of care and medical negligence on the part of the medical providers."

"I'm glad to see that the government's investigation matches exactly what our investigation showed, which is that her death and others like hers is easily preventable," said Chad McCoy, the attorney representing George's estate.

### Minnesota DOC

After providing medical care to Minnesota state prisoners for 15 years, Corizon was not selected when the contract was rebid in 2013 – despite having submitted the lowest bid. Instead, competitor Centurion Managed Care was to begin providing healthcare services in Minnesota's prison system effective January 1, 2014 under a two-year, $67.5 million contract.

Corrections Commissioner Tom Roy said the contract with Centurion was expected to "deliver significant savings to taxpayers while improving the quality of care for offenders."

According to the *Star-Tribune*, nine prisoners died and another 21 suffered serious or critical injuries in Minnesota correctional facilities due to delay or denial of medical care under the state's previous contract, which had been held by Corizon or its predecessor, CMS, since 1998.

That contract was for a fixed annual flat fee of $28 million. A flat fee contract provides an incentive for the contractor to tightly control costs, as a reduction in expenses results in an increase in profit. The *Star-Tribune* found that many of the staffing arrangements negotiated in the contract played a role in the deaths and injuries. For example, the contract allowed Corizon physicians to leave at 4:00pm daily and did not require them to work weekends. During off-hours there was only one doctor on call to serve the state's entire prison system, and many of the off-hour consultations were done telephonically without the benefit of the prisoner's medical chart. Under the



# TYPING
## SERVICES
### Provided since 1998

Specifically designed, with special rates for the incarcerated person.

Black / Color Printing and Copying

*SEND A SASE FOR A "FREE" PRICE LIST AND MORE INFORMATION TO:*

**LET MY FINGERS DO YOUR TYPING**
Sandra Z. Thomas (dba)
P O Box 4178
Winter Park, Florida 32793-4178
Phone: 407-579-5563

Special Offer: $2.00 off first order.
Special offer void after: 12/31/2013

**INMATE SHOPPER**

**2014 READERS CHOICE RESULTS**

**EVERY ISSUE CONTAINS:**
- Zero Pen Pal Resources
- 400 Businesses Serving Prisoners
- 200 Non Profit Orgs for Prisoners
- 80 Designer Gift Stores
- Free Ad Space to Sell Your Stuff
- 15 Magazine Sellers
- 32 Sexy Photo Sellers
- and lots of ladies, too, BOP cool.
- Typist & Publishing Services

**FREE ADS**

**America's Largest Up-To-Date Resources For Prisoners**

$14.98 FREE Shipping

Bonus! 100 Orgs en Espanol!



**The Best 500**
NON PROFIT ORGanizations
For Prisoners & Their Families

Pay to: Inmate Shopper
P.O. Box 231 • Edna, TX 77957
PRICE: $17.99 + $6 Priority Mail with Tracking #.

**amazon.com**

Corrlinks:
info@inmateshopper.com

contract, Corizon was not required to staff most facilities overnight.

The Minnesota Department of Corrections was held liable for nearly $1.8 million in wrongful death and medical negligence cases during the period when the state contracted with Corizon or CMS.

In October 2012, a jury in Washington County awarded Minnesota prisoner Stanley Riley more than $1 million after finding a Corizon contract physician, Stephen J. Craane, was negligent in providing medical treatment. The *Star-Tribune* reported that Riley suffered from what turned out to be cancer and had written a series of pleading notes to prison officials. One read, "I assure you that I am not a malingerer. I only want to be healthy again."

In May 2013, the state paid $400,000 to settle a lawsuit over the death of a 27-year-old prisoner at MCF-Rush City. Xavius Scullark-Johnson, a schizophrenic, suffered at least seven seizures in his cell on June 28, 2010. Nurses and guards didn't provide him with medical care for nearly eight hours. According to documents obtained by the *Star-Tribune*, Scullark-Johnson was found "soaked in urine on the floor of his cell"

and was "coiled in a fetal position and in an altered state of consciousness that suggested he had suffered a seizure." An ambulance was called several hours later but a nurse at the prison turned it away, apparently due to protocols to cut costs. Corizon settled the lawsuit for an undisclosed sum in June 2013. See: *Scullark v. Garin*, U.S.D.C. (D. Minn.), Case No. 0:12-cv-01505-RHK-FLN.

### Philadelphia, Pennsylvania

IN PHILADELPHIA, MAYOR MICHAEL A. Nutter has been accused of being too loyal to his campaign contributors, including Corizon. The company donated $1,000 to Nutter's 2012 campaign committee several months before the city renewed Corizon's contract to provide medical care to 9,000 prisoners in Philadelphia's prison system. Further, PHS donated $5,000 to Nutter's mayoral campaign in 2008.

The contract renewal would have been routine except for the fact that Corizon's performance in Philadelphia has been far from stellar. In July 2012 the company agreed to pay the city $1.85 million following an investigation that found Corizon was using a minority-owned subcontractor that did no work, which was a sham to meet the city's requirements for contracting with minority-owned businesses.

The renewed year-to-year Corizon contract, worth $42 million, began in March 2013. Nutter's administration was accused of using the year-to-year arrangement to avoid having the contract scrutinized by the city council; the city's Home Rule Charter requires all contracts of more than one year to be reviewed by






**Join Our Exclusive Membership, Open a Bank Account and Gain Access to Our Services!**
We only provide services to our clients, no exceptions


Bank Account under your social security number. Deposits, Statements, Money Orders, Bank Checks, Green Dot, Stamp Exchange, Wire Transfers, Direct Deposit & PayPal.



Internet Purchases, Gift Cards, Greeting Cards, Lottery, Sporting News & Current Events, People Search, Personal Shopper. "If It Can Be Done, We Will Try To Do It", see our catalog for more


We can do any Graphic Design project. Printed Material, Musical Emails, Creative Writing, Photo Reproduction & Forwarding, Book Publishing, Book Cover Design, Press Releases, Portfolio Creation, and Website Building.



Mailboxes, Emails, Faxes, Texts, Scanning, Copies, Typing, Storage, Document Preparation, Internet Research, Prepaid, Contract & Computer Aided Phones.


Place your profile on prisonerassistant.com and access our Special Features; Classifieds, Portfolios, Posts & Blogs, Market Place and Sponsor a Prisoner.

PO Box 704-4D1
Lake Harmony, PA 18624 0704
www.prisonerassistant.com
info@prisonerassistant.com
(570) 722-5800

For more information - send $4.50 to "Prisoner Assistant" for an Application Package and 80 page color catalog. If you send an SASE you will only receive a brochure.


Business Development


JOIN NOW!


Credit Development

The services below are available to all prisoners - not just our clients


We have reviewed our Cohens etter efforts via Corlinks and the benefits inmate costs involved. The new E-newsletter annual date will facilitate and the frequency will be up to 5 times a month containing information relevant to Prisoner Assistant and reentry planning.
Sign Up Today! info@prisonerassistant.com


**Banking and Financial Management Course**
120 pages, complete course with 8 chapters and exams. Transcript and Certificate available. Send $25.00 to Prisoner Assistant at the address above with a request for the course. Open to Everyone


**Personal Reentry Guide and Journal**
233 pages, complete course with 7 chapters and exams. Transcript and Certificate available. Send $33.00 to Prisoner Assistant at the address above with a request for the course. Open to Everyone.

## Privatized Healthcare Problems (cont.)

the council. Further infuriating opponents of the contract, Corizon was not the lowest bidder. Correctional Medical Care (CMC), a competitor, submitted a bid that would have cost the city $3.5 million less per year than Corizon. Philadelphia Prison Commissioner Louis Giorla defended the city's decision to award the contract to Corizon at a council hearing; however, he declined to answer questions as to why the administration considered Corizon's level of care to be superior to that provided by CMC.

Three union contracts with Corizon covering 270 of the company's workers in Philadelphia's prison system expired on November 26, 2013. Corizon demanded benefit cuts, including changes in employee healthcare programs, to offset wage increases promised under the company's contract with the city. A strike was averted in December 2013 when the mayor's office intervened and both sides reached a settlement. The *Philadelphia Daily News* reported that the new union contracts provide wage increases but also include a less-generous health insurance plan for Corizon employees.

Since 1995, Corizon and its predecessor, PHS, have received $196 million in city contracts. The company's contract was terminated for several months in 2002 as a result of complaints that a diabetic prisoner had died after failing to receive insulin. The city renewed the contract anyway, cit-ing affordability and pledging increased oversight. The city's law department estimates that Philadelphia has paid over $1 million to settle lawsuits involving claims of deficient prison healthcare; the largest settlement to date is $300,000, paid to a prisoner who did not receive eye surgery and is now partially blind.

Based upon the number of lawsuits filed against Corizon alleging inadequate medical care, its use of a sham subcontractor and the company's treatment of its own employees, it appears that maintaining the status quo – not best practices – may be the controlling factor in Philadelphia's continued relationship with Corizon.

### Allegheny County, Pennsylvania

On September 30, 2013, a prisoner jumped from the top tier of a pod at the Allegheny County Jail. Following an investigation, authorities refused to make public their findings and declined to disclose the prisoner's injuries, citing medical privacy laws. The prisoner, Milan Karan, 38, was not transported to the hospital until the following day.

A spokesperson for Corizon, which provides medical care at the 2,500-bed jail, defended the nearly 24-hour delay by noting the prisoner "was under observation" before being sent to a hospital.

In December 2013, the *Pittsburgh Post-Gazette* reported that Corizon was having difficulty staffing the Allegheny County Jail. When the newspaper requested a comment from Corizon vice president Lee Harrington, Harrington claimed he had no knowledge of staffing problems – despite having previously received emails from the facility's warden about that exact issue.

The staffing problems resulted in prisoners not receiving their medication in a timely manner. In emails obtained by the *Post-Gazette*, Warden Orlando Harper wrote to Harrington in October 2013, noting, "We are continuing to experience issues pertaining to the following: 1. Staffing, 2. Medication distribution." Also, on November 17, 2013, Deputy Warden Monica Long sent an email to Corizon and jail staff. "I was just informed by the Captain on shift, the majority of the jail has not received medication AT ALL," she stated, adding, "Staffing is at a crisis."

That crisis had been ongoing since Corizon assumed the medical services contract at the facility on September 1, 2013. Before the $62.55 million, five-year contract was awarded, Corizon vice president Mary Silva wrote in an email that it was imperative the jail have "adequate staffing on ALL shifts." That promise was made despite Corizon laying off many of the former employees of Allegheny Correctional Health Services, the jail's previous healthcare provider.

Allegheny Correctional had provided four full-time and one part-time physician during its contract tenure. Corizon reduced the number of doctors to one full-time and one part-time physician. Allegheny Correctional also employed three psychiatrists and one psychologist. Corizon's contract



## Support Prison Legal News with these beautiful gifts!

CALL **561-360-2523**, MAIL ORDER OR USE WEB FORM
HTTP://WWW.PRISONLEGALNEWS.ORG/

### Hand Embroidered Greeting Cards

Made by women prisoners in Cochabamba, Bolivia. Each card is individually made, no two are identical. The prisoners are paid a fair wage for each card and keep 100% of the pay to support themselves and their families. Local fair trade non-profits in Bolivia supply the materials for the cards. **$6.**

### Hand Made Hemp Tote Bag All natural hemp tote bag
hand made in Vermont with the Prison Legal News logo on both sides, in red and black. Great for carrying books, groceries, and more! Stamped on the inside that no sweatshop, prison or child labor was used in its manufacture. **$12.**

$6 shipping and handling for orders under $50.

requires that it provide one full-time psychiatrist and a part-time psychologist.

In January 2014, the United Steelworkers union (USW) filed a petition with the National Labor Relations Board to unionize Corizon employees at the Allegheny County Jail, including nurse practitioners, RNs, physician assistants and psychiatric nurses. USW representative Randa Ruge indicated that the Corizon workers had approached the union for representation due to intolerable working conditions.

"Our folks [Corizon employees] are in danger of losing their licenses to practice by some of the things that the company has them doing," she said. Ruge told the *Post-Gazette* that the jail had run out of insulin for more than a week and Corizon supervisors had "countermanded doctors' orders."

Several weeks after the USW filed the labor petition, a Catholic nun who worked as an RN at the jail was fired by Corizon, allegedly for union organizing activities. Sister Barbara Finch was dismissed after she openly expressed concerns about staffing, patient care and safety at the facility. The USW filed an unfair labor complaint against Corizon regarding Finch's dismissal, claiming she was terminated in retaliation for her union activities.

"This is a clear case of intimidation and union-busting at its worst," said USW President Leo W. Gerard. "Sister Barbara has been an outspoken advocate of change for these courageous workers and their patients, and this kind of illegal and unjust action, unfortunately, is par for the course with Corizon."

On February 14, 2014, Corizon employees at the Allegheny County Jail voted overwhelmingly to unionize. "The next step is getting to the bargaining table and getting Corizon to bargain in good faith and get some changes made in the health system at the jail," said Ruge.

The previous week, Allegheny County Controller Chelsa Wagner stated she had "grave and serious concerns" about medical care at the facility, including issues related to staffing and treatment for prisoners with certain mental health conditions. "I regard the current situation as intolerable and outrageous, and I fully expect necessary changes to be urgently implemented," she wrote in a letter to Corizon.

## Polk County, Iowa

On August 29, 2013, Ieasha Lenise Meyers, incarcerated at the jail in Polk County, Iowa on a probation violation, gave birth on a mattress on the floor of her cell. Her cellmates assisted with the delivery. Earlier, when Meyers, 25, had complained of contractions, a Corizon nurse called an offsite medical supervisor and was told to monitor the contractions and check for water breaking.

Despite Meyers having been twice sent to a hospital earlier the same day, and pleading that she was about to give birth, the nurse did rounds in other parts of the jail. Guards reportedly did not check on Meyers as required, even though the birth could be seen on a nearby security monitor. Only after the baby was born was medical care provided. Sheriff Bill McCarthy defended the actions of jail staff.

## Corizon Employee Misconduct

Like most private contractors that provide prison-related services, Corizon tends to cut costs in terms of staffing and operational expenses. As noted above, this includes paying lower wages, providing fewer or inferior benefits and hiring less qualified workers who can be paid less. Sometimes, however, these practices result in employees more like to engage in misconduct.

At the Pendleton Correctional Facility in Indiana, a Corizon nurse was arrested and charged with sexual misconduct, a Class C felony. The *Herald Bulletin* reported that in April 2013, when Colette Ficklin was working as a contract nurse for Corizon, she convinced a prisoner to fake chest pains so they could be alone in an exam room. A guard told internal affairs officers that she witnessed Ficklin and the prisoner engaging in sex acts in the prison's infirmary. [See: *PLN*, Sept. 2013, p.17].

In March 2013 at the Indiana State Prison in Michigan City, a Corizon practical nurse was charged with drug trafficking and possession with intent to distribute. Phyllis Ungerank, 41, was arrested and booked into the LaPort County Jail after attempting to smuggle marijuana into the facility. [See: *PLN*, July 2012, p.50].

A Corizon nurse at the Volusia County Branch Jail in Daytona Beach, Florida



**12 FREE ISSUES!**

FREE!

Send self-addressed, stamped envelope to address below and receive 1 FREE - 1 YEAR magazine subscription!

Quarterly drawing WINS $100! (Void in New York)
(Last Quarter's winner from **Somers, CT.**)
TELL YOUR FRIENDS!   ACT NOW!!

PO Box 2063 • Fort Walton Beach FL. 32549
www.InmateMagazineService.com

**Inmate Magazine Service** Inc.

## Privatized Healthcare Problems (cont.)

was fired after officials learned she was having sex with and giving money to a prisoner. Valerie Konieczny was terminated on December 18, 2012 when the jail was contacted by the brother of prisoner Randy Joe Schimp, who had written in a letter that a nurse was having sex with him and depositing money into his jail account. Investigators determined that Konieczny was the nurse who had sex with Schimp at both the Volusia County facility and another branch jail in 2011.

In New Mexico, Corizon physician Mark Walden was accused of fondling prisoners' genitals and performing prostrate exams that were "excessive and inappropriate in terms of length and method." At times, Walden reportedly did not wear gloves during the prostate exams. He was accused of sexually abusing 25 or more male prisoners while employed as a doctor at two privately-operated facilities, the Guadalupe County Correctional Facility in Santa Rosa and Northeast New Mexico Detention Facility in Clayton.

Lawsuits were filed against Walden, Corizon and private prison operator GEO Group, and Walden's medical license was suspended in December 2013. The suits claim that Corizon allowed Dr. Walden to work at the Clayton prison "despite knowing of the risk of sexual abuse and having the ability to know that [he] was repeatedly sexually abusing patients" at the Santa Rosa facility. [See: *PLN*, Sept. 2013, p.47].

### The Privatization Model

ECONOMICS PROFESSORS KELLY BEDARD and H.E Frech III at the University of California at Santa Barbara examined the privatization of correctional medical services in their research study, "Prison Health Care: Is Contracting Out Healthy?," published in *Health Economics* in November 2009.

They concluded: "We find no evidence to support the positive rhetoric regarding the impact of prison health care contracting out on inmate health, at least as measured by mortality. Our findings of higher inmate mortality rates under contracting out are more consistent with recent editorials raising concerns about this method of delivering health care to inmates."

Today, five years after the Bedard-Frech report was published, it has the benefit of hindsight. Since the report was written, its findings and conclusions have been reaffirmed in prisons and jails across the nation that have contracted with private companies to provide medical care to prisoners. Cost reductions in the provision of correctional healthcare tend to result in greater inefficiencies that lead to poorer outcomes. Consequently, for-profit medical contractors may actually be increasing morbidity and mortality in prison and jail populations.

Many governmental entities are willing to outsource correctional healthcare to private companies; reasons for doing so include cutting costs, risk management and removing healthcare duties from corrections departments. If Corizon's record with respect to providing medical care to prisoners seems dismal, the company can always defend its actions by stating it does what it has been hired to do: Cut costs for its customers. And those costs have been rising due to an increasingly aging, and thus medically-needy, prison population. [See: *PLN*, Nov. 2012, p.22; Dec. 2010, p.1].

With respect to risk management, litigation is not a compelling issue within the prison healthcare industry and Corizon views lawsuits as simply a cost of doing business. "We get sued a lot, but 95% or 97% of cases were self-represented cases," ex-CEO Rich Hallworth was quoted in an August 2013 article. He added that most lawsuits settle for an average of less than $50. Of course it is difficult for prisoners to obtain representation to pursue litigation – unless it's a wrongful death case, and then usually their family or estate is doing the suing.

Nor are the public agencies that contract with private medical providers greatly concerned about their litigation records. In fact, when Florida contracted with Corizon and Wexford Health Sources to provide medical care for the state's entire prison system, the Florida Department of Corrections didn't ask the companies about their litigation histories – such as lawsuits raising claims of deliberate indifference, negligence and medical malpractice.

"What really troubles me about this is the fact that the department didn't ask these very basic, elemental questions any system would ask," observed ACLU National Prison Project staff attorney Eric Balaban. "These two vendors were taking

- Post-Conviction Specialists (Habeas Corpus/Coram Nobis/PRP/Certiorari/SVP/Sentence Modification/DNA and more)
- We Cover all 50 States and D.C., Federal District Courts, Federal Courts of Appeal, and Supreme Court
- Comprehensive investigative services available
- Experts and specialists available
- Staff attorney with over 40 years litigation experience
- Professional legal staff with extensive post conviction experience
- Multi-lingual services available
- FREE initial consultation
- Payment plans available

## Legal Insights Inc.

25602 Alicia Parkway Suite 323
Laguna Hills, CA. 92653
714-941-0578
info@legalinsights.org
www.legalinsights.org

501(c)(3) Non-Profit Organization

over Florida's massive health care system and you'd think they would have asked hard questions to determine if these companies can provide these services within constitutional requirements."

Even worse, the downgrading of Corizon's debt rating by Moody's in 2013 creates a potential problem for the company's service delivery model. The majority of Corizon's revenue is derived from contracts with state and local agencies that are trying to reduce their budgetary expenses. Given those fiscal pressures and competition from Wexford, Armor, Centurion and other prison healthcare companies, Corizon cannot easily increase its revenue through contractual price increases. But the company's expenses are largely within its control.

Unfortunately for prisoners, in order to reduce costs Corizon will likely have to curtail the quality or quantity of healthcare services it provides. As noted above, this can be done by reducing employee wages or benefits; the company can also cut costs through understaffing and by limiting prescription medications or providing fewer referrals to hospitals and specialists. A growing trend is to use off-site medical staff who consult with prisoners through telemedicine. [See: *PLN*, Dec. 2013, p.34].

The correctional healthcare industry, comprised of only a few large companies, is highly competitive. When one company loses a contract, another is more than willing to step in and submit a bid. What really matters for most government agencies and policymakers is the bottom line cost.

According to Dr. Marc Stern, the court-appointed special master in Idaho, "whoever delivers prison healthcare is doing it on less than adequate funding because that's how much municipalities, state legislatures and county commissions are allocating." He noted that privatization can be good in some cases and bad in others, depending on the level of oversight by the contracting public agency.

When Corizon compromises medical care to save money, such as curtailing the use of ambulances for emergency transports, reducing the number of on-site doctors or sending fewer prisoners to outside hospitals for needed treatment, government officials typically fail to take corrective action and deny responsibility for the resultant deaths and injuries. Indeed, as with the Idaho Department of Corrections and LMC in Kentucky, they sometimes want to reward the company with renewed contracts.

Why? Because continuity maintains



**PASS**

Prisoner Assistance Scholastic Service provides educational materials nationally to prisoners in state and federal prisons and jails.

Prisoners who successfully complete the PASS program earn a degree in Personal Psychological Development which can be used as evidence of rehabilitation before parole boards and with prison officials.

$500 for the entire course of study and degree.

◆ Victim Awareness
◆ Anger Management
◆ Addiction/Substance Abuse
◆ Domestic Violence
◆ Gang Diversion
◆ Conflict Resolution
◆ Parenting
◆ Non-violent Communication
◆ Re-entry in Society
◆ Living With Purpose

**10 COURSES 2 SEMESTERS**

Graded study - completed through the mail.

**FOR MORE INFO**
www.passprogram.org
pass@passprogram.org

**1-888-670-7277**

PASS Program, PO BOX 2009, San Francisco, CA. 94126

**PRISON INMATES ONLINE**

Home    Sort Inmates    Photo/Video    Inmate Writings    Community    Services    Forum

**Actual Profile Layout**

**FEATURED INMATES**

**GET MAIL**

John Inmate #12345          Profile

**BEST VALUE** Among Prison Websites

Get **PEN-PALS** by posting YOUR profile **ONLINE!**
$50 Lifetime Profile
$10 Mini Profiles

Our Message Service let's people send you messages directly through your profile. We collect messages you receive and mail them to you each week. *Service Not available in all prisons.

*Helping Inmates Since 2000*

**BLOGS    POETRY**

**SHARE THESE**

**PHOTOS    ARTWORK    TATTOO PICS    VIDEOS    LEGAL DOCS**

**Our Social Network Includes:**

**twitter**  **facebook.**

**For a FREE brochure/application:**
Send a Self Addressed Stamped Envelope (Size #10) or 2 first class stamps to:
*PRISON INMATES ONLINE*
#PLN Brochure
8033 W Sunset Blvd #7000
Los Angeles CA 90046

We cannot send brochures to STATE inmates in: FL, MO, PA, or VA. Message Service available in facilities that allow 3rd party mail. NY State Inmates are prohibited from Message Service.

### Privatized Healthcare Problems (cont.)

cost control, which is the driving force behind privatization of prison and jail medical services.

### Conclusion

THE INTENT OF THIS ARTICLE WAS TO REVIEW Corizon's performance and practices based on publicly-available information, including news reports and court records. Although the company was formed in June 2011, its two predecessor firms, PHS and CMS, littered the news and judicial dockets over the years with lawsuits and articles involving cases of inadequate healthcare. Thus, the sins of Corizon's parents, CMS and PHS, are forever linked with the progeny of their merger.

Such past misdeeds could be explained away had Corizon adopted a new, post-merger culture that was removed from prior practices under PHS and CMS. However, many of Corizon's mid-level and top executives – including ex-CEO Rich Hallworth, former president Stuart Campbell, chairman Richard H. Miles and a number of vice presidents – were previously executives with PHS or CMS. It was during their tenure at those companies that numerous cases involving deficient medical care occurred.

The corporate culture of Corizon, as well as its business model, appears to be largely the same as those of its predecessors. Therefore, the only thing that may have changed as a result of the merger that created Corizon is the company's name. ◼

*Gregory Dober is a freelance writer in healthcare and ethics. He has been a contributing writer for PLN since 2007 and co-authored*

Against Their Will: The Secret History of Medical Experimentation on Children in Cold War America, *published by Palgrave in 2013. [See: PLN, Nov. 2013, p.36].*

Sources: *Bloomberg News, Forbes, www.businessweek.com, Philadelphia Inquirer, Philadelphia Daily News, The American Independent, Pittsburgh Tribune-Review, St. Louis Business Journal, www.browardbulldog.org, Miami Herald, WHAS-TV, The Tennessean, Courier-Journal, Idaho Business Review, Associated Press, The Arizona Republic, Maine Public Broadcasting Network, Bangor Daily News, WANE-TV, Raton Range, Des Moines Register, Star-Tribune, The Nation, The Florida Current, www.usw.org, KPHO-TV, WANE-TV, Tucson Citizen, WCAV-TV, www.wdrb.com, www.modernhealthcare.com, www.cochs.org, www.wndu.com, www.afsc.org, www.americanownews.com*

# Florida County Agrees to Pay $4 Million to Deceased Prisoner's Estate

### by Derek Gilna

NICHOLAS T. CHRISTIE, INCARCERATED at the Lee County jail in Ft. Myers, Florida, died on March 31, 2009 after being repeatedly pepper sprayed by deputies while strapped to a restraint chair. Following three years of litigation, Lee County officials agreed in May 2013 to pay a record settlement of $4 million to Christie's estate.

The jail's for-profit medical contractor, Prison Health Services (PHS), now known as Corizon, was named as a defendant in the federal lawsuit and included in the settlement agreement.

The § 1983 suit raised claims related to Christie's death under the "Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution, the laws of the United States, and the laws of the State of Florida."

The complaint alleged that Christie was "restrained to a chair with a hood over his head and face for several hours in the custody of the Lee County Sheriff, while being detained on a misdemeanor trespass charge," and that medical staff at the jail failed to provide him with adequate care after he showed signs of respiratory distress during and after that incident. Medical personnel, the lawsuit stated, "acted willfully, wantonly, maliciously, and with reckless and callous disregard for and deliberate indifference to the serious medical and mental health needs of Nick Christie, and in a manner that shocks the conscience and offends traditional notions of decency, all of which led to his wrongful and untimely death."

According to the complaint, prior to and during his placement in the restraint chair, Christie disclosed to jail staff that he had "certain serious medical conditions..., including, but not limited to, Chronic Obstructive Pulmonary Disease (COPD), a heart condition, cardiovascular disease, atrial fibrillation, obesity, gout, back pain, constipation, and umbilical hernia, all of which was recorded and documented in Mr. Christie's PHS medical chart/record."

## EXECUTIVE CLEMENCY

**For Info. On Sentence Reduction through Executive Clemency:**

**NATIONAL CLEMENCY PROJECT
3907 N. Federal Highway, # 151
Pompano Beach, FL 33064
954-271-2304**



(35-Years of Clemency & Parole Assistance)
(Transfers Under The Int'l Prisoner Treaty)

## Alexander Byrd Optics

### Single Vision Transitions eyeglasses

**$119.95** + S&H

with Lifetime Frame Warranty

To receive order form and details write to:

2150 Wise St. #4769
Charlottesville, VA 22905

or have someone go to:

abyrdoptics@gmail.com
www.abyrdoptics.com

Further, Christie's wife had contacted jail officials to advise them of her husband's medical conditions and to inform them he had not been taking his medication regularly, which often caused him to act in an erratic manner. When Christie was booked into the jail, officials confiscated the medications he had with him and failed to refer him for a proper medical intake evaluation that would have resulted in the jail reissuing his prescribed medications to replace those that were taken.

A report by Florida's state medical examiner found the cause of Christie's death was "hypoxic encephalopathy, following resuscitation for cardiac arrest, due to or as a consequence of cardiogenic shock with congestive heart failure, due to or as a consequence of physiologic stress, following restraint and noxious effects of Oleoresin Capsicum" – i.e., the pepper spray used by sheriff's deputies.

The often excessive and abusive use of "restraint chairs" by corrections officials has been criticized by prisoners' rights groups and has resulted in litigation in other jurisdictions as well. Unfortunately for Christie, the failure of Lee County jail staff to follow proper procedures and the failure of PHS employees to provide adequate medical care led to his death. And unfortunately for the county and PHS, those failures resulted in a $4 million settlement to resolve the subsequent lawsuit filed by Christie's estate. See: *Christie v. Scott*, U.S.D.C. (M.D. Fla.), Case No. 2:10-cv-00420-UA-DNF. 🛢

## Seventh Circuit Upholds Removal of Prisoner's Dreadlocks

THE SEVENTH CIRCUIT COURT OF Appeals has held that an Illinois prisoner's religious rights were not violated when prison officials required him to cut off his dreadlocks to be transported to a court hearing.

Peter A. Lewis, incarcerated at the Dixon Correctional Center, is a member of a religious sect called the African Hebrew Israelites of Jerusalem. Consistent with the requirements of his faith, Lewis took the voluntary Nazirith vow, which, among other things, committed him to not cut his hair. He had previously filed suit against prison officials, claiming that they infringed his religious freedom by refusing to let him have visits unless he agreed to cut his hair. A 2003 settlement in that lawsuit allowed Lewis to have visitors if he permitted guards to search his dreadlocks for contraband before and after each visit.

Prison officials gave Lewis a choice in January 2004, when he was scheduled to appear in federal court. He could either get a haircut or go to segregation as punishment for eluding (by refusing a haircut) his scheduled court hearing. Lewis chose the haircut, then claimed prison officials knew his court date had been postponed, depriving them of a security concern that justified cutting his hair.

A dispute existed as to what prison officials knew about the court date, and when. It was undisputed, however, that Lewis was transported to court shortly after the originally-scheduled court hearing. The Seventh Circuit wrote, "it is obvious that transporting prisoners and placing them in courtrooms presents significant security concerns, warranting protective measures."

The appellate court held that prison officials' discretion relative to security-related matters extends to a determination that a particular prisoner's dreadlocks are too thick or dense to be readily searchable on a certain occasion, such as a visit to federal court. There was no evidence that Lewis was treated differently than other similarly situated prisoners, nor that the prison's security concerns were outweighed by his interest in engaging in a sincere religious observance.

The district court's order granting summary judgment to the defendant prison officials was therefore affirmed, and the U.S. Supreme Court denied Lewis' petition for writ of certiorari on October 7, 2013. See: *Lewis v. Sternes*, 712 F.3d 1083 (7th Cir. 2013), *cert. denied*.

The Seventh Circuit had previously held that an Illinois prison guard violated a prisoner's First Amendment rights by ordering his dreadlocks to be forcibly cut, and that the guard was not entitled to qualified immunity. However, the appellate court noted that the facts in that case involved "outright arbitrary discrimination rather than a failure merely to 'accommodate' religious rights." [See: *PLN*, April 2013, p.44]. 🛢

# LEARN TO PROTECT YOUR RIGHTS

**YOU HAVE A RIGHT TO**
- Adequate medical care
- Protection from assault
- Humane living conditions
- Safety from officer abuse

Learn how to defend your basic human rights with the comprehensive litigation guide, *Protecting Your Health and Safety*, 2nd edition, written specifically for prisoners who are unable to receive help from a lawyer.

Written by Robert E. Toone
Edited by Dan Manville
*A Project of the Southern Poverty Law Center\**

**COST** $16 total
($10 + $6 shipping/handling)
FREE shipping/handling for orders from Prison Legal News over $50

**ORDER A COPY**
Send a check
or money order to:
**Prison Legal News**
**PO Box 1151**
**Lake Worth, FL 33460**
**561-360-2523**

*Be sure to include your name, identification number (if any), and mailing address. We also accept VISA and Mastercard. If using a credit card, please include the type of card (VISA or Mastercard), card number, and expiration date.*

This book does not deal with legal defense against criminal charges or challenges to convictions that are on appeal. Edition last revised in 2009.

*\*Please do not send orders to the Southern Poverty Law Center.*

# From the Editor
### by Paul Wright

THIS MONTH'S COVER STORY ON CORIZON, the company formed by the merger of Prison Health Services and Correctional Medical Services, is our most recent reporting on an issue that has been ongoing for the past several decades. Namely, the prison HMO model whereby corrections agencies contract with for-profit companies to provide medical services to prisoners, while the companies' business model requires that they delay or deny treatment in order to make a profit. Not surprisingly this results in a pattern of deaths, injuries and pain suffered by prisoners who have no other options for obtaining medical care.

What is interesting is that despite decades of abuse, corruption and fraud, the government entities that contract with for-profit prison medical providers still fail to adequately monitor and audit their performance. Even after repeated contractual violations, if one company's contract is canceled or expires, the government typically awards the contract to another corporation with similar performance problems. Besides Corizon, other prison medical care companies include Wexford Health Sources, Centurion, NaphCare, Armor Correctional Health Services, Correct Care Solutions and Conmed Health Management.

The notion that such companies should actually be required to provide the medical services for which they are being paid with taxpayer dollars seems alien to the government officials who enter into these contracts. If anyone has information on services that are being contracted by corrections agencies but not being performed by medical care providers or other private prison companies, please contact us with details.

PLN's website has over 20,000 articles related to prisons and jails, over 7,000 legal documents in our brief bank and more than 5,000 documents in our publications library, and receives over 100,000 visitors a month.

We are in the process of redesigning our websites for Prison Legal News, the Human Rights Defense Center and the Campaign for Prison Phone Justice, to make them easier to use and navigate and to incorporate all the technological updates that have occurred since our last website design. The new sites should be online within the next several months.

As we move into 2014, our goal is to increase our circulation by adding another 1,000 print subscribers. You can help by encouraging others to subscribe or giving someone a gift subscription. Please consider doing both, and enjoy this issue of PLN. ◼

# Second Circuit Vacates Magistrate's Judgment Entered without Consent

ON MARCH 6, 2013, THE SECOND Circuit Court of Appeals vacated the summary judgment dismissal of a New York prisoner's lawsuit, finding he had not consented to having the case decided by a magistrate judge.

Willie James Yeldon filed suit in federal court against numerous New York and Wyoming prison and community-based doctors under 42 U.S.C. § 1983.

Although he expressly declined to consent to the appointment of a magistrate judge, the district court entered a February 8, 2008 order referring the case to a magistrate pursuant to 28 U.S.C. § 636(c). The magistrate judge then granted summary judgment to the defendants on all of Yeldon's claims.

On appeal, the Second Circuit noted it had previously held in *N.Y. Chinese TV Programs, Inc. v. U.E. Enterprises*, 996 F.2d 21 (2d Cir. 1993) that consent to appoint a magistrate judge must be "truly voluntary," and "consent of all parties must be clear and express or the requirement would mean little."

Recognizing that Yeldon had expressly refused to consent to a magistrate, the Court of Appeals could not find on the record before it that he gave implied consent by failing to object to the district court's February 2008 order.

"As a pro se litigant, he may not have appreciated that participating in proceedings before the Magistrate Judge could impugn the effectiveness of his written refusal to consent," the appellate court wrote.

Since "the lack of consent is a jurisdictional defect that cannot be waived," the Court of Appeals found the magistrate lacked authority to enter final judgment under 28 U.S.C. § 636(c)(1), and that the Court consequently lacked jurisdiction to review that judgment. The Second Circuit therefore vacated the judgment, holding that Yeldon had not consented to the appointment of a magistrate judge. See: *Yeldon v. Fisher*, 710 F.3d 452 (2d Cir. 2013). ◼



**See Their Problem**

Contraband Danger

**The Answer:**
**Is ⌒ CLEAR Electronic Cigarettes**

*LOCK-UPS*

*LOCK-UPS*

• If They can't Inspect they Must Reject

• End $100 a Pack Black Market

Ask the Warden for LOCK-UPS

**Clearly the Safer Option**

CJ-10-00716

**UNIT LEVEL GRIEVANCE FOR:** Attachment I)

Unit/Center _Cummins_

Name _Ronald D. O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _PICKET MAN_

FOR OFFICE USE ONLY
GRV. # ___
Date Received: MAY 27 2010
CUMMINS UNIT
GRV. Code GRIEVANCE OFFICE

HEARING AID

600

_5-15-10_ (Date) STEP ONE: Informal Resolution

_5-19-10_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)
_____ If the issue was not resolved during Step One, state why: _Denying a hearing impaired person the opportunity to have normal safe hearing is discrimination against individuals with disabilities._
_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

*Is this Grievance concerning Medical or Mental Health Services?* _YES_ *If yes, circle one:* (medical) or mental

**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how **you** were affected. (Please Print): _I had a hearing aid in both ears when arrested in 2001. Pulaski County lost both hearing aids. I received one for my right ear at ADC. For safety reasons I am requesting a hearing aid for my left ear to protect me from getting hit from the left side by ___ pilot doors and carts. I've been hit twelve in the last week because I couldn't hear the warning from my left side. Per Ms. Austin's instructions, I went to sick call the DR. Moskouch about my need. 2-3-10 I watched DR. Moskouch put a request for me to get a hearing test in Ms. A. Esauis in-box, that was 101 days ago. This delay in getting a hearing aid for my left ear puts me in harms way and places me at risk for injury._

RECEIVED DEPUTY DIRECTOR
ARKANSAS DEPARTMENT OF CORRECTION

JUN 29 2010

_Ronald D. O'Neal_   HEALTH & CORRECTIONAL PROGRAMS   _May 15, 2010_
Inmate Signature                                    Date

*If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee.*

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY**
This form was received on _5-15-10_ (date), and determined to be (Step One) and/or an Emergency Grievance _Yes_ (Yes or No). This form was forwarded to medical or mental health? _Yes_ (Yes or No). If yes, name of the person in that department receiving this form: _SBurn S-770_ Date _____
_M. Nash_           _46821_        _C² M. Nash_          _5-15-10_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature        Date Received
Describe action taken to resolve complaint, including **dates:** _DR. Anderson deferred the consult for you a second hearing aid. SB 5787D_

_____   _5-18-10_      _Ronald O'Neal_      _5-18-10_
Staff Signature & Date Returned              Inmate Signature & Date Received
This form was received on _5-14-10_ (date), pursuant to **Step Two**. Is it an Emergency? _No_ (Yes or No).
Staff Who Received Step Two Grievance: _C² M. Nash_
Action Taken: _____ (Forwarded to Grievance Officer/Warden)
If forwarded, provide name of person receiving this form: _Mrs. Capps_

**Exhibit #** GG
THREE pages

-------------------------------------------------------
**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance (
to Inmate After Completion of Step One and Step Two.

IGTT420
3GH

Attachment IV

INMATE NAME: Oneal, Ronald D.        ADC #: 128560A        GRIEVANCE #: CU-10-00716

## HEALTH SERVICES RESPONSE TO UNIT LEVEL GRIEVANCE

(610) You report in your complaint that denying you a second hearing aid is discriminating against individuals with disabilities. A consult was submitted for you to be evaluated for a second hearing aid. After reviewing your audiology results, Dr Anderson determined there was no medical necessity for a second hearing aid. I find this grievance without merit.

_____          _____          _____
Signature of Health Services                    Title                                    Date
Administrator/Mental Health
Supervisor or Designee

RECEIVED-DEPUTY DIRECTOR
ARKANSAS DEPARTMENT
OF CORRECTION

JUN 2 9 2010

HEALTH & CORRECTIONAL PROGRAMS

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the Deputy Director for Health & Correctional Programs along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues which were not part of your original grievance as they will not be addressed.

WHY DO YOU DISAGREE WITH THE RESPONSE GIVEN ABOVE? The 1-29-04 hearing test DR. Anderson is referring to clearly shows the hearing test results of my left ear mirrors the test results of my right ear, for which I was issued a hearing aid. Over ten years of Federal Prison hearing test results, 1987 to 1997, indicated my need for hearing aid in both ears, which they issued. By not allowing me to have safe normal hearing in both ears demonstrates a deliberate indifference for my safety and well being by DR Anderson and Correctional Medical Services Inc. Please issue me hearing aids for both ears.

_____          _____          _____
Inmate Signature                              ADC#                                    Date
Ronald D. O'Neal                              128560                                  6-26-10

IGTT430                                                                                              Attachment VI
3GD

INMATE NAME: <u>Oneal, Ronald D.</u>        ADC#: <u>128560</u>      GRIEVANCE#:CU-10-00716

CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION

You grieve that you had two hearing aids when you were arrested in 2001 but your devices
were lost while you were at the Pulaski County jail, that you had been issued a hearing aid for
your right ear in the ADC and you are now requesting a device for your left ear for safety
reasons. You claim that on February 3, 2010, Dr. Moskovich submitted your consult for an
additional hearing aid but you had not received it by May 15.

At the informal level, the Infirmary informed you that the Medical Director, Dr. Anderson,
deferred your consult for an additional hearing aid. You filed your Formal Grievance by stating,
Denying a hearing impaired person the opportunity to have normal safe hearing is
discrimination against individuals with disabilities". The Infirmary responded by stating that Dr.
Anderson reviewed your audiology report and decided that your condition did not meet criteria
for a second hearing aid. You disagree in your appeal; you claim that you previously had two
hearing aids and that CMS is showing deliberate indifference by not allowing you to have
normal hearing in both ears.

Records reflect that Dr. Moskovich did submit a consult on February 3 requesting for you to be
fitted with hearing aids; she noted that you had already received a device for your right ear. Dr.
Anderson reviewed your consult on February 26; it was returned to the site with a notation for
them to send your audiogram report to him for review, he reviewed that report on March 8 and
noted that your condition met criteria for one hearing aid only.

I find no evidence of indifference; therefore, your appeal is without merit.


_____          _____
              Signature                                    Date


IGTT430                              Page 1 of 1

**UNIT LEVEL GRIEVANCE FORM** (Attachment I)

Unit/Center _Cummins_

Name _Ronald O'Neal_

ADC# _128560_   Brks # _3_   Job Assignment _PICKET_

FOR OFFICE USE ONLY
RECEIVED
GRV #  CU-13-00424
Date Received  SEP 1 2 2013
GRV. Code #:  CUMMINS UNIT
GRIEVANCE OFFICE

_9-11-13_ (Date) STEP ONE: Informal Resolution

_9-11-13_ (Date) STEP TWO: Formal Grievance (All complaints/concerns should first be handled informally.)

~~misuse nature~~ _____ If the issue was not resolved during Step One, state why: _This grievance is about Ms W. Kelley misuse nature of the grievance 15 day time limit, not DR Warrens actions_

_____ (Date) EMERGENCY GRIEVANCE (An emergency situation is one in which you may be subject to a substantial risk of physical harm; emergency grievances are not for ordinary problems that are not of a serious nature). If you marked yes, give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. If an Emergency, state why: _____

---

Is this Grievance concerning Medical or Mental Health Services? _yes_ If yes, circle one ~~medical or~~ mental
**BRIEFLY** state your one complaint/concern and be specific as to the complaint, **date**, place, name of personnel involved and how you were affected. (Please Print): _In her response to grievance CU-01576 Ms Wendy Kelley is in violation of the guide line laid down in Federal Court Order Case # 05:10CV00153, Doc # 142 issued 01-4-2012. Ms Kelley used the excuse that the grievance was not filed within 15 days of the 8-20-12 date when DR Moore cancelled my hernia surgery without an exam. I did not learn of what DR Moore had done until 05-31-13 medical jacket review. I filed the grievance five days later. The Court Order clearly states in Doc #142: "Although plaintiffs Oct 16, 09 grievance was filed well after the date prescribed by the Arkansas Department of Corrections procedures, plaintiff did not know the permanent nature of his paralysis until Oct 2, 09. It is there fore found that the deadline should be tolled and plaintiffs should be allowed to proceed on his claim of deliberate indifference." Ms Kelley was clearly in violation of the guideline set down by the court when she denied CU-13-01576. Ms Kelley must be stopped from denying this or any other grievance with the improper use of the grievance 15 day time limit. THE 15 DAY COUNTS STARTS WHEN THE VIOLATION BECOMES KNOWN._

_Ronald O'Neal_                                    _9-11-13_
Inmate Signature                                         Date

_If you are harmed/threatened because of your use of the grievance process, report it immediately to the Warden or designee._

---

### THIS SECTION TO BE FILLED OUT BY STAFF ONLY

This form was received on _9-11-13_ (date), and determined to be **Step One** and/or an Emergency Grievance _Yes_ (Yes or No). This form was forwarded to medical or mental health? _NO_ (Yes or No). If yes, name of the person in that department receiving this form: _____   Date _____

_Lisa Bailey_      _49708_    _Lisa Bailey_         _9-11-13_
PRINT STAFF NAME (PROBLEM SOLVER)   ID Number   Staff Signature   Date Received

Describe action taken to resolve complaint, including dates: _Per Ms S. Beyers, Inmate Grievance Coordinator, in Pine Bluff, the grievance CU-01576 was responded to on 8/29/13. If you are dissatisfied with the response you may proceed with 1983 lawsuit._

_Lisa Bailey_                    _Ronald O'Neal_    _9-11-13_
Staff Signature & Date Returned      Inmate Signature & Date Received

This form was received on _9-11-13_ (date), pursuant to **Step Two**. Is it an Emergency? _NO_ (Yes or No).
Staff Who Received Step Two Grievance: _Lisa Bailey_
Action Taken: _Forwarded_ (Forwarded to Grievance Officer/Warden)
If forwarded, provide name of person receiving this form: _____ INMATE GRIE

**Exhibit #** _HH_
_THREE Pages_

---

**DISTRIBUTION: YELLOW & PINK** – Inmate Receipts; **BLUE**-Grievance O
to Inmate After Completion of Step One and Step Two.

IGTT410
3GS

Attachment III

INMATE NAME:  <u>Oneal, Ronald D.</u>          ADC #:  <u>128560A</u>          GRIEVANCE #:  <u>CU-13-02424</u>

### WARDEN/CENTER SUPERVISOR'S DECISION

I have reviewed your grievance dated September 11, 2013. You state "In her response to grievance CU - 01576 Ms. Wendy Kelley is in violation of the guideline laid down in Federal Court Order. Case #5:10CV00153, DOC #142 issued 1-4-2012. Ms. Kelley used the excuse that the grievance was not filed within 15 days of the 8-20-12 date when Dr. Moore cancelled my hernia surgery without an exam. I did not learn of what Dr. Moore had done until 5-31-13 medical jacket review. I filed the grievance five days later. The Court Order clearly states in Doc #142: "Although plaintiffs Oct 16, 09 grievance was filed well after the date presctibed by the Arkansas Department of Corrections procedures, plaintiff did not know the permanent nature of Vis parglygia until Oct. 2, 09. It is there for e found that the deadline should tolled and plaintiff should be allotted to proceed on his claim of deliberate indifference!" Ms. Kelley was clearly in violation of the guideline set down by the court when she denied CU-13-01570. Ms. Kelley must be stopped from dening this or any other grievance witn the improper use of the grievance 15 day time limit. THE 15 DAY COUNTS STARTS WHEN THE VIOLATION BECOMES KNOW."

Please be advised, Ms. Shelly Byers Medical Grievance Coordinator for the Office of Wendy Kelley, Deputy Director states Policy and procedure was followed for the response to grievance #CU-13-01576 from you. Ms. Kelley's written decision or rejections of an appeal is the end of the grievance process for that particular grievance. Ms. Kelley's response to grievance #CU-13-01576 stands as is. Based on my review of this grievance I do not find merit to this matter.

_____          _____          **9-17-13**
Signature of Warden/Supervisor or Designee          Title          Date

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five working days by filling in the information requested below and mailing it to the appropriate Chief Deputy/Deputy/Assistant Director along with the Unit Level Grievance Form. Keep in mind that you are appealing the decision to the original grievance. Do not list additional issues, which are not part of your original grievance as they will not be addressed. Your appeal statement is limited to what you write in the space provided below.

WHY DO YOU DISAGREE WITH THE ABOVE RESPONSE?

When making her decision. Ms Wendy Kelley, Deputy Director violated a Federal Court Order with her misuse of when the (15) fifteen day time limit to file a grievance should of started in grievance CU-13-01576. Ms Kelly's decision should be voided and her mistake corrected.

Ronald O'Neal _____          128560 _____          9-18-13
Inmate Signature          ADC#          RECEIVED Date

SEP 2 4 2013

INMATE GRIEVANCE SUPERVISOR
ADMINISTRATION BUILDING

IGTT410          Page 1 of 1

IGTT430
3GD

Attachment VI

INMATE NAME: Oneal, Ronald D.          ADC #: 128560          GRIEVANCE#:CU-13-02424

**CHIEF DEPUTY/DEPUTY/ASSISTANT DIRECTOR'S DECISION**

On September 11, 2013, you grieved that Wendy Kelley violated policy regarding your grievance #CU-13-01576. You state that Ms. Kelley responded to grievance #CU-13-01576 and stated that you did not file a grievance within 15 days of August 20, 2012, the date Dr. Moore canceled your hernia surgery. You state that you did not learn of what Dr. Moore had done until May 31, 2013 when you reviewed your medical record and you filed the grievance five days later. You state the 15 days starts when the violation becomes known.

The warden responded, "Please be advised, Ms. Shelly Byers Medical Grievance Coordinator for the Office of Wendy Kelley, Deputy Director states Policy and procedure was followed for the response to grievance #CU-13-01576 from you. Ms. Kelley's written decision or rejections of an appeal is the end of the grievance process for that particular grievance. Ms. Kelley's response to grievance #CU-13-01576 stands as is. Based on my review of this grievance I do not find merit to this matter."

Your appeal states that Ms. Kelley's decision regarding grievance #CU-13-01576 should be voided and the mistake corrected. You state that Ms. Kelley violated a Federal Court order with her misuse of the 15 day time limit to file a grievance.

The response to grievance #CU-13-01576 states, "Dr. Moore discussed the issue of surgery with you August 28, 2012; you did not submit a grievance within 15 days as allowed by policy; therefore, I will not address this issue." You stated in your informal that you did not learn about the cancellation of the hernia surgery until May 31, 2013; however, you were actually made aware of the decision on August 28, 2012 when Dr. Moore discussed the issue with you.

All grievances answered at the appeal level are reviewed to ensure that policy was followed and medical treatment was consistent with proven standards of care. The written decision or rejection of an appeal is the end of the grievance process for that particular grievance. Ms. Kelley's response to grievance #CU-13-01576 stands as is and this appeal is without merit.

Director _____          Date _____11/5/13_____

IGTT430                                           Page 1 of 1